UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAURA O'NEILL, as administrator of   )
the Estate of Madelyn E. Linsenmeir, )
       Plaintiff,                )
                                     )
                                     )
       v.                        )   Civil No. 3:20-30036-MGM
                                     )
                                     )
CITY OF SPRINGFIELD, et al.          )
       Defendants.               )

MEMORANDUM AND ORDER CONCERNING PLAINTIFF'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY CONCERNING THE
DISCIPLINARY AGREEMENT BETWEEN DEFENDANTS ZANAZANIAN
AND CITY OF SPRINGFIELD
(Dkt. No. 109)

ROBERTSON, U.S.M.J.

    I.    Introduction

Plaintiff Maura O'Neill (Plaintiff) represents the estate of her deceased sister, Madelyn Linsenmeir (Linsenmeir) (Dkt. No. 142, First Am. Compl. ¶ 4). Linsenmeir was arrested by the Springfield Police Department (SPD) on September 29, 2018, on charges of being a fugitive from a New Hampshire warrant and giving a false name (Am. Compl. ¶ 26). On September 30, 2018, the SPD transferred Linsenmeir to the custody of the Women's Correctional Center, which is operated by defendant Hampden County Sheriff's Department (HCSD) (Am. Compl. ¶¶ 9, 62). She died of endocarditis at Baystate Medical Center on October 7, 2018, still in the custody of the HCSD (Compl. ¶¶ 71-75). Plaintiff brings claims of unconstitutional failure to provide medical care against the defendant City of Springfield (City), individuals employed by the SPD, and the HCSD (Counts I and III); violation of the Americans with Disabilities Act against the

HCSD (Count II); and wrongful death against individual defendants employed by the SPD and the HCSD (Count IV).

Before the court is Plaintiff's motion to compel the City to produce documents that the City contends are protected by attorney-client privilege or the work product doctrine and for additional testimony from William Mahoney (Mahoney), a Fed. R. Civ. P. 30(b)(6) (Rule 30(b)(6)) designee of the City concerning the contents of those documents. For the reasons set forth below, the court grants Plaintiff's motion in part and denies it in part.

II.     Relevant Background

Defendant Moises Zanazanian (Zanazanian) was the SPD booking officer when Linsenmeir was brought to the police station after her arrest (Am. Compl. ¶ 35). Linsenmeir's booking video shows that she told Zanazanian that she had really bad chest pain, could not breathe, and that it felt as though her chest was caving in (Dkt. No. 110 at 7-8). Zanazanian testified at his deposition that he gave Linsenmeir water, assessed her condition, decided she did not need medical care, and did not send her to the hospital or provide medical treatment (Dkt. No. 110 at 8-9; Dkt. No. 111-4 at 5).

On December 28, 2018, the SPD notified Zanazanian in writing that the department had received notice of alleged improper conduct by him on September 29, 2018, in connection with Linsenmeir's booking. The notice, captioned Notice of Inter-Departmental Disciplinary Charges, SO# 18-261, charged Zanazanian with possible violations of four SPD rules and regulations, including neglect of duty in violation of Rule 27; unbecoming conduct in violation of Rule 29; failure to comply with all SPD rules, orders, and directives in violation of Rule 29; failure to provide medical attention to an arrested person in violation of Rule 26; and notified him of punishments that could be imposed under Rule 32 for a variety of offenses, including

neglect of duty, conduct unbecoming an officer, or an act contrary to good order and discipline of the department (Dkt. No. 111-20 at 2-3).

