**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MAURA O'NEILL, as administrator of the Estate of Madelyn E. Linsenmeir, | ) ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 20-30036-MGM |
| v. | ) ) | |
| CITY OF SPRINGFIELD, *et al.* | ) ) ) | |
| Defendants. | ) ) ) | |

**OPPOSITION TO HAMPDEN COUNTY SHERIFF'S DEPARTMENT'S**
**MOTION TO RE-OPEN FACT DISCOVERY**

Haylee Champagne and Alexandria Cox were incarcerated with Madelyn Linsenmeir at

the Hampden County Sheriff's Department ("HCSD"). Ms. Champagne was Madelyn's cellmate

from September 30 to October 1, 2018. Ms. Cox was not Madelyn's cellmate but they were placed

in the same housing unit at HCSD. HCSD has been aware of both of these witnesses for years—

they are named in HCSD's own prisoner rosters, and HCSD interviewed both of them before the

close of fact discovery. HCSD itself disclosed them as potential witnesses in the case, as did the

Estate.

Fact discovery in this case closed last April, and dispositive motions are due in about three

weeks. *See* Mar. 20, 2023 Electronic Order (D.E. 127). In light of HCSD's contemplated motion,

the Estate collected declarations from Ms. Champagne and Ms. Cox, as permitted by the Rule 56.

*See* Fed. R. Civ. P. 56(c)(4). Both declarations were executed and promptly produced to HCSD

more than five months ago. *See* Day Decl. ¶ 25 (declarations produced June 27, 2023) & Exs. 6

(Cox executed June 15, 2023) & 7 (Champagne executed June 16, 2023).  HCSD has not shown

any reason to re-open fact discovery at this late date, and its motion (D.E. 154) should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

HCSD is moving to re-open fact discovery based on essentially three assertions:

- that Ms. Champagne and Ms. Cox were allegedly not disclosed as witnesses;

- that Ms. Champagne and Ms. Cox were allegedly not available to HCSD; and

- that the declarations—which were executed in mid-June and produced to HCSD that same month—were somehow withheld from discovery.

None of these three assertions is correct, however.

First, these witnesses were disclosed by both HCSD and the Estate well before the end of

fact discovery.  HCSD's own prisoner rosters list Ms. Champagne and Ms. Cox as being housed

with Madelyn.  *See* Ex. A (housing records).  HCSD's initial disclosures (which it did not append

to this motion) disclosed them as potential witnesses.  *See* Ex. B (HCSD initial disclosures)  ¶ 31

("All inmates housed in Ms. Linsenmeir's housing unit . . . .").  The Estate also disclosed Ms.

Champagne in its own initial disclosures, *see* Day Decl. Ex. 1 at 8, and then later disclosed both

witnesses in its interrogatory responses.  *See* Ex. C at 6 (Estate Int. Resp. No. 1 excerpt) (adopting

defendants' intitial disclosures and also disclosing "[p]eople incarcerated with Madelyn" as

reflected on rosters to be produced by HCSD).

Second, HCSD was actually in contact with Ms. Champagne and Ms. Cox on multiple

occasions prior to the close of fact discovery.  In mid-2020, HCSD interviewed 27 of the prisoners

housed with Madelyn.  *See* Mot. to Compel Ex. G (D.E. 71-7) (privilege log at item 13).  During

the course of those interviews, HCSD's investigators conducted a recorded interview with Ms.

Cox in September 2020.[1]  *See* Day Decl. ¶ 3.  After Ms. Cox expressed concerns about the way

Madelyn was treated in custody, the investigators ended the recorded interview.  *See* Ex. D

(recording of Cox first interview).[2]  HCSD ultimately made no apparent attempt to depose Ms.

Cox during the fact discovery period, having opted instead to interview her privately.

 As for Ms. Champagne, HCSD's General Counsel personally interviewed Ms. Champagne

in August 2020, but (unlike the other 26 prisoners who were interviewed) no recording was made.

*See* Day Decl. ¶ 2; Mot. To Compel Ex. G (D.E. 71-7) (privilege log at item 13).  HCSD spoke

with her again during the fact discovery period, in March 2023.  *See* Day Decl. ¶ 18.  At that time,

HCSD's investigators conducted a videotaped interview with Ms. Champagne.  *See* Ex. E

(recording of Champagne interview).  During that same conversation, Ms. Champagne gave HCSD

her address and telephone number, *see* Ex. F (Soto Dep. excerpts) at 16:11-20, but HCSD does not

contend that it followed up with her to serve a subpoena or schedule a deposition.[3]  *See generally*

Day Decl.  The Estate even told HCSD in late April 2023 that it would agree to an out-of-time

deposition of Ms. Champagne at that time (when fact discovery had closed only about a week

before, and dispositive motions were still eight months away), but HCSD does not contend that it

took any action to set one up.  *See* Ex. H (Apr. 24, 2023 email).

---

[1] HCSD initially withheld this recording as purportedly privileged, but later produced it pursuant
to the Court's order allowing the Estate's motion to compel.  *See* June 2, 2022 Electronic Order
(D.E. 76).

[2] Exhibits D & E are electronic recordings.  The Estate understands that the recorded interviews
cannot be filed through the ECF system, and is instead submitting them on CDs which will be
delivered to the Court.

[3] HCSD did choose to depose one of Madelyn's other cellmates, Sandi Dailey.  *See* Exs. A
(housing records) & G (Dailey Dep. excerpts).  Among other things, Ms. Dailey testified that, by
the evening of October 3, 2018, Madelyn could not walk, could not sit up, could not eat, and was
reduced to crawling across the cell floor on her hands and knees to reach the toilet.  *See* Ex. G
(Dailey Dep. excerpts) at 44:23-49:18.

Third, the declarations of Ms. Champagne and Ms. Cox were produced promptly. After fact discovery ended, the parties attempted mediation, and the Estate simultaneously began preparing for expert discovery and summary judgment in accordance with the operative scheduling order. The Estate collected declarations from Ms. Cox and Ms. Champagne, both of which were executed in mid-June 2023. *See* Day Decl. Exs. 6 (Cox executed June 15, 2023) & 7 (Champagne executed June 16, 2023). The Estate promptly produced the declarations to HCSD. *See* Day Decl. ¶ 25 (declarations produced June 27, 2023). On August 9, 2023, HCSD proposed re-opening fact discovery to take the depositions of these two witnesses, and two days later the Estate responded that it would oppose.[4] HCSD took no other action on these witnesses until it filed this motion three weeks before dispositive motions are due, a full five months after receiving the declarations.

In summary, HCSD has been aware of both of these witnesses and what they would testify to for years. It spoke with them multiple times prior to the close of fact discovery. The fact that the Estate collected declarations from them in support of the forthcoming summary judgment briefing (and in accordance with the federal rules) provides no basis to re-open fact discovery. HCSD has also offered no justification for waiting five months to file this motion.

Nor does HCSD clearly explain how it will re-open fact discovery at this point without delaying the existing schedule for dispositive motions and trial. For example, if HCSD now puts at issue in a deposition any alleged unrecorded statements by Ms. Champagne in her interview with HCSD's General Counsel, that would raise the question of whether the Estate may need to seek follow-up discovery of the General Counsel's notes, correspondence, and testimony about

---

[4] The Estate is not filing a copy of this correspondence because it also includes references to mediation issues that may fall within the parties' mediation confidentiality agreement. Redacted versions of the correspondence could be filed if necessary.

that interview.  If HCSD did not agree to such discovery, the situation could trigger a fresh round of discovery motion practice.

## ARGUMENT

HCSD relies on the "good cause" standard for modifying a scheduling order articulated in Rule 16(b)(4).  *See* Mot. at 1.  In general, Rule 16(b)(4) requires a showing that the existing deadline could not have been met despite the moving party's diligence.  *See O'Connell v. Hyatt Hotels*, 357 F.3d 152, 154 (1st Cir. 2004) (quoting Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b)); *see also* 6A Wright & Miller, *Federal Practice and Procedure* § 1522.2 (3d ed. 2023).  Thus, "Rule 16's 'good cause' standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  *See Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (internal quotation marks and citation omitted).  Consequently, courts have denied motions to re-open discovery where the moving party does not demonstrate that it could not have acquired the information prior to the close of discovery.  *See, e.g.*, *Gladu v. Waltz*, No. 18-275, 2020 WL 1156115, at *1-2 (D. Me. Mar. 10, 2020); *Lopez v. Timeco Inc.*, 291 F. Supp. 3d 1, 4-5 (D.D.C. 2017).

Here, HCSD has not made the required showing to re-open fact discovery and take these depositions.  As explained above, HCSD knew that these witnesses were housed with Madelyn from its own records.  Both sides disclosed them as potential witnesses.  HCSD interviewed them both in 2020, then interviewed Ms. Champagne again during the fact discovery period.  HCSD does not claim that the declarations diverge from the information provided by the witnesses in those interviews.  HCSD vaguely asserts that the "allegations had not previously been disclosed to defendants *by the plaintiff[]*," *see* Mot. at 6, but in reality these declarations closely mirror the

allegations contained in both the original and amended complaints. *See* Cmplt. (D.E 1) ¶¶ 67-68; Am. Cmplt. (D.E. 142) ¶¶ 70-71, 75.  For example, HCSD has known since at least 2020 that the Estate alleges that, from September 30 to October 1, 2018 (the time when Madelyn and Ms. Champagne shared a cell), Madelyn asked the staff making rounds for medical help due to chest pain, triggering comments from the staff in response. *See* Cmplt. (D.E 1) ¶ 67.

HCSD chose not to pursue a deposition of Ms. Cox during fact discovery.  And, for Ms. Champagne, HCSD met with her during fact discovery and obtained her address and phone number, but it does not contend that it ever served a subpoena or otherwise pursued a deposition after that meeting.  Perhaps these were strategic judgments to avoid memorializing their damaging testimony on the chance that the witnesses might later prove unavailable for trial, *see* Fed. R. Evid. 804(b)(1) (former testimony hearsay exception), or perhaps there was a different reason.  But either way, HCSD has not shown a basis to re-open discovery.

Lastly, contrary to HCSD's contentions, the Estate's production of the declarations did not violate any discovery obligations, and nothing about the existence or production of the declarations warrants re-opening fact discovery at this time.  Generally speaking, evidence used to support or oppose a motion for summary judgment may be presented in the form of a declaration.  *See* Fed. R. Civ. P. 56(c)(4); *see, e.g.*, *James v. Ally Fin., Inc.*, No. 1:22-cv-10306, 2023 WL 4353997, at *5 (D. Mass. July 5, 2023) (denying motion to strike a corporate representative's summary judgment declaration, where party had disclosed that its corporate representatives as a category may have discoverable information).  Here, these declarations were executed in mid-June 2023 as the parties approached the time for dispositive motions.  To the extent the Estate was required to produce the declarations as supplemental discovery under Rule 26(e), it did so that same month and satisfied any such obligation.  HCSD, however, waited six weeks after receiving the

declarations to confer with Plaintiff about reopening discovery, and then it waited almost four more months to file this motion on the eve of its summary judgment deadline.  HCSD has not made a showing that it is entitled to re-open fact discovery under standards of Rule 16.

## CONCLUSION

For all the foregoing reasons, the motion to re-open fact discovery (D.E. 154) should be denied.

December 1, 2023                                                   Respectfully submitted,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO # 670685)
Daniel L. McFadden (BBO # 676612)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170

David Milton (BBO # 668908)
Prisoners' Legal Services of Massachusetts
50 Federal St.
Boston, MA 02110
(617) 482-2773

Martin M. Fantozzi (BBO # 554651)
Richard J. Rosensweig (BBO # 639547)
Goulston & Storrs PC
400 Atlantic Avenue
Boston, MA 02110
(617) 482-1776

*Attorneys for Plaintiff*

**<u>Certificate of Service</u>**

I hereby certify that this document is being served on all counsel electronically via the Court's CM/ECF system.

December 1, 2023                                        */s/ Daniel L. McFadden*
                                                        Daniel L. McFadden

8