# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAURA O'NEILL, as administrator ) | |
| Of the Estate of Madelyn E. Linsenmeir, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| CITY OF SPRINGFIELD, MOISES ) | Civil Action No.: 3:20-cv-30036 |
| ZANAZANIAN, REMINGTON MCNABB,) | |
| SHEILA RODRIGUEZ, HAMPDEN ) | Leave to File Excess Pages Granted |
| COUNTY SHERIFF'S DEPARTMENT, ) | December 19, 2023 |
| And JOHN/JANE DOES NOS. 1-5, ) | |
| Defendants ) | |

## MEMORANDUM IN SUPPORT OF MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.    Introduction…………………………………………………………...………...6

II.   Factual Statement……………………………………………………….....……6

III.  Standard for Summary Judgment……………………………………...…….…7

IV.   Argument……………………………………………………………….....…8
  A.  The City, Zanazanian, McNabb, and Rodriguez (Municipal Defendants) Are
      Entitled To Judgment In Their Favor On Count I, Brought Under 42 U.S.C.
      § 1983 Under the Facts of This Case…………………………………………...8

      1.  Plaintiff's Decedent Was Not In The Custody of Springfield
          Police Department ("SPD") At The Time Of Her Death……………………...……8

      2.  Ms. Linsenmeir Was Not Suffering From An Apparent Serious Medical
          Condition During Her Detention at SPD………………………………………....12

      3.  No Municipal Employee Acted In A Deliberately Indifferent Manner To
          Ms. Linsenmeir……………………………………………………………..14

      4.  McNabb, Zanazanian and Rodriguez Are Protected By Qualified Immunity
          In This Case………………………………………………………………..…19

      5.  The City of Springfield Cannot Be Found Liable Under A *Monell* Theory
          Under the Facts of This Case…………………………………………….…...21

          a.  Since no agent or employee of the City violated Linsenmeir's
              Constitutional Rights, The City Is Entitled to Judgment In Its Favor………22

          b.  The Policies, Customs, and Practices of the SPD Regarding Medical
              Treatment For Detainees Comported with Constitutional Mandates………..22

          c.  The Training The SPD Regarding Medical Treatment For Detainees
              Comported with Constitutional Mandates………………………………...25

  B.  Plaintiff Cannot Sustain A Claim Under M.G.L. c. c. 229 § 2 As The SPD
      Employees Did Not Intentionally Act To Cause Linsenmeir's Wrongful Death……28

V.  Conclusion……………………………………………………………………31

## TABLE OF AUTHORITIES

**Cases**

Statement of Authority

Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020)………………………….………………………13

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)………………………………………………7

Ashcroft v. al–Kidd, 563 U.S. 731 (2011)………………………………...……………………….20

Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011)………………………………….………………7

Board Bryan County v. Brown, 520 U.S. 397 (1997)………………………………….……………… 26

Burrell v. Hampshire Cnty, 307 F. 3d 1 (1ˢᵗ Cir., 2002)……………………………………….………15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)………………………………...……………7, 8

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989)……………………………………….…… 25

City of Los Angeles v. Heller, 475 U.S. 796 (1986)…………………………………………………22

City of Revere v. Mass General Hosp., 463 U.S. 239 (1983)………………………...……………………9

Collins v. City of Harker Heights, 503 U.S. 115 (1992)………………………………….……………22

*Comeau v. Town of Webster,* 881 F.Supp.2d 177 (D.Mass, 2012)………………………………….……29

Connick v. Thompson, 563 U.S. 51 (2011)………………………………………………….……23

Coscia v. Town of Pembroke, Mass., 659 F.3d 37  (1st Cir., 2011)…………………………….9, 10, 11, 16

Daury v. Smith, 842 F.2d 9  (1st Cir.1988)………………………………………...……………………7

de Feliciano v. de Jesus, 873 F.2d 447  (1st Cir.)……………………………………………………22

Estate of Sacco v. Hillsborough Cnty., 561 F.Supp.3d 71 (D.N.H., 2021)…………………….…………13

Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238 (D. Mass. 2010)  …………………..…29

Farmer v. Brennan, 511 U.S. 825 (1994)………………………………………………….…9, 13, 15, 16

Feeney v.Corr. Med. Svc., 464 F.3d 158 (1ˢᵗ Cir., 2006)……………………………………….…..15, 16

Forbush v. City of Lynn, 625 N.E.2d 1370  (1994)……………………………………………………29

Foster v. McGrail, 844 F.Supp. 16  (D.Mass.,1994)……………………………………………………29

Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.1990)…………………………………..9

Giroux v. Somerset County, 178 F.3d 28 (1st Cir., 1999)……………………………………………..…17

Hannon v. Beard, 645 F.3d 45  (1st Cir. 2011)……………………………………………………………..…7

Helling v. McKinney, 509 U.S. 25 (1993)………………………………………………………...……13

Karmue v. Moore, 654 F.Supp.3d 118 (D.R.I., 2023)…………………………………………………13

Kosilek v. Spencer, 774 F.3d 63, 84 (1st Cir, 2014)…………………………………………………………15

Kennedy v. Town Of  Billerica, 617 F.3d 520 (1st Cir., 2010)……………………………………………..…25

Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484  (1st Cir. 2011)…………………………………………15

Los Angeles County, Cal. v. Humphries, 131 S. Ct. 447 (2010)……………………………………...…..23

Malley v. Briggs, 475 U.S. 335 (1986)………………………………………………………………20

Miranda-Rivera v. Toledo Davis, 813 F.3d 64 (1st Cir., 2016)…………………………...……9, 12,13, 14, 25

Molinaro v. Town of Northbridge, 419 Mass. 278  (1995)……………………………….…………………28

Monell v. Department of Social Services, 436 U.S. 658 (1978)……………………………...……………22, 23

Mullenix v. Luna, 577 U.S. 7 (2015)……………………………………………………………...……20

Oliver v. Digital Equipment Corp., 846 F.2d 103 (1st Cir.1988)…………………………………….…7

O'Neill v. Mencher, 488 N.E.2d 1187, (1986)……………………………………………………..…28, 29, 30

Perez De La Cruz v. Crowley Towing., 807 F.2d 1084 (1st Cir.1986)……………………………..……….7

Perry v. Roy, 782 F.3d 73  (1st Cir, 2015)……………………………………………………………...……15

Ramos v. Patnaude, 640 F.3d 485  (1st Cir. 2011)……………………………………………16, 17

Reichle v. Howards, 566 U.S. 658  (2012)…………………………………………………..…20

Robinson v. Cook, 706 F.3d 25   (1st Cir, 2013)……………………………………………...……15, 22

Ruiz-Rosa v. Rullan, 485 F.3d 150 (1st Cir. 2007)……………………………………………………15,16

Stamps v. Town of Framingham, 38 F.Supp.3d 146 (D.Mass, 2014)…………………………...……29

Swain v. Spinney, 117 F.3d 1  (1st Cir.1997)…………………………………………………..……26

Valdizan v. Rivera-Hernandez, 445 F.3d 63  (1st Cir. 2006)……………………………………………19

Whitfield v. Melendez-Rivera, 431 F.3d 1 (1st Cir. 2005)……………………………………………… 20

Wilson v. Town of Mendon, 294 F.3d 1  (1st Cir., 2002)………………………………………..…12

Young v. City of Providence ex rel. Napolitano, 404 F.3d 4  (1st Cir. 2005)………………...……25, 26

**Statutes**

42 U.S.C. § 1983………………………………………………………………………..6

M.G.L. c. 229 § 2………………………………………………………………..…6, 28

MGL c. 258, § 2……………………………………………………………………28

MGL c. 258, § 10……………………………………………………………....…28

**Rules**

Fed. R. Civ. P.  56………………………………………………………………6, 7

LR, D. Mass. 56 …………………………………………………………….……..6

## I.      INTRODUCTION

This action arises out of the death of Madelyn Linsenmeir on October 7, 2018, while in the custody of the Hampden County Sheriff's department (HCSD).  Ms. Linsenmeir was arrested in Springfield, Massachusetts, on Saturday, September 29, 2018.  *MDSOF ¶ 5*.  She was booked and held at the police lock-up in Springfield, MA, for less than twenty-four hours until she was transferred to the custody of the HCSD and the Women's Correctional Center (WCC) in Chicopee, MA.  *MDSOF ¶ 80*.

The amended complaint filed in this matter contains four Counts, of which two are directed at municipal defendants, i.e. Count I – Unconstitutional Failure to Provide Medical Care in violation of 42 U.S.C. § 1983 (against defendants Zanazanian, McNabb, Rodriguez, and the City of Springfield) and COUNT IV – Wrongful Death, M.G.L. c. 229 § 2 (against defendants Zanazanian, McNabb, Rodriguez, (hereinafter "municipal employees") and two non-municipal defendants.)

Non expert discovery is complete, and the city and the municipal employees now move for summary judgment in their favor, as no material facts are in dispute, and the City and its employees are entitled to judgment as a matter of law.

## II.      UNCONTESTED MATERIAL FACTS

The municipal defendants have separately filed a statement of uncontested material facts in accordance with Fed. R. Civ. P. Rule 56, and LR, D. Mass. Rule 56.  The facts set out therein will be referenced in this memo as Municipal Defendants Statement of Fact (MDSOF) followed by the numbered paragraph(s) corresponding to such facts.

### III.      STANDARD FOR SUMMARY JUDGMENT

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(internal citations omitted).

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party." *Avery v. Hughes,* 661 F.3d 690, 693 (1st Cir. 2011). "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). A party opposing summary judgment must affirmatively set forth facts demonstrating the existence of a genuine, triable issue. *Perez De La Cruz v. Crowley Towing & Transportation Co.*, 807 F.2d 1084, 1086 (1st Cir.1986); *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir.1988); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988*), Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party identifies those portions of "the pleadings, depositions, answers to interrogatories, . . . admissions . . . [and] affidavits, if any" that "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts necessitating a trial; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed.R.Civ.P. 56 (c) (1) and (A); or by demonstrating that the material cited by the moving party does not establish the absence of a genuine dispute. *See* Fed.R.Civ.P. 56 (c) (1) and (B). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* At 250. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 250-51. As the Court recognized:

> "[n]or are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Id.* at 251.  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## IV.   ARGUMENT

### A.   The City and the Municipal Employees Cannot be Found Liable Under 42 U.S.C. § 1983 For Failure To Provide Medical Care Under The Facts In This Case

1.   <u>The *City and Municipal Actors are entitled to judgment in their favor on Count I as the decedent was not in the custody of the Defendants at the time of her death.*</u>

Ms. Linsenmeir was a pre-trial detainee, in the custody of the Springfield Police Department (SPD) from September 29, 2018, until September 30, 2018, when she was transferred to the custody of the HCSD.  *MDSOF* ¶ 6, 77.  Ms. Linsenmeir's death was caused by a serious pre-existing medical condition, of which the municipal employees were unaware. *MDSOF* ¶ 2, 4.  Her medical condition was not caused by the municipal defendants. *MDSOF* ¶ 2.  She was aware that she was feeling ill in the days

leading up to her arrest and refused to seek medical help herself prior to her arrest, despite her family's exhortations to seek assistance. *MDSOF* ¶ 3.

A pre-trial detainee's right to medical care is grounded in the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual punishment. *See City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 244 (1983). However, this right is "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.; see also Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir.1990).

"Fourteenth Amendment substantive due process requires the government to provide" adequate medical care to pretrial detainees. *Miranda-Rivera v. Toledo Davis*, 813 F.3d 64, 74 (1st Cir., 2016) (citing *Mass. Gen. Hosp.,* supra at 239).  "A state and its subdivisions are under a substantive obligation imposed by the Due Process Clause of the Fourteenth Amendment to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health. *Mass. Gen. Hosp.,* at 244; *see Farmer v. Brennan,* 511 U.S. 825, 835 (1994) (standard of deliberate indifference except as to excessive force claims).  The duty to pre-trial detainees' springs from the unique circumstances of detention. *Id.* at 40-41. "The government's obligation to prevent avoidable harm by providing medical care during custody is, in other words, a substitute for the responsibility that a reasonable person would bear for himself, if he were not detained." *Id.*

In *Coscia*, the Court declined to extend liability to post custody loss.  *Coscia v. Town of Pembroke, Mass.,* 659 F.3d 37, 39 (1st Cir., 2011). The decedent in *Coscia* was arrested following an automobile accident; he expressed suicidal ideation over the course of his detention, and was not placed in a cell, but rather was held under suicide protocols.  *Id*. at 37-38.  He was released at about 6 o'clock in the evening and killed himself at about 8:00 a.m. the next morning.  *Id*. Although they recognized he was expressing suicidal intent, the police took no proactive steps to protect him

after his release from detention (e.g., by having him evaluated during the period of his detention). *Id*.

Under the rule enunciated in *Coscia*, the SPD cannot be liable for failure to provide medical care to Madelyn Linsenmeir. The decedent had not been in the custody of the SPD for 7 days at the time of her death. She was in the custody of the HCSD throughout that time. Moreover, she was not admitted to the hospital until October 4, 2018, four days after having been transferred from SPD.

As the Court held, "in the absence of a risk of harm created or intensified by state action there is no due process liability for harm suffered by a prior detainee after release from custody in circumstances that do not effectively extend any state impediment to exercising self-help or to receiving whatever aid by others may normally be available." *Id* at 41. Here, Ms. Linsenmeir was transferred to the custody of the HCSD in essentially the same condition she was in when arrested, with an unknown and ultimately lethal heart condition.

Plaintiff is no doubt going to argue since Ms. Linsenmeir was still not free to seek her own medical care, SPD somehow has continuing liability. That cannot be the result the Court in *Coscia* intended. *Coscia* held that liability, in the circumstances of that case, would end when the decedent was released from custody, as he could then avail himself of available medical assistance. *Id.* However, the duty of the SPD arises only because during the time she was in their custody, they and not Ms. Linsenmeir had the power to access medical assistance. Once she is no longer in SPD's custody, and under the control of the SPD, their duty and, hence, their liability must cease.

Plaintiff attempts to extend due process liability for harm to a circumstance well beyond what the *Coscia* court envisioned.  While in lock up, the SPD had both the duty and the ability to monitor Ms. Linsenmeir and to respond if she appeared to have a serious medical need.  Once custody transferred to the HCSD, the SPD had no further power to intercede.  Indeed, if the SPD is held liable for a death occurring seven days after they last could have intervened on her behalf, there is no limit on how long the duty would extend.  Under the reasoning the Plaintiff urges this Court to adopt, if Ms. Linsenmier had waived extradition and been transferred to New Hampshire (where an arrest warrant was issued for her), the SPD would be responsible for her death unless the New Hampshire Court authorized bail.  *MDSOF* ¶ 34.

Plaintiff argues that since a medical intervention by the SPD *might* have extended Ms. Linsenmeir's life, this Court should find the City and its actors constitutionally liable.  The First Circuit rejected this "but for" tort standard.  *Id* at 40.  ("Although principles of liability under Section 1983 borrow from the understanding of tort causation … we think the rationale for official responsibility under the Due Process Clause requires a limit on liability that stops short of the point that may be reached by fact causation analysis".) (internal citations omitted.) The fact that earlier intervention *may* have improved a medical issue does not impact the due process limitations on liability.  *Id.* at 41, fn2 ("Of course, ministrations during custody might change an individual permanently for the better, so that when a detainee's release leaves him free from the government's limits on his liberty he will actually have no need for medical services. But, for the reasons set out, that is incidental to due process.")

Plaintiff also claims that the SPD and the HCSD should be held to joint tortfeasor liability.  Joint tortfeasor principles have been applied to §1983 claims only where the actors act concurrently and as part of a joint effort.  "While there is no requirement that a plaintiff seeking to

establish joint venture liability prove the existence of an anticipatory compact, aiding and abetting liability does require proof that a defendant 'associated himself with the venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed.'" (internal citations omitted). *Wilson v. Town of Mendon*, 294 F.3d 1, 14–15 (1st Cir., 2002). There are no facts to support such association in the present case. There is not even a scintilla of evidence that either the SPD or the HCSD defendants jointly sought to harm Ms. Linsenmeir. Joint venture or joint tortfeasor liability is supported by neither fact nor law in this case.

Ms. Linsenmeir was not in the custody of the SPD at the time her medical condition required immediate medical intervention. No law or fact supports joint tort liability with the HCSD. For these reasons, this Court must grant summary judgment to the City and municipal employees.

2. <u>This Court must grant Summary Judgment to Defendants because no duty to provide medical care arose while Ms. Linsenmeir was in the SPD's custody because she was not suffering from an **apparent** serious medical condition;</u>

A duty to provide medical care only arises when a pre-trial detainee suffers from an apparent, "obvious," serious medical need." *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016). Here, the SPD had no duty to provide continuing care to Ms. Linsenmeier after her transfer to the HCSD because no duty to provide medical assistance arose while Ms. Linsenmeier was in SPD custody.

The members of the SPD are law enforcement personnel, not medical providers. The Fourteenth Amendment requires municipal employees to provide a pre-trial detainee access to medical care only where the detainee is suffering from an apparent "serious medical need…that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.*"  Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016); and see *Estate of Sacco v. Hillsborough Cnty. House of Corrections*, 561 F.Supp.3d 71, 83 (D.N.H., 2021). The medical need must pose a "sufficiently substantial 'risk of serious damage to [the detainee's] future health.' " *See Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (applying Eighth Amendment and quoting *Helling v. McKinney,* 509 U.S. 25, 35 (1993)). The effect, if any, of a delay in treatment can also be used to determine the seriousness of a prisoner's medical needs. *Abernathy v. Anderson*, 984 F.3d 1, 6 (1st Cir. 2020).

Here, the only objective signs of injury displayed by Ms. Linsenmeir during period of her detention with the SPD were difficulty walking, a swollen knee, and complaints of pain, including chest pain. *MDSOF* ¶ 7, 13, 23, 32, 78, 79.  She offered a rational explanation of the knee injury, stating she had been in an accident about a week before. *MDSOF* ¶ 36.  She was coherent, was able to walk on her own, did not lose consciousness, did not appear to be sweating or having difficulty breathing. *MDSOF* ¶ 28, 32. She was offered and accepted water. *MDSOF* ¶ 27, 41. Linsenmeir appeared better after drinking the water. *MDSOF* ¶ 41.  See *Karmue v. Moore*, 654 F.Supp.3d 118, 143 (D.R.I., 2023)(granting summary judgment to Defendants on remarkably similar facts.)

The conduct of Maureen Linsenmeir during the time Madelyn Linsenmeir was in SPD's custody, and the content of Maureen's text messages during the same period of time, support the conclusion that Ms. Linsenmeir was not suffering from an apparent serious medical condition at the time of the phone call on September 29, 2018.  Maureen Linsenmeir sends text messages to her other two daughters, as well as a family friend, during the time Madelyn Linsenmeir was in the SPD's custody. *MDSOF* ¶ 55,  61, 62.  She relates that Madelyn complained of knee pain, and that Madelyn had high blood pressure. *MDSOF* ¶ 56 62.  She never mentions any concerns about

chest pain or difficulty breathing. *MDSOF* ¶ 63.  Maureen Linsenmeir stated to her other two daughters that by the time she and Madelyn Linsenmeir finished speaking on the phone on September 29, 2018 Madelyn Linsenmeir sounded "(n)ot great, but ok." *MDSOF* ¶ 60.

Most significantly, when Madelyn Linsenmeir was seen by two trained medical personnel at the WCC on September 30th, neither of the trained nurses recognized a serious medical need. *MDSOF* ¶ 96, 101.  Her vital signs were obtained at the WCC on September 30th and found to be within normal limits. *MDSOF* ¶100 She was given over the counter pain medication and a prescription for a bag of ice. *MDSOF* ¶97.  If two trained medical personnel were unable to recognize the seriousness of Ms. Linsenmeir's medical condition, it was clearly not "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Miranda-Rivera,* supra, at 74.

The Plaintiff themselves have offered an expert report that clearly documents that while Ms. Linsenmeir suffered from a very serious medical condition, it was not an *obvious* medical emergency until, at the earliest, October 3, 2018--4 days after Ms. Linsenmeir transferred to the custody of the HCSD. *MDSOF* ¶ 122  In that report Dr. Kimmel opines that Ms. Linsenmeir was "very likely" to survive if treated medically from September 29, 2018 through October 1st, 2018, and more likely than not to survive if treated on October 2, 2018. *MDSOF* ¶ 122, 123   Ms. Linsenmeier's survival, according to that report, depended on treatment received *after* her transfer from SPD custody. Since Ms. Linsenmeir was not suffering from an obvious and serious medical condition at the time of her detention at the SPD, summary judgment must enter for the City and its employees on Count I.

3.     *This Court must grant summary judgment to the municipal employee defendants because their conduct did not amount to deliberate indifference.*

a. The response of Moises Zanazanian to Ms. Linsenmeir's reports of pain and statement that she "might" need to go to the hospital was reasonable, and under the facts of this case no jury could find his actions amounted to deliberate indifference.

Whether a deprivation is sufficiently serious to violate the constitution is a question of law. *See Kosilek v. Spencer*, 774 F.3d 63, 84 (1st Cir, 2014)(collecting authority). While pretrial detainees fall under the Fourteenth Amendment Due Process Clause, the analysis for deliberate indifference aligns with that of the Eighth Amendment. *Burrell v. Hampshire Cnty.,* 307 F.3d 1, 7 (1st Cir. 2002). To act, or to fail to act, with deliberate indifference, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he* must also draw the inference.'" *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011)(emphasis added)(quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Deliberate indifference in this context" can take several forms, and "may be shown by the denial of needed care as punishment" or that the defendant had "actual knowledge of impending harm, easily preventable," and failed to take the steps that would have prevented that harm. *Ruiz-Rosa v. Rullan,* 485 F.3d 150, 156 (1st Cir. 2007) (quoting *Feeney v. Corr. Med. Servs., Inc.,* 464 F.3d 158, 162 (1st Cir. 2006)). "The subjective component requires [fact] supporting an inference of 'deliberate indifference' by the defendants." *See Kosilek v. Spencer*, 774 F.3d at 83 (citation omitted).

Deliberate indifference refers to "a narrow band of conduct[.]" *Id.* (quoting *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)). Demonstrating deliberate indifference requires allegations supporting a conclusion "that the absence or inadequacy of treatment is *intentional*" rather than simply inadvertent. *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir, 2015)(emphasis added). "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional

violation." *Ruiz-Rosa*, 485 F.3d at 156 (citing *Feeney*, 464 F.3d at 161-62*); see also Ramos v. Patnaude*, 640 F.3d 485, 490 (1ˢᵗ Cir. 2011) ("[M]isjudgment, even negligent misjudgment, is not deliberate indifference."). The Plaintiff in this case must demonstrate proof that each Defendant actually knew of a substantial risk of serious harm to Ms. Linsenmeir and intentionally failed to act to the point where it should be considered an infliction of punishment. *Farmer*, 511 U.S. at 832–34.

Here, Zanazanian's interactions with Ms. Linsemeir did not amount to deliberate indifference as a matter of law.  He interviewed her, inquired about her mental status, inquired about her medical concerns, arranged for her to have water to drink at her request and documented both in writing and by photograph her complaints of swelling in her legs. *MDSOF* ¶ 24, 26  She was coherent.  *MDSOF* ¶28 She answered questions fully and intelligibly. *MDSOF* ¶28,   He observed her and decided based upon his observations that she was not in immediate medical need.  *MDSOF* ¶ She did not pass out.  *MDSOF* ¶ She did not appear to be sweating profusely and did not appear to have trouble breathing. *MDSOF* ¶28  She did not repeat her complaints about chest pain and/or trouble breathing after returning to her cell following her phone call to her mother.  *MDSOF* ¶ 44. She walked into and around the booking area without assistance. *MDSOF* ¶ 32.   She was held in the cell where fifteen minute "eyes on" checks were done, and the matron on duty never felt the need to alert Zanazanian to any serious medical issues.  *MDSOF* ¶ 48, 50, Ms. Linsenmeier was transported to a facility known to have a medical unit the very next day. *MDSOF* ¶ 80.

At worst, Zanazanian misjudged the medical situation.  Per Plaintiff's own expert, Linsenmeir's medical condition did not appreciably worsen until October 2, 2018—two

days after her brief stay in SPD custody.  *MDSOF* ¶ 126. This is not sufficient to show the state of mind necessary to support a finding of deliberate indifference.  "Deliberate indifference" requires a showing of "greater culpability than negligence but less than a purpose to do harm" and it may "consist of showing a conscious failure to provide medical services where they would be reasonably appropriate." *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011). "To show such a state of mind, the plaintiff must provide evidence that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented the harm." (citation and internal quotation marks omitted). As the First Circuit observed in *Giroux v. Somerset County*, this calls to mind the "standard for determining criminal recklessness." 178 F.3d 28, 31 (1st Cir. 1999).

Zanazanian had no knowledge of the potential harm caused by Ms. Linsenmeir's serious but unknown medical condition.  He observed her, reasonably relied upon the matrons to continuously monitor her, and she was transported the next day to HCSD, an institution equipped with medical facilities.  *MDSOF* ¶ 37, 38 80.  Her condition did not worsen during the 15 hours she was in the SPD's custody.  *MDSOF* ¶ 126 "Insufficient zeal for efficiency cannot be equated with deliberate indifference, however much it may amount to negligence." *Ramos v. Patnaude*, *supra*, 640 F.3d at 490.  Under the circumstances, Zanazanian's conduct did not amount to deliberate indifference, and he is thus entitled to judgment in his favor on Count I.

b. <u>Sheila Rodriguez's actions, checking on Ms. Linsenmeier every 15 minutes, were not deliberately indifferent to Ms. Linsenmeir's medical needs.</u>

Defendant Sheila Rodriguez worked as a civilian employee of the SPD on the 4PM to midnight shift on the night of September 29, 2018.  *MDSOF* ¶ 19 In her role as a detention attendant, also referred to by the SPD as a "matron,"  Ms. Rodriguez was responsible for processing female prisoners, searching them, and supervising them in the holding cells.  *MDSOF*

¶ 42. As part of that supervision she made cell checks every 15 minutes, a process that was recorded electronically. *MDSOF* ¶ 48. Ms. Rodriguez' training as a matron required notifying the sergeant in charge of the booking area on that shift if a prisoner told her about serious symptoms.  *MDSOF* ¶ 43. Matrons also documented any significant medical complaints in a book kept in the holding area. *MDSOF* ¶ 43.

Ms. Rodriguez had no knowledge of the serious underlying medical condition from which Ms. Linsenmeir suffered.  Ms. Rodriguez observed Linsenmeir at least every 15 minutes during her shift. *MDSOF* ¶ 42, 48. Linsenmeir did not appear in medical distress. *MDSOF* ¶ 50, 70.  She complained of body aches, a swollen knee and that the bed was hard. *MDSOF* ¶71.  At the booking desk when Linsenmeir was first brought in Ms. Rodriguez heard Linsenmeir say she felt like her chest was caving in and that she might need to go to the hospital, but thereafter she did not repeat those complaints to Ms. Rodriguez. *MDSOF* ¶ 47,45.  Ms. Linsenmeir did not appear to have any trouble breathing. *MDSOF* ¶ 69.

Ms. Rodriguez was not charged with deciding whether medical assistance was called for a detainee. Rather, the City of Springfield's policy and procedure was for Rodriguez to notify the sergeant on duty of any complaints of a medical nature, or to report any signs of medical distress.  She observed Ms. Linsenmeir closely, as was Rodriguez' charge, and  never saw any signs of Linsenmeir being in medical distress. 70.  Under the undisputed facts of this case no reasonable jury could find that Ms. Rodriguez acted with deliberate indifference to Ms. Linsnemeir, such that a due process violation occurred. Accordingly, summary judgment should issue in Ms. Rodriguez' favor as to Count I.

c. <u>Officer Remington McNabb's conduct toward Ms. Linsenmeir does not amount to deliberate indifference as a matter of law.</u>

McNabb also had no knowledge of the serious underlying medical condition from which Ms. Linsenmeir suffered. Like Ms. Rodriguez, Officer McNabb was not charged with determining whether Ms. Linsenmeir required immediate medical attention. Under the rules and regulations of the SPD Zanazanian as the officer of rank was charged with that obligation. *MDSOF* ¶ 107. Officer McNabb overheard the conversation between Zanazanian and Ms. Linsenmeir, including her statement that her chest felt like it was caving in, that she felt very ill, and that she was having trouble breathing. *MDSOF* ¶ 13. McNabb relied upon Zanazanian to determine whether Ms. Linsenmeir needed medical assistance. *MDSOF* ¶ 107. This reliance was not borne out of malice or deliberate indifference but rather the appropriate division of responsibility within the department. *MDSOF* ¶ 107.

Under the undisputed facts of this case no reasonable jury could find that Officer McNabb acted with deliberate indifference to Ms. Linsnemeir, such that a due process violation occurred. Summary judgment should issue in Mr. McNabb's favor as to Count I.

4.   *Even if The Court Found the Actions of the SPD Employees Violated the 14th Amendment, They Are Entitled to Qualified Immunity In This Case.*

Although it is the defendants' firm position that the plaintiff's claims fail on the merits as discussed, should the analysis continue, summary judgment still is appropriate based upon immunity principles. The federal courts apply a three-part analysis to determine whether qualified immunity shields a public official from liability. *Valdizan v. Rivera-Hernandez*, 445 F.3d 63, 64 (1st Cir. 2006). The first step is to determine whether the defendant's conduct amounted to a constitutional violation. *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 7 (1st Cir. 2005) (citations omitted). If a constitutional violation is found, the second prong requires deciding whether the

19

constitutional right was clearly established at the time of the alleged violation. The third prong is whether a reasonable officer, similarly situated, would understand that his conduct violated that clearly established right. *Id.*

Here no constitutional violation occurred, and the Court need never address the second and third prongs of the qualified immunity analysis. However, if the Court did reach the second and third prongs, each of the named defendants is entitled to qualified immunity. The right of a pre-trial detainee to medical treatment for serious medical conditions is and was in 2018 well-established.  However, for purposes of determining qualified immunity a more detailed analysis is required.

The Supreme Court has cautioned courts not to define the constitutional right in question in general terms.  *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015).  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' *Id,* citing *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011) (emphasis in *Luna*).  The court held:

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' *Reichle v. Howards,* 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). 'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)."

In 2018 there was no clearly defined right to be provided with medical intervention, beyond monitoring, under the facts of this case.  Ms. Linsenmeir did not appear to be in acute medical distress.  *MDSOF* ¶ 40, 70 . She was coherent.   *MDSOF* ¶28,   There is no case law that the

20

Plaintiff can point to that would support a conclusion that the right to medical treatment under the circumstances of this case was "clearly established."

As to the third prong, if the Court found that there was a clearly defined constitutional duty under these circumstances for medical intervention (beyond monitoring the detainee), no reasonable officer would have believed that monitoring a detainee who did not appear to be in acute medical distress, and then transferring that detainee to a correctional facility known to have medical personnel violated Ms. Linsenmeir's constitutional right to medical attention.  Officers at the SPD are not trained medical personnel, but they are trained to assess emergency medical needs. *MDSOF 116, 117, 118, 119, 121*.   Sergeant Zanazanian, Officer McNabb and Ms. Rodriguez all determined that Ms. Linsenmeir did not appear in acute medical distress requiring more than monitoring during her detention. *MDSOF¶¶ 40, 70*   Sergeant Zanazanian was trained in recognizing signs of a heart attack, NARCAN and alcohol intoxication.  *MDSOF¶¶ 122, 123 and 124.* They were not "clearly incompetent" in their treatment of Ms. Linsenmeir, as evidenced by these facts: she was not having a heart attack or other emergency medical event during the time of her detention at SPD; she did not worsen while in SPD custody; and, no one could be expected to anticipate she had a serious, unknown medical condition that would turn critical in the coming days.  No one could have anticipated that this serious medical condition would not be detected at the HCSD until her condition was critical, and ultimately lethal.  For the foregoing reasons, Defendants Zanazanian, McNabb and Rodriguez are entitled to qualified immunity, and judgment in their favor.

5.    *This Court Must Grant Summary Judgment to the Defendant City of Springfield Because the Facts Do Not Support a Claim Against the City of Springfield, MA Under 42 USC §1983*

a.   <u>Since no employee or agent of the City of Springfield deprived the decedent of any constitutional right, the City itself cannot be found liable.</u>

Liability against the City of Springfield ("City) is premised on *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which held that a municipality could be liable in certain cases when its agents and employees committed constitutional violations, but not under a theory of respondeat superior. Id. at 691–95. Instead, only when the governmental employees' "execution of a government's policy or custom ... inflicts the injury" and is the "moving force" behind the constitutional violation can a municipality be liable. Id. at 694. Assessing liability against the City requires two basic elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the City be responsible for that violation, an element which has its own components. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).   "(P)olicy or practice aside, a municipality cannot be liable for the actions of its officials under *Monell* if those actions 'inflicted no constitutional harm.'" *Robinson v. Cook*, 706 F.3d 25, 38, (1st Cir, 2013) citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As set out above, Zanazanian, McNabb and Rodriguez are each entitled to summary judgment because they committed no acts in violation of the decedent's constitutional rights or otherwise entitled the Plaintiff to recover civil damages under § 1983.   Since the individual officers are not liable for any deprivation of civil rights, the City itself cannot be liable for a *Monell* claim. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (jury's finding that the police officer inflicted no constitutional injury on the plaintiff removed any basis for liability against the city); See also *de Feliciano v. de Jesus*, 873 F.2d 447, 449 (1st Cir.), cert. denied, 493 U.S. 850 (1989) (City cannot be held liable absent a constitutional violation by its officers).

b. <u>The policies, customs, and practices of the SPD relative to providing medical treatment to pre-trial detainees comported in all respects with constitutional mandates.</u>

Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, (1978) and its progeny, a plaintiff seeking to prove municipal liability under Section 1983 must demonstrate that a municipal custom or policy caused a plaintiff's injury. A Section 1983 action based on municipal policy is viable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell*, 436 U.S at 690.

The Supreme Court has reiterated the first element of a "policy or custom" as the basis for municipal liability in a case brought under 42 U.S.C. § 1983: "In sum, in *Monell* the Court held that "a municipality cannot be held liable" solely for the acts of others, *e.g.,* "*solely* because it employs a tortfeasor."  436 U.S., at 691. But the municipality may be held liable "when execution of a government's *policy or custom* ... inflicts the injury."  *Id.*, at 694. *Los Angeles County, Cal. v. Humphries*, 131 S. Ct. 447 (2010) (emphasis retained).

In addition to "official policies" a plaintiff may also point to a municipality's custom or practice that is "so well settled as to constitute a 'custom or usage' with the force of law." Id. at 691. A *Monell* claim based on failure to train, [supervise, investigate, control and discipline] requires a plaintiff to demonstrate that the "municipalities' failure to train its employees in a relevant respect . . . amount[ed] to 'deliberate indifference to the rights of persons with whom the [untrained employees] came into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)).

There are no facts in the summary judgment record that would support a conclusion that the City had a pattern, practice, custom or policy of failing to call ambulances or otherwise seek medical assistance for detainees in lock up who require medical assistance.  In fact, the records support the exact opposite conclusion.  SPD placed one hundred twelve (112) calls for an

23

ambulance to come to the booking area in calendar year 2017, eighty-two (82) calls for an ambulance to come to the booking area in 2018 and fifty-three (53) calls for an ambulance to come to the booking area in 2019. *MDSOF* ¶ 110, 111, 112. In fact on the night Ms. Linsenmeir was in custody an ambulance was summonsed to bring a different detainee to the hospital. *MDSOF* ¶ 113. On the day before her detention an ambulance was summonsed 3 times, and on the 30th an ambulance was called to the booking area twice. *MDSOF* ¶ 113.

The written policies of the SPD around booking personnel's obligations to provide appropriate medical assistance comport fully with the constitutional mandates as they existed in 2018. Rule 26 of the SPD rules and regulations provides in relevant part:

> "(i)f, in the judgment of the Superior Officer or officer of rank in charge, the prisoner is suffering from wounds or injuries which require medical attention, the arrested person shall be taken to a hospital and while in the hospital, such prisoner shall be in the legal custody of the police. If wounds or injuries appear to have been inflicted by the arresting officer, the official in charge shall report such fact to the Chief of Police. If it shall appear that unjustifiable violence was used, charges will be preferred against the offender. When a prisoner is unconscious from any cause, the Superior Officer or officer of rank in charge should immediately endeavor to restore consciousness. Failing to do so within reasonable time, he should cause such person to be taken to a hospital for examination. An unconscious person should not be placed in a cell except with the sanction of physician. If the Superior Officer or officer of rank finds that the prisoner is suffering from a mental condition, including but not limited to suicidal tendency he should provide proper safeguarding to prevent the prisoner from harming himself or other persons." *MDSOF* ¶ 107.

While the Plaintiff asserts the policy should have been more detailed, and/or that the policy should have required medical intervention whenever someone complains of chest pain or difficulty breathing, with no discretion for the officers on the scene to assess the circumstances, that is simply not a constitutional mandate. Perhaps in a negligence case such an argument could support a question of fact for a jury to determine. Here, however, the Plaintiff's claim does not sound in

negligence, but rather is brought as a constitutional claim under §1983.  The constitutional mandate to police departments who temporarily hold pre-trial detainees requires that the detainee be allowed access to medical care only where the pre-trial detainee is suffering from an apparent "serious medical need." *Miranda-Rivera, supra, at* 74 (1ˢᵗ Cir. 2016).  The policy articulated in SPD's Rule 26 sets out the constitutional requirement to seek medical assistance when, in the judgement of the supervising officer, a detainee requires it.

c.   The training of employees of the SPD relative to providing medical treatment to pre-trial detainees comported in all respects with constitutional mandates.

There is no evidence in the record that would support a conclusion that the SPD failed to either train or supervise officers in a manner that rises to a constitutional tort.  "The municipality's failure to train or supervise its police officers only becomes a basis for liability when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Kennedy v. Town Of Billerica*, 617 F.3d 520, 531-32 (1st Cir., 2010) (quoting *Monell*, 436 U.S. at 691). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality--a 'policy' as defined by our prior cases--can a city be liable for such a failure under § 1983." C*ity of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

To sustain a claim against Springfield under a failure to adequately train its police officers plaintiffs must show that the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and that "the identified deficiency in a city's training program [is] closely related to the ultimate injury."  *City of Canton v. Harris,* 489 U.S. 378, 388 (1989);  *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005).

Additionally, Plaintiff must show the alleged inadequacies in its training program rose to the level of deliberate indifference.  *Id.*  Deliberate indifference means the City disregarded a known or obvious risk of serious harm. *Id.; see Board of County Comm'r of Bryan County v.*

*Brown,* 520 U.S. 397, at 407–08, (1997); *see also Swain v. Spinney,* 117 F.3d 1, 11 (1st Cir.1997); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 28.

The training at SPD in addressing medical needs was broad and frequent.  In 2018 every officer was annually received CPR and First Responder training.  *MDSOF* ¶ 118.  All Booking Sergeants received training in dealing with people who were suicidal and crisis intervention techniques.  *MDSOF* ¶ 117.  As part of CPR certification SPD officers were trained to recognize signs and symptoms of a heart attack.  *MDSOF* ¶121.  All officers were trained in emergency use of a defibrillator, and administering oxygen.  *MDSOF* ¶ 119. Zanazanian was trained in recognizing opioid overdose symptoms and administering Narcan.  *MDSOF* ¶ 123.  He was also trained to recognize the signs and symptoms of alcohol intoxication.  *MDSOF* ¶123.  Officers are trained to evaluate if a person is suffering from an emergency medical situation requiring immediate medical intervention. *MDSOF* ¶ 116.

There are simply no facts upon which a jury could reasonably find that the training offered at the SPD was insufficient.  The Plaintiff's argument that officers should have been trained that whenever anyone complained of chest pain and/or had trouble breathing they should have automatically been transported to an emergency room is not a constitutional standard.  Nor is it grounded in fact.  SPD personnel encounter people who are in various states of distress.  Some are under the influence of drugs, or alcohol, some have been the victim of a crime, some have been in a car accident, and some have just witnessed a violent or frightening occurrence.  Sometimes people will feign a medical condition for their own reasons, including to get out of lock up.  Some people experience anxiety or panic attacks.  For any number of reasons that are not medical emergencies people may hyperventilate, complain of difficulty breathing, or have chest pain.  Swollen knees and/or body aches are similarly not indicative of an emergency medical crisis.

Sergeant Zanazanian was trained to continuously assess the persons in detention.  *MDSOF* ¶30   If a situation appears critical at any time they should seek medical intervention.  *MDSOF* ¶107.   The instant case is illustrative of this training in practice.  During the time of her detention Madelyn Linsenmeir was observed and assessed.  *MDSOF* ¶ 28, 37, 48. She was not deemed to need emergency medical attention by the Sergeant who interacted with her, or by other SPD personnel.  *MDSOF* ¶ 40,  50.  She did not appear to be having a heart attack, and she, indeed, was not experiencing a heart attack.

Even if the Court determined the training was not adequate, there is no causal connection between the training received by SPD personnel and Madelyn Linsenmeir's death.  When Ms. Linsenmeir was examined by two experienced Registered Nurses on September 30, 2018, she was not deemed to need emergency medical intervention.  *MDSOF* ¶  104, 105.  She remained at the WCC for four more days, until October 4, 2018, and encountered nurses and doctors during that time.  None of the medical professionals who interacted with her over these four days after she left SPD custody  recognized her need for emergency medical intervention. *MDSOF* ¶ 125.

No facts in this record support a finding that the training regimen at SPD relating to evaluating and responding to people's medical needs was so deficient as to rise to the level of deliberate indifference.  As set out above, the training provided to SPD officers is frequent and broad.  They are trained first responders.  SPD has invested time and resources into both training and equipment, including Narcan, portable oxygen, and defibrillators. Importantly, the determination by SPD personnel that Ms. Linsenmeier did not need emergency medical intervention was consistent with the multiple medical professionals who later evaluated her condition. The *Monell* claim against the city is wholly unsupported in the summary judgement record, and the City is entitled to judgment in its favor on Count I.

**B.   Zanazanian, McNabb and Rodriguez Are Entitled to Judgment In Their Favor On Count IV, Brought Under M.G.L. c.229, §2 As They Did Not Cause Linsenmeir's Death Through Intentional Conduct**

If the Court reaches the issues brought under state law, the record is insufficient to support a claim that any municipal defendants intentionally caused Ms. Linsenmeir's death in violation of MGL c. 229, §2. Plaintiff claims that Rodriguez, Zanazanian and McNabb intentionally caused Ms.  Linsenmeir's wrongful death in violation of MGL c. 229, §2.  Comp. ¶ 113.  The facts in the summary judgment record are insufficient as a matter of law to sustain a finding of intentional conduct.

Under the Massachusetts State Tort Claims Act ("MTCA"), individual employees, such as the ones named here, are not liable for negligence, and suit can only be maintained against the public employer.  MGL c. 258, § 2.  The municipality cannot be held liable for intentional acts of its employees, and under those circumstances suit can only be brought against the public employees.  MGL c. 258, §10.  Claims governed by the MTCA are capped at $100,000.00.   The Massachusetts courts define conduct governed by the MTCA. The MTCA governs ordinary negligence as well as conduct that is "wanton" and/or "reckless. Intentional conduct is not covered by the MTCA, so M.G.L. c.258, §2 is the exclusive remedy.   *Molinaro v. Town of Northbridge*, 419 Mass. 278, 279 (1995).

In Massachusetts, recovery from individuals under the wrongful death statute is only appropriate if the employee's conduct was intentional. "A public officer 'is not liable for negligence or other error in the making of that decision' if made in good faith*."   O'Neill v. Mencher*, 488 N.E.2d 1187, 1190, 21 Mass.App.Ct. 610, 614 (Mass.App.Ct., 1986) (internal citations omitted.)  To avoid the cap on damages, Plaintiff characterized the alleged acts in her

complaint as "intentional."   The facts in the record, however, fail to provide the scintilla of evidence necessary to support this claim as a matter of law.  The municipal employees were always acting within the scope of their official duties, and thus are entitled to the protection of MTCA. See, e.g., *Comeau v. Town of Webster*, 881 F.Supp.2d 177, (D.Mass, 2012).

The Courts have had opportunities over the years to consider what constitutes intentional conduct sufficient to bring the claim outside the provisions of Chapter 258.   Massachusetts has adopted the Restatement of Torts distinction between intentional and reckless conduct, i.e.:

> "*Intentional misconduct and recklessness contrasted.* Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results." Restatement (Second) of Torts § 500 comment f (1964).

*Forbush v. City of Lynn*, 35 Mass.App.Ct. 696, 700 (1994).  (adopted in *Molinaro, supra*, at 279.) Reckless conduct is considered negligent, rather than intentional, under the MTCA, so employees will be given individual immunity.  *Stamps v. Town of Framingham*, 38 F.Supp.3d 146, 159 (D. Mass. 2014) (noting that recklessness is considered negligent and implicitly treating willful or wanton conduct as intentional); *Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238 (D. Mass. 2010) (same).  To avoid the limitations of the MTCA, the intentional act must be such that the actor intended harm to the Plaintiff.  *Foster v. McGrail*, 844 F.Supp. 16, 25 (D.Mass.,1994).  As set out above in the discussion of deliberate indifference, no such intent can be inferred from the actions of the municipal defendants named herein.

In *Mencher* the Court was confronted with a situation like the facts in this case. A staff psychiatrist at a public facility failed to require supervision in the showers of a patient, and the patient died by his own hand while unsupervised. *O'Neill v. Mencher*, 21 Mass.App.Ct. 610, (1986) The Court analyzed whether such conduct could be viewed as negligent or intentional, with the latter allowing the decedent's estate to collect under Chapter 229, rather than being confined to a claim under the MTCA with its attendant cap on damages. The Court noted the theory upon which the estate proceeded was that the defendants "inadequately and improperly supervised the decedent during his admission at Metropolitan State Hospital although [they] knew of the decedent's suicidal tendencies" and that they also "inadequately and improperly instructed staff members at [the hospital] in the care and supervision of the decedent...." Id at 1190. The Court found such conduct to be merely negligent, holding "(i)n sum, they were charged with failing to recognize, in setting a plan of treatment for the decedent, that he was suicidal. This failure, even if ministerial, would not be considered misfeasance under Massachusetts decisions but only nonfeasance." *Id.*

Similarly, the facts in this case fail to establish negligence, much less rise to the level of intentionally causing Ms. Linsenmeier's death. As noted, Zanazanian assessed Ms. Linsenmeir and concluded she was not in need of immediate medical attention. *MDSOF* ¶ 40. McNabb and Rodriguez reasonably relied upon Zanazanian, and never independently assessed Ms. Linsenmeir's medical issues as acute, serious, or requiring emergency evaluation and treatment. *MDSOF* ¶50 . Even if the jury found the municipal actors reached the wrong conclusion, "[t]his failure, even if ministerial, would not be considered misfeasance under Massachusetts decisions but only nonfeasance." *Id.* Because there are no facts that support liability under G. L. c. 229, § 2, as a matter of law, Count IV must be dismissed.

## V.  CONCLUSION

For the foregoing reasons the Defendants City of Springfield, Sheila Rodriguez, Remington McNabb and Moises Zanazanian state based on the uncontested material facts they are entitled to judgment in their favors on Counts I and IV of the complaint, and the claims brought herein against them should be dismissed.

Respectfully submitted,
Defendants, City of Springfield  and
Sheila Rodriguez, by their attorneys,

Dated:  December 21, 2023

*/s/ Lisa C. deSousa*
Lisa C. deSousa, Esq. BBO #546115
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103
Tel:     (413) 886-5205
ldesousa@springfieldcityhall.com

Defendant Moises Zanazanian,
by his attorney,

*/s/ John K. Vigliotti*
John K. Vigliotti, Esq. BBO #642337
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, MA 01609
Tel: (508) 754-7284
jvigliotti@rja-law.com

Defendant, Remington McNabb,
by his attorney,


*/s/ Kevin B. Coyle*
Kevin B. Coyle, Esq. BBO #103540
1299 Page Boulevard
Springfield, MA 01104
Tel: (413) 787-1524
attycoyle@aol.com


### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true copy of the within was this day served upon the

parties via the Federal Court's ECF Notice and Delivery System.  I am not aware of any party

who is a non-registered participant, and therefore electronic filing is the sole means of service of

this document.

Signed under the pains and penalties of perjury.


Dated: December 21, 2023                 /s/ Lisa C. deSousa
                                         Lisa C. deSousa, Esq.


32