Mahoney was an attorney and head of the City's labor relations at the relevant time. On February 27, 2019, Sergeant Monique McCoy (McCoy) of the SPD Internal Investigation Unit (IIU) sent an email to Mahoney referencing SO# 18-261 and the ACLU and Linsenmeir in its subject line, noting that the case was scheduled to go to hearing on March 20, 2019, and informing Mahoney that McCoy had been told to refer the case to Mahoney because, as she understood the situation, the Springfield Police Supervisors Association (Union) was looking to come to an agreement on the case (Dkt. No.111-21 at 2). Thereafter, on March 13, 2019, Zanazanian signed an agreement between himself, the City, and the Union resolving the December 2018 notice of disciplinary charges against him arising out of the booking of Ms. Linsenmeir (Dkt. No.111-24) (Disciplinary Memorandum). Attorney John Vigliotti (Vigliotti) represented Zanazanian and the Union in negotiations about the terms of the Disciplinary Memorandum. SPD Captain Brian Keenan (Keenan) was the President of the Union and the designated point person for negotiations regarding Zanazanian (Dkt. No. 110 at 13). The City produced a copy of the final agreement to Plaintiff and a copy of a separate notice to Zanazanian of suspension without pay (Dkt. No. 111-27) and designated Mahoney to testify about the City's (or the SPD's) investigation and discipline of Zanazanian related to the facts alleged in Plaintiff's complaint (Dkt. No. 113 at 2).

The City declined to produce certain documents related to the agreement between the City, Zanazanian, and the Union and the notice of suspension directed to Zanazanian. Those documents are listed below with numbers corresponding to the numbers in the City's privilege log:

3

- 1, 2: March 8, 2019 email communications between Mahoney and SPD Captain Philip Tarpey (Tarpey) and a draft of the Disciplinary Memorandum as an attachment;

- 3, 4: March 11, 2019 email communications between Tarpey and Mahoney and a draft of the Disciplinary Memorandum as an attachment;

- 5-7: March 14, 2019 email communications between Mahoney and McCoy and a draft notice of suspension as an attachment;

- 9: March 14, 2019 email communications between McCoy and Mahoney and a draft notice of suspension as an attachment;

- 55: March 6, 2019 email communication from Vigliotti to Keenan;

- 57: March 13, 2019 email from Vigliotti to Keenan and a draft of the Disciplinary Memorandum as an attachment; and

- 60: March 11, 2019 email from Tarpey to Keenan and a draft of the Disciplinary Memorandum as an attachment.

- 61: March 11, 2019 email from Tarpey to Mahoney and a draft of the Discicplinary Memorandum as an attachment.

- 63: March 13, 2019 blank email from Tarpey to Mahoney with a draft of the Disciplinary Memorandum as an attachment.

After Mahoney's deposition, in response to an inquiry from Plaintiff, the City informed Plaintiff that Mahoney reviewed items 1, 5, 7, 9, 35, 57, and 61 from its privilege log, along with any attachments to these items, in preparation for his testimony as one of the City's designated Rule 30(b)(6) witnesses (Dkt. No. 113-1 at 2-3).

At the City's request, and with the assent of Plaintiff, the court reviewed the documents that are the subject of Plaintiff's motion to compel *in camera*. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011) (citing *United States v. Zolin*, 491 U.S. 554, 569 (1989)) (endorsing a trial court's *in camera* review for the purpose of determining whether documents are protected by the attorney-client privilege).

III. Analysis

Plaintiff contends that the documents the City has declined to produce on grounds of the attorney-client privilege and the work product doctrine are relevant because the records bear on the City's internal review of Zanazanian's interactions with Linsenmeir, its training and supervision of its police force, and its customs concerning investigation and discipline when an officer is alleged to have violated SPD rules and regulations. Plaintiff relies on *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989), in which the plaintiffs brought claims under 42 U.S.C. § 1983 alleging excessive use of force by police officers. In affirming the verdict for the plaintiffs, the First Circuit pointed to evidence that the City of Everett's discipline of police officers had been haphazard, inconsistent, and infrequent, that Everett had not conducted a full investigation of the events about which the plaintiffs complained for more than a year after those events occurred, and that the police chief did not seriously investigate police misconduct complaints. *Id.* at 1160. In the Disciplinary Memorandum, the City, the Union, and Zanazanian agreed that there was just cause for the imposition of discipline on Zanazanian for a violation of Rule 29 and imposed a two-day suspension (Dkt. No. 111-24 at 2-3). This resolution of the City's investigation into "an incident surrounding the arrest and booking of an individual, Ms. Madelyn Linsenmeir, on or about September 29, 2018" (Dkt. No. 111-24 at 2), did not include a finding that Zanazanian had violated Rule 26 or Rule 27 of the SPD rules and regulations, both of which were referred to in the initial disciplinary notice issued to Zanazanian. The Disciplinary Memorandum did not set forth a factual basis for its finding of just cause for discipline. Several deponents, including Zanazanian, were uncertain about why Zanazanian was disciplined and contradicted themselves and each other about the nature of his misconduct and the factual basis of the discipline imposed on him (Dkt. No. 110 at 18).

Plaintiff argues that the records are not protected by the attorney-client privilege because Zanazanian and the Union were adverse to the City in the disciplinary process and communications between adverse parties, or between a party and his attorney when the information is intended to be disclosed to an adverse party, are not protected by the attorney-client privilege or the work product doctrine. Further, Plaintiff argues, even if some or all of the documents on the City's log were privileged or otherwise protected, the City waived any claim to confidentiality when Mahoney reviewed documents in preparation for his deposition.

For its part, the City does not contest the relevance of material related to the discipline imposed on Zanazanian. The City contends that the documents to which Plaintiff seeks access are protected by the attorney-client privilege or the work product doctrine "as extended through the common interest doctrine" (Dkt. No. 113 at 4).[1] According to the defendants, although the City and Zanazanian may have been adverse in negotiating discipline to be imposed on Zanazanian, communications between their attorneys were still protected as against Plaintiff because the City and Zanazanian had a common interest in defending their conduct in the face of Plaintiff's charges. As to Mahoney's review of documents, the defendants say that as long as the documents were not used to refresh Mahoney's memory, his review of documents in preparation for his deposition did not waive the attorney-client privilege (Dkt. No. 113 at 5-7). Neither the joint defense doctrine nor the work product doctrine protects the confidentiality of the documents at issue between the parties. The City, however, has properly invoked, and not waived, the attorney-client privilege as to some of the documents at issue.

---

[1] At Mahoney's deposition, the City took the position that communications about the Disciplinary Memorandum and drafts of that document were protected by a settlement privilege (Dkt. No. 111-22 at 6-7). The City has now abandoned that contention, acknowledging that federal courts generally have not recognized a privilege protecting settlement negotiations from discovery. *See, e.g., Bingham v. Supervalu, Inc.*, Civil Action No. 13-11690-IT, 2014 WL 12792989, at *6 (D. Mass. July 11, 2014) (citing additional cases).

A.     The joint defense doctrine

"Familiarly, the attorney-client privilege – somewhat simplified – is a privilege of a client to refuse to testify or to have his counsel testify as to confidential communications between the two made in connection with the rendering of legal representation[.]" *In re Grand Jury Proceedings*, 417 F.3d 18, 21 (1st Cir. 2005) (citing *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002)).  It is black letter law that "the attorney-client privilege does not attach to communications between attorney and client when they have been disclosed to a third party or were created with the intention of being disclosed to a third party." *United States v. Schussel*, 291 F. App'x 336, 347 (1st Cir. 2008) (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) ("When information is transmitted to an attorney with the intent that the information will be transmitted to a third-party …, such information is not confidential"; finding a waiver of the attorney-client privilege when information communicated to an attorney was intended to be disclosed to the IRS)).

There are exceptions to the rule that "[g]enerally, disclosing attorney-client communications to a third party undermines the privilege." *Cavallaro*, 284 F.3d at 246-47 (citing *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).  One such exception is that the attorney-client privilege extends as well to communications made within the framework of a joint defense arrangement. *Id.* at 249-50.

> "The joint defense privilege protects communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.'  In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived."

7

*United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) (quoting *In re Brevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (citations omitted)). "The burden of proving the existence of the privilege is on the party asserting the privilege." *Id.* (citing *United States v. Wilson*, 798 F.2d 509, 512-13 (1st Cir. 1986)).

Even if, as Plaintiff contends, the City and Zanazanian had some conflicting interests, "'[c]ommunications to an attorney to establish a common defense strategy [may be] privileged even though the attorney represents another client with some adverse interests.'" *Ovalle Marquez v. United States*, 258 F. Supp. 2d 7, 14-15 (D.P.R. 2003) (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 787-88 (3d Cir. 1985), *rev'd on other grounds*, *Mielo v. Steak 'n Shake Operations, Inc.*, (3d Cir. 2018)). The City has not claimed that there was a written joint defense agreement between the City on the one hand and Zanazanian and/or the Union on the other. The City's contention appears to be that, even if Zanazanian and the City were adverse as to disciplinary measures against Zanazanian, they shared a common interest in defending against Plaintiff's claims and, on this basis, the court should find that communications among counsel for Zanazanian and for the City are protected by an implied joint defense agreement. "'While a written agreement is not a prerequisite for invoking the common interest doctrine, parties seeking to invoke the exception must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders.'" *Roller Bearing Co. of Am., Inc. v. Raytheon Co.*, Civil Action No. 1:20-cv-10889-IT, 2022 WL 3088538, at *4 (D. Mass. Aug. 3, 2022) (quoting *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (internal citations omitted)). The court is not persuaded.

8

The Disciplinary Memorandum was executed on March 19, 2019 (Dkt. No. 111-24 at 3). Plaintiff did not file her complaint until March 5, 2020, almost a year later (Dkt. No. 1). Although the City and Zanazanian might well have anticipated that Plaintiff would file a suit naming the City and Zanazanian as defendants, neither the City nor Zanazanian has pointed to *any* evidence that they agreed that decisions made in connection with the disciplinary process against Zanazanian were part of a joint effort to defend against claims likely to be asserted by Plaintiff. The email communications about the Disciplinary Memorandum are not marked as being part of, or relevant to, an anticipated joint defense. The contents of the email communications make no reference to a joint defense effort, interest, or strategy. The communications do not evidence any discussion about the implications of disciplining Zanazanian in view of potential claims by Plaintiff. This lack of discussion stands in contrast to the facts in *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104 (D. Conn. 2002), the case relied upon by the defendants, in which the court's *in camera* review of documents "demonstrated cooperation among the non-[defendant] parties in formulating a common legal strategy." *Id.* at 108.

Mahoney agreed at his deposition that the City and Zanazanian were adverse for the purposes of negotiating the terms of the Disciplinary Memorandum (Dkt. No. 111-22 at 6-7). The City has not demonstrated that it was discussing or implementing a common legal strategy when it communicated with counsel for Zanazanian and the Union about the basis or terms of the Disciplinary Memorandum. Thus, communications among counsel for the City and Zanazanian about resolution of the charges in the disciplinary notice are not protected by the common defense exception to the requirement of confidentiality when the attorney-client privilege is invoked.

9

B.       Work product protection

Fed. R. Civ. P. 26(b)(3) (Rule 26(b)(3)) sets out the work product doctrine that applies to cases filed in federal courts. *See Felisberto v. Dumdey*, 541 F. Supp. 3d 142, 147 (D. Mass. 2021). Under Rule 26(b)(3), "[o]rdinarily a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Such material may be discoverable on a showing of substantial need, undue hardship, or inability to obtain its substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii). The First Circuit "has taken a relatively narrow view of [the anticipation of litigation or prepared for trial] element of the work product doctrine." *Felisberto*, 541 F. Supp. 3d at 147 (citing *Maine v. United States Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002)). When a document serves a business purpose and may also serve a litigation purpose, "no protection would attach to '"documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation[,] even if the documents would "aid in the preparation of litigation."'" *Id.* (alteration in original) (quoting *Maine*, 298 F.3d at 68); *see also United States v. Textron, Inc. & Subsidiaries*, 577 F.3d 21, 29-30 (1st Cir. 2009) (en banc).

The fact that documents were created after the events that are the basis of Plaintiff's claims "says nothing about the purpose for which they were created and is insufficient to establish that they were prepared in anticipation of litigation. Nor is it sufficient that the documents would aid in possible future litigation." *Id.* at 148. It is possible that the City anticipated litigation concerning Linsinmeir's treatment by the SPD when it initiated disciplinary proceedings against Zanazanian. But, "[i]t is not enough to trigger work product protection that

the *subject matter* of a document relates to a subject that might conceivably be litigated. Rather … 'the literal language of [Rule 26(b)(3)] protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation.'" *Textron*, 577 F.3d at 29 (second alteration in original) (quoting *Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 25 (1983)). The City has not shown that its negotiation with the Union and Zanazanian about the basis and extent of discipline for Zanazanian was outside of the ordinary course of SPD activities or that the emails and attachments addressing resolution of the charges in the initial disciplinary notice were prepared for litigation or trial. Mahoney agreed during his deposition that, at the relevant time, he was responsible for negotiating settlement agreements for police disciplinary matters on behalf of the City (Dkt. No. 111-22 at 10). *See Textron*, 577 F.3d at 29-30. Thus, so far as appears from the record, this was an activity in which Mahoney regularly engaged without regard to whether a disciplinary matter was likely to lead to litigation against the SPD as a department of the City.

      C.      Review of documents to prepare for deposition

Federal Rule of Evidence 612 provides that, if a witness uses a document to refresh his or her memory while testifying, or before testifying if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the document produced and to rely on it for pretrial and trial purposes. "The rule applies to deposition testimony by operation of Rule Fed. R. Civ. P. 30(c)." *Heron Interact, Inc. v. Guidelines, Inc.*, 244 F.R.D. 75, 76 (D. Mass. 2007). In preparation for his deposition as a Rule 30(b)(6) witness, Mahoney reviewed some emails he exchanged with Tarpey about revisions to draft versions of the Disciplinary Memorandum (Dkt. No. 111-22 at 12).

      D.      Documents on the City's Privilege Log

11

Relying on the principles set forth above, and an *in camera* review of documents, the court turns to the documents at issue.

Documents 1 and 2 are an email exchange between Mahoney and Tarpey with a revised draft of the Disciplinary Memorandum as an attachment. These documents are not protected by attorney-client privilege because Mahoney's communication to Tarpey and the attachment were intended to be disclosed to Zanazanian and his attorney. *See Schussel*, 291 F. App'x at 347. In addition, Mahoney testified that he reviewed some emails with Tarpey in preparation for his deposition (Dkt. No. 111-22 at 12) and he began testifying about a revision he proposed to section 1 of the negotiated agreement before being directed not to answer on the ground of a purported settlement privilege (Dkt. No. 111-22 at 6). It appears that Mahoney relied on documents 1 and 2 to refresh his recollection in preparation for his testimony. *See Heron Interact*, 244 F.R.D. at 77. Accordingly, items 1 and 2 on the City's privilege log, along with the attachment thereto, must be produced to Plaintiff.

Documents 3 and 4 show a communication between Mahoney as a lawyer for the City with Tarpey in Tarpey's capacity as an agent of the City, which was Mahoney's client, and reflect Mahoney's legal advice to the City. The attachment is a version of the Disciplinary Memorandum. According to the City, Mahoney did not review documents 3 and 4 in preparation for his deposition. The record does not suggest that Mahoney's legal advice to Tarpey was disclosed to any third party or intended for third-party disclosure. Accordingly, these documents are protected by the attorney-client privilege, and the privilege has not been waived. These documents need not be produced to Plaintiff.

Documents 5, 6, 7, and 9 are email communications between Mahoney and McCoy in which McCoy requests legal advice from Mahoney in his capacity as a lawyer for the City

12

concerning revisions to a document.  While the document about which McCoy was seeking advice was intended for disclosure to a third party once it was finalized, McCoy was entitled to seek legal advice about revisions to the document before she sent it to a third party.  There is nothing in the record to suggest that Mahoney or McCoy intended to disclose, or did disclose, the content of their communications about revisions to the document to any third party.  *See In re Grand Jury Subpoena*, 273 F. Supp. 3d 296, 302 (D. Mass. 2017) (ruling that communications from the client to the attorney recounting facts and seeking legal advice before the attorney communicated with the third party on the client's behalf were protected by the attorney-client privilege).  These documents need not be disclosed to Plaintiff.

Documents 55 and 57 are emails from Vigliotti to Keenan with versions of the Disciplinary Memorandum attached.  Vigliotti represented the interests of the Union and Zanazanian in negotiating the resolution of disciplinary charges against Zanazanian.  These emails are attorney-client communication that generally would be protected as privileged.  The City has represented that the communications were disclosed to it, a party adverse to Zanazanian and the Union in this context, because the Union, which represented SPD officers, used the City's servers for its internal communications so that the City inadvertently retrieved these documents when it searched for documents responsive to Plaintiff's document requests.  Plaintiff argues that Vigliotti and Keenen waived the attorney-client privilege as to these documents by disclosing them to the City.

Plaintiff relies on *United States v. Morrell-Corrada*, 343 F. Supp. 2d 80, 86 (D.P.R. 2004), in which the court stated that "[g]enerally, the disclosure of attorney-client communications by the client to third parties destroys the privilege *in toto*."  Courts, however, have given litigants some leeway in cases of inadvertent disclosure.  "To determine whether an

inadvertent disclosure constitutes waiver, courts examine '(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.'" *United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 70 (D. Mass. 2020) (quoting *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 292 (D. Mass. 2000)).

In *Wollman*, in a somewhat analogous situation, the court held that the attorney-client privilege had not been waived. In that qui tam case, lawyers for Massachusetts General Hospital (MGH) sent a copy of a report designated as protected by the attorney-client privilege to the Chair of MGH's Board of Directors at her Simmons College business email address. When Simmons received a third-party subpoena issued by a plaintiff in a case that was related to the *Wollman* case, after consulting promptly with lawyers for MGH, counsel for Simmons listed the report on a privilege log. The *Wollman* plaintiff argued that the report had been disclosed to a third party – Simmons – and that the privilege had thereby been waived. Applying the factors set out in the *Amgen* case, the court noted that the communication to which the report was attached when the report was sent to the Simmons email address was marked as privileged, as had been the attached report, that there was no allegation that the report had been inappropriately disseminated at Simmons, and that as soon as the subpoena was served on Simmons, counsel for MGH reached out to Simmons asking that the report be included on Simmons's privilege log. *Wollman*, 475 F. Supp. 3d at 71. The court concluded that the privilege had not been waived. *Id.*

In the instant case, neither the emails nor the attachments were marked as protected by the attorney-client privilege or identified as work product. While the City has not disclosed the

extent of its access to the communications between Vigliotti and Keenan, it appears from the City's submission that members of its law department responding to Plaintiff's document production requests viewed the contents of the emails.  Although the documents were on the City's server, the City has not informed the court whether individuals other than those employed in its law department might have had had access to the documents, nor has the City described any measures it took to restrict access to the documents after the City discovered them in its possession.  Even if the use of the City's email system could be accepted as merely negligent, a point on which the court does not express an opinion, no other significant steps were taken to ensure the confidentiality of the material.  Where there was little apparent effort to protect the confidentiality now claimed by the City and the Union, "the overriding interests of fairness and justice … dictate the recognition of a waiver of the [attorney-client] privilege[ and work product protection]." *Amgen*, 190 F.R.D. at 293.  Plaintiff is entitled to production of items 55 and 57 on the City's privilege log.

Document 60 is an email from Tarpey to Keenan with the "next cut" of the Disciplinary Memorandum attached.  This material requires little discussion:  this a communication from one party to a negotiation and the other party to the negotiation.  It is not an attorney-client communication.  The court has rejected the City's contention that communications between the City and Union concerning disciplining Zanazanian are protected by the common interest doctrine.  *See Roller Bearing Co. of Am.*, 2022 WL 3088538, at *4.  There is no basis for a claim of privilege as to these documents and they must be produced to Plaintiff.

Document 61 is described as an email from Tarpey to Mahoney with a revised version of the Disciplinary Memorandum attached.  The City indicated that Mahoney reviewed document 61 in preparation for his deposition.  Accordingly, the City has waived any privilege that might

15

otherwise attach to the email from Tarpey to Mahoney and the attached draft of the Disciplinary Memorandum. If Mahoney also reviewed the portion of document 61 that is an email message from him to Tarpey explaining the reasons for some proposed revisions to the Disciplinary Memorandum, as seems possible from his deposition testimony, then this portion of document 61 must be produced because a communication that would otherwise be protected by the attorney-client privilege would have been waived. If Mahoney did not review the part of document 61 that shows his March 11, 2019 email to Tarpey in preparation for his deposition, then that portion of document 61 may be redacted by the City prior to production.

Document 63 is a blank email from Tarpey to Mahoney providing the most recent edited version of the Disciplinary Memorandum for Mahoney's review. In the email itself, Tarpey provides no information to Mahoney and seeks no legal advice. *See Blattman v. Scaramellino*, 891 F.3d 1, 4 (1st Cir. 2018) (quoting *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23-24 (1st Cir. 2011) (the attorney-client privilege only protects communications "'made for the purpose of seeking or receiving legal advice'")). It appears that, in this instance, Tarpey was merely transmitting to Mahoney the most recently proposed revisions to the Disciplinary Memorandum that he had received from Zanazanian and the Union, the adverse parties in the negotiations. The version of the Disciplinary Memorandum attached to Tarpey's blank email is not protected by the attorney-client privilege or otherwise protected because it was intended to be provided to an adverse party and is not an attorney-client communication. This document must be produced to Plaintiff.

   E. Further Rule 30(b)(6) testimony from Mahoney

At Mahoney's Rule 30(b)(6) deposition, the City instructed Mahoney not to answer questions about changes to the proposed Disciplinary Memorandum based on a claim of

privilege for settlement negotiations (Dkt. No. 111-22 at 6-7) and also instructed him not to answer questions about communications he had with Tarpey on the ground of attorney-client privilege (Dkt. No. 111-22 at 8). As is set forth above, this court is ordering that the material numbered 1, 2, 55, 57, and 60 on the City's privilege log be disclosed to Plaintiff. Mahoney was instructed not to answer questions about the contents of items 1 and 2, and Plaintiff and the City agreed that Plaintiff had sufficiently preserved her objection to the City's invocation of the claimed settlement privilege and the claims of attorney-client privilege/work product protection as to items on the City's privilege log to which Plaintiff seeks access. Plaintiff is entitled to inquire further of Mahoney in his capacity as a Rule 30(b)(6) deponent, limited to questions about documents the court is ordering the City to produce.

IV.     Conclusion

For the foregoing reasons, Plaintiff's motion to compel is GRANTED as to items 1, 2, 55, 57, 60, 61 (possibly redacted), and 63 on the City's privilege log and as to further deposition testimony from Mahoney in his capacity as a Rule 30(b)(6) deponent concerning the documents the City is ordered to disclose, and related facts, if any. Plaintiff's motion is DENIED as to items 3, 4, 5, 6, 7, and 9 on the City's privilege log. The Clerk's Office is directed to return to the City the copies of the documents submitted for *in camera* review in any manner requested by counsel for the City.

It is so ordered.

Dated: May 11, 2023                               Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  U.S. MAGISTRATE JUDGE