**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
MAURA O'NEILL, as administrator )
Of the Estate of Madelyn E. Linsenmeir, )
              Plaintiff, )
v. )
 )
CITY OF SPRINGFIELD, MOISES )   Civil Action No.: 3:20-cv-30036
ZANAZANIAN, REMINGTON MCNABB,)
SHEILA RODRIGUEZ, HAMPDEN )
COUNTY SHERIFF'S DEPARTMENT, )
And JOHN/JANE DOES NOS. 1-5, )
              Defendants )
_____)


**MUNICIPAL DEFENDANTS' MEMORANDUM IN REPLY**
**TO PLAINTIFF'S OPPOSITION TO MOTION**
**FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.   Introduction……………………………………………………………………………..1

II.  Individual Municipal Defendants Are Entitled To Judgment in Their Favor……………..1

   A.  Ms. Linsenmeir was not in the SPD Custody When She Died………………………..1

   B.  The Legal Standard to Analyze The Municipal Defendants Conduct is Whether Their
       Actions Amounted To Deliberate Indifference
       To Ms. Linsenmeir's Medical Needs …………………………………………………2

   C.  The Actions of the Municipal Defendants With Regards to Ms. Linsenmeir's Medical
       Needs Was Objectively Reasonable Under the Circumstances ………………………3

   D.  Plaintiff Wrongfully States Mere Complaints of Chest Pain Require Urgent Medical
       Intervention………………………………………………………………………....4

   E.  Statements By SPD Personnel, Including Zanazanian, About Detainees Misstating
       Their Medical Conditions Is Not Evidence
       of Deliberate Indifference. ……………………………………………………………9

   F.  The Individual Municipal Defendants Did Not Cause Ms. Linsenmeir's Death ……10

   G.  The Individual Municipal Defendants Cannot be Liable for Pain and Suffering in this
       Case…………………………………………………………………………………..12

   H.  Individual Municipal Defendants Are Entitled to Qualified Immunity In This Case .13

III. The City of Springfield is Entitled to Summary Judgment Under
     any Monell Theory………………………………………………………………………..14

   A.  The City of Springfield's Policy and Practices Regarding Provision of Medical Care
       to Pre-Trial Detainees was in Accord with Constitutional Mandates……………….14

   B.  The Record Does Not Establish a Claim that Alleged Deficiencies in Internal Affairs
       Investigations or the Discipline of Officers Caused or Contributed to Cause Any
       Constitutional Harm to Linsenmeir…………………………………………………16

IV. Conclusion…………………………………………………………………………………18

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Ashcroft v. al-Kidd,* 566 U.S. 731, 741, 131, S. Ct. 2074, 179 L.Ed.2d 1149 (2011)………………….…14

*Baron v. Suffolk Cty. Sheriffs Dep't.,* 402 F.3d 225, 238-39 (1ˢᵗ Cir. 2005)……………………………17

*Bordanaro v. McLeod,* 871 F.2d. 1151, 1156 (1ˢᵗ Cir. 1989) …………………………………………....16

*Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004)………………………14

*Brown v. Palmer,* 2023 WL 4902769 (E.D. Wis. 2023)……………………………………………....…7

*City of Canton v. Harris,* 489 U.S. 378, 388, 391 (1989)……………………………………………….20

*City of Tahlequah Oklahoma v. Bond,* 142 S.Ct. 9, 11, 595 U.S. 9, 12 (2021)…………………………...14

*Consolo v. George,* 58 F.3d. 791, 794 (1ˢᵗ Cir. 1995)…………………………………………………12

*Coscia v. Town of Pembroke, Mass.,* 659 F.3d 37, 39 (1ˢᵗ Cir., 2011)…………………………………1, 11

*Couchon v. Cousins,* No. CV 17-10965-RGS, 2018 WL 4189694 (D. Mass., 2018)………………....…3

*Cox v. Massachusetts Dep't of Correction,* No. CV 13-10379-FDS,
     2018 WL 1586019 (D. Mass. 2018)……………………………………………………………4

*Daggett v. York City,* No. 2:18-CV-0303-JAW, 2021 WL 868713 (D.Me. 2021)…………………..…….3

*da Silva Medeiros v. Martin,* 458 F.Supp.3d 122 (D.R.I. 2020)………………………………………….2

*De La Cruz v. Martin,* C.A. No. 21-049-JJM-PAS, 2021 WL 12893449 (D.R.I. 2021)……………...……3

*Dinkins v. Gustave,* 2022 WL 1051110 (S.D.N.Y. 2022)………………………………………....….6

*District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018)……………………………………………14

*Gayton v. McCoy,* 593 F.3d. 610, 625 (7ᵗʰ Cir. 2010)……………………………………....……12

*Gladu v. Correct Care Sols,* No. 2:17-CV-00504-JAW,
     2019 WL 5423019 (D.Me. Oct. 23, 2019)……………………………………………………5

*Glennie v. Garland,* 2023 WL 2265247 (D.R.I. 2023)…………………………………..…………….3

*Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y,* 460 F.Supp.3d 132, 148 (D.N.H.
2020)……………………………………………………………………………………..……2

*Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1ˢᵗ Cir. 1989)……………………………………11

*Hope v. Pelzer,* 536 U.S. 730, 741, 122 S. Ct. 2508, 152 L.Ed.2d 666 (2002)………………………………………………………………………………....…14

*Huffman v. City of Boston,* 2022 WL 2308937 (D.Mass.2022)………………………………………..18

*Kibbee v. City of Springfield,* 777 F.2d. 801, 806 (1st Cir. 1985)………………………………………17

*Kingsley v. Hendrickson,* 576 U.S. 389, 400 (2015)……………………………………………………..2

*Mahan v. Plymouth Cnty. House of Corrs.,* 64 F.3d. 14, 16-17 (1st Cir. 1995)…………………………..17

*Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir. 2009)……………………………………………14

*Mata v. Saiz,* 427 F.3d 745 (10th Cir. 2005)……………………………………………….……………..6

*McCann v. Ogle County,* 937 F.3d 936, 942 (7th Cir. 2019)……………………………………………7

*Miranda v. County of Lake,* 900 F.3d 335, 354 (7th Cir. 2018)…………………………………………7

*Miranda-Rivera v. Toledo-Davila,* 813 F.3d 64 (1st Cir., 2016)…………………………………….…3,13

*Myers v. Ray,* 2023 WL 1997421 (D.S.C. 2023)…………………………………………….……………7

*Olsen v. Dubois,* No. 22-CV-357-PP, 2022 WL 10077748 (E.D. Wis. Oct. 17, 2022)……………………6

*Perry v. Roy*, 782 F.3d 73 (1st Cir., 2015)……………………………………………………………..5

*Sanchez v. Pereira-Castillo, 590 F.3d 31, 50-51 (1st Cir. 2009)*…………………………………………10

*Silva v. Clarke,* 2022 WL 1091336, (D.R.I., 2022)……………………………………………………..3

*Tambolleo v. Town of West Boylston,* 613 N.E. 2d, 127, 130 (Mass.App.Ct. 1993)………………………18

*Vick v. Moore,* Civil No. 19-CV-267-SJM-AKJ, 2019 WL 7568227 (D.R.I. Oct. 11, 2019)……………..3

*Vick v. United States Marshals Service,* 2020 WL 161023 (D.R.I. 2020)…………………………………3

*Williams v. Ortiz,* 937 F.3d 936, 942 (7th Cir. 2019)……………………………………………………7

*Yanes v. Martin,* 464 F.Supp.3d 467 (D.R.I., 2020)……………………………………………………..2

*Zingg v. Groblewski,* 907 F.3d 630, 635 (1st Cir. 2018)…………………………………………………3

## I.      Introduction

The City of Springfield and the individually named municipal employees file this reply memorandum of law in response to the opposition filed by the Plaintiff in the above captioned matter.  (D.E. 178.) The arguments and law contained herein are intended to supplement the arguments raised in the  Motion for Summary Judgment filed by the Municipal employees.  (D.E. 163, 164)

## II.      The Individual Defendants Are Entitled to Judgment in Their Favor As A Matter of Law

A. *The Municipal Defendants Are Entitled to Summary Judgment in Their Favor Since Ms. Linsenmeir was Not In the Custody of the SPD When Ms. Linsenmeir Died.*

The Municipal Defendants rely on their arguments and the statement of the law contained in their original memorandum in support of their contention that the standard enunciated in *Coscia v. Town of Pembroke, Mass.,* 659 F.3d 37, 39 (1st Cir., 2011) applies in this case.  The crux of the Plaintiff's response to the argument that Coscia should be applied to these facts is that the Court already ruled on this argument, and further the Municipal Defendant's will have continuing liability for so long as a pre-trial detainee is in custody, whether it is in the custody of the municipality, or not.  Plaintiff's Opposition, pages 30 and 32.

The Municipal Defendants are entitled to have the Court revisit the argument on the complete summary judgment record, even if a contrary ruling was issued under the much more limited standard at the motion to dismiss stage.  Viewing the summary judgment record, it is clear that the liability of the municipal defendants must end once their ability to provide medical intervention ends.  To hold otherwise would apparently, under Plaintiff's reasoning, expose the Municipal Defendants to unlimited exposure for a pre-trial detainees medical needs, in spite of

their complete inability to observe and respond to Ms. Linsenmeir's physical status. The Plaintiff's

supply no case law in support of this limitless liability.

B.  *The Legal Standard Applicable To Claims Brought On Behalf of Pre-Trial Detainees For Constitutional Deprivation of Medical Care is Deliberate Indifference*

The Plaintiff correctly states that the within claim is governed by the Fourteenth

Amendment. The Plaintiff argues that the standard to be applied is "objectively unreasonable",

and cite the case of *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). *Kingsley* involved claims

of excessive force, brought by a pretrial detainee. The court expressly limited its holding to such

claims. *Id.,*. at 391-92, 397, ("The question before us is whether, *to prove an excessive force claim,*

*a pretrial detainee must show that ...*"); id. at 397 (emphasis added).

Plaintiff points to circuit courts other than the First Circuit, and a couple of district court

cases within the First Circuit that have adopted the standard of "objectively unreasonable" rather

than the established "deliberate indifference" standard. The cases cited are distinguishable from

the within matter, and Plaintiff ignores the cases from this Circuit that have declined to change the

standard.

Turning first to the cited cases from other District Courts, *Yanes v. Martin*,464 F. Supp.3d

467 (D.R.I., 2020), da Silva Medeiros v. Martin, 458 F. Supp.3d 122 (D.R.I. 2020) and *Gomes v.*

*U.S. Dep't of Homeland Sec., Acting Sec'y*, 460 F. Supp. 3d 132, 148 (D.N.H. 2020)[1] are all claims

brought under the Fifth Amendment by pre-trial civil detainees being held on immigration

violations. The Plaintiffs in the cited cases all suffered from pre-existing medical conditions which

increased the lethality of the Covid virus. The analysis of those cases is wholly inapplicable to the

within case.

---

[1] The Gomes case was mis-cited in the Plaintiff's opposition as a Massachusetts case;  it is a New Hampshire case and the citation has been corrected.

Moreover, the cases that have reached the First Circuit since the Kingsley ruling have not changed the standard to be applied the First Circuit has continued to apply the deliberate indifference standard  to detainee claims of inadequate medical care.  *Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018);  Miranda-Rivera v. Toledo-Davila, 813 F.3d 64 (1st Cir. 2016)).* Most district courts in this Circuit appear to have done the same.  See *Silva v. Clarke*, 2022 WL 1091336, at *8–9 (D.R.I., 2022), which in turn collects and cites to *De La Cruz v. Martin*, C.A. No. 21-049-JJM-PAS, 2021 WL 1293449, at *2 n.1 (D.R.I. 2021) (applying Eighth Amendment standard to pretrial detainee claim of inadequate medical care); *Daggett v. York Cty.*, No. 2:18-CV-00303-JAW, 2021 WL 868713, at *33-37 (D. Me. 2021) (same), aff'd, No. 21-1374, 2022 WL 216565 (1st Cir. Jan. 25, 2022); *Vick v. Moore*, Civil No. 19-cv-267-SJM-AKJ, 2019 WL 7568227, at *5-6 (D.R.I. Oct. 11, 2019) (same), adopted sub nom. *Vick v. United States Marshals Service*, 2020 WL 161023 (D.R.I. 2020).   See also *Glennie v. Garland*, 2023 WL 2265247, at *2 (D.R.I., 2023) (applying Eight Amendment deliberate indifference standard to inadequate medical care case brought by pre-trial detainee after reviewing post *Kingsley* decisions.)  The Massachusetts District Court has declined to adopt the *Kingsley* standard in a case challenging the use of K-9s at a facility.  *Couchon v. Cousins*, No. CV 17-10965-RGS, 2018 WL 4189694, at *6 (D. Mass., 2018) (expressly declining to apply Kingsley's objective standard to pretrial detainee's conditions of confinement claim under Fourteenth Amendment.)

C.  *The Actions of the Municipal Defendants During Ms. Linsenmeir's Confinement at SPD Were Objectively Reasonable*

While the Defendants urge the Court to follow the First Circuit precedent for claims brought by pre-trial detainees under the 14th amendment, the Defendant further state they are entitled to summary judgment in their favor under the *Kingsley* standard.  For the reasons set out in the Municipal Defendants' Memorandum In Support Of Their Motion for Summary Judgment

3

(hereinafter MDMSJ) the actions of the municipal defendants in their treatment of Ms. Linsenmeir on September 29 and September 30th 2018 were objectively reasonable under the totality of the circumstances.  See MDMSJ at page 16[2].

D. *Plaintiff Wrongfully Claims Mere Complaint of Chest Pain Requires Medical Intervention*

The crux of Plaintiff's claim comes down to an unsupported assertion that any complaint of chest pain by a pre-trial detainee requires medical intervention beyond what was offered here, i.e. observation every 15 minutes to determine if there waw a worsening of her condition.  The argument they make is unsupported by any case law, and would require a literal "get out of jail" result based merely on complaints of pain.

The cases cited by the Plaintiff do not support this bright line test.  In *Cox v. Massachusetts Dep't of Correction*, No. CV 13-10379-FDS, 2018 WL 1586019, (D. Mass. 2018), cited by the Plaintiff in support of her assertion that chest pain and difficulty breathing are examples of conditions that require a doctor's attention, the facts are quite different than as cited.  Cox was a mentally-disabled prisoner who brought a claim under the Americans with Disability Act alleging discrimination in denial of access to procedures to obtain medical care, report and resolve grievances, report physical and sexual assaults, and use of a telephone.  Id at *11.  He suffered from a multitude of medical issues, including pain in his back, sides, and knees and rectal bleeding.

---

[2] As stated in the MDJSJ:  "[Zanazanian] interviewed her, inquired about her mental status, inquired about her medical concerns, arranged for her to have water to drink at her request and documented both in writing and by photograph her complaints of swelling in her legs. *MDSOF* ¶ 24, 26  She was coherent.  *MDSOF* ¶28 She answered questions fully and intelligibly. *MDSOF* ¶28,  He observed her and decided based upon his observations that she was not in immediate medical need.  *MDSOF* ¶ She did not pass out.  *MDSOF* ¶ She did not appear to be sweating profusely and did not appear to have trouble breathing.  *MDSOF* ¶28  She did not repeat her complaints about chest pain and/or trouble breathing after returning to her cell following her phone call to her mother.  *MDSOF* ¶ 44. She walked into and around the booking area without assistance. *MDSOF* ¶ 32.  She was held in the cell where fifteen minute "eyes on" checks were done, and the matron on duty never felt the need to alert Zanazanian to any serious medical issues.  *MDSOF* ¶ 48, 50, Ms. Linsenmeier was transported to a facility known to have a medical unit the very next day. *MDSOF* ¶ 80.

*Id*. The Court found "(t)hose are serious medical needs; there is evidence that his back pain and knee pain were diagnosed as requiring treatment …and even a lay person would recognize the necessity for medical attention concerning rectal bleeding or serious difficulty breathing." *Id.* In the present case, there is no evidence to support any objective evidence of any difficulty breathing by Ms. Linsenmeir while in the custody of the SPD on 9/29 to 9/30, and obviously no evidence of rectal bleeding or any serious pre-existing medical diagnoses.

Plaintiff also cites *Perry v. Roy*, 782 F.3d 73 (1st Cir., 2015) in support of their assertion that chest pain and difficulty breathing are symptoms of a serious medical condition, where a delay in treatment could present a risk of future harm, death or serious injury. *Perry* at 79. This case is simply not on point. Perry's complaint alleged he was beaten by corrections officers, sustained a broken jar and was copiously bleeding from the mouth, was seen by medical personnel at the facility and was denied transport to a hospital in spite of his unambiguous symptoms and requesting transport to a hospital. *Id*. The Appeals Court cautioned "in order to prevail, Perry must prove that it was obvious that he had a serious need for greater or more immediate medical attention than he claims Appellees provided, and that Appellees failed to provide any care for his jaw sooner not merely because they were negligent, but because they were deliberately indifferent to that need." *Id* at 81.

*Gladu v. Correct Care Sols.*, No. 2:17-CV-00504-JAW, 2019 WL 5423019, at *11 (D. Me. Oct. 23, 2019) was cited in support of Plaintiff's contention that merely complaining of chest pain requires medical intervention. The Plaintiff misapprehends the holding in *Gladu.* Gladu alleged he suffered from chest pain radiating down his left arm for several weeks. *Id*. The Court held "a layperson is highly likely to recognize the need for medical attention when a person complains of severe, radiating chest pain, because this symptom is a well-known sign of a heart attack or

5

underlying cardiac condition."   Here, Linsenmeir did not complain of radiating pain and objectively did not appear to be suffering other symptoms consistent with a heart attack, such as sweating, difficulty speaking, incoherence, or obvious difficulty breathing.  *MDSOF* ¶28.  She did not repeat her complaints about chest pain and/or trouble breathing after returning to her cell following her phone call to her mother. [3] *MDSOF* ¶ 44. She walked into and around the booking area without assistance. *MDSOF* ¶ 32.

The cases of *Olsen v. Dubois*, No. 22-CV-357-PP, 2022 WL 10077748, (E.D. Wis. Oct. 17, 2022), and *Mata v. Saiz*, 427 F.3d 745  (10th Cir. 2005)  relied upon by Plaintiff, involved complaints of severe chest pain and difficulty breathing.  In the case of Ms. Mata, she had reported severe chest pain for days, and had an EKG performed at the facility, which showed changes from the day before.  *Id*. At 750.  None of these facts are present in the instant case.

Contrary to the assertions made by Plaintiff, multiple courts have determined that mere complaints of chest pain do not require immediate medical intervention, without more symptomatology or conditions present.  In a recent case out of New York, the District Court entered summary judgment for the Plaintiffs where a pre-trial detainee alleged denial of medical care when he complained of chest pain following an incident with jail staff.  *Dinkins v. Gustave,* 2022 WL 1051110, at *13 (S.D.N.Y., 2022).  In Dinkins, the Court recounted multiple other courts that have allowed summary judgment for apparently non-serious medical conditions.[4]  See also

---

[3] The municipal defendants will testify that she did not make any complaints of chest pain after the initial booking procedure;  for purposes of this motion whether she repeats the complaint during the phone call with her mother is not material.  Her mother did not consider any complaints of chest pain to be significant enough to relay to family members and friends in the moments after the call, concentrating solely on Ms. Linsenmeir's complaints of knee pain.  *MDSOF* ¶ 56, 62

[4] Including *McCoy v. Goord*, 225 F. Supp. 2d. 233, 260 (S.D.N.Y. 2003) (plaintiff who claimed that prison officials failed to treat him for chest pains did not make out an Eighth Amendment claim of deliberate indifference, noting that plaintiff failed to allege a serious medical condition); Cf. *Hutchinson v. New York State Corr. Officers*, 2003 WL 22056997, at *3 (S.D.N.Y. Sept. 4, 2003) (complaint of chest pain did not constitute a sufficiently serious condition).  Cited in *Dinkins* at *13.

*Myers v. Ray*, 2023 WL 1997421, at *4 (D.S.C., 2023)  (court allowed motion to dismiss where Plaintiff allegedly reported chest pain and unspecified breathing issues, amongst other complaints, holding no evidence condition so obvious to be considered serious medical condition necessitating medical intervention.)

In  *Brown v. Palmer*, 2023 WL 4902769, at *2 (E.D.Wis., 2023) a recent case from Wisconsin, Brown, a pre-trial detainee, brought a claim under the 14th amendment alleging denial of medical care.  Wisconsin follows the "objective reasonableness standard" rather than the deliberate indifference standard currently followed in the First Circuit.  Brown was known to have serious pre-existing conditions, including diabetes, obesity, congestive heart failure, sleep apnea, hypertension and high cholesterol.  Additionally, he had an internal defibrillator installed pre-incarceration.  *Id*, at *1.  Brown alleged he made repeated complaints of chest pain over the course of 11 to 12 hours before being transported to a hospital.  Id at *1 – 2.  The Court stated:

> "For his claim to survive summary judgment, Brown needed evidence that his chest pain was a serious medical condition and that Defendants' response to that condition was objectively unreasonable. [*See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019)] 'This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively ... whether the response was reasonable.'"*McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). This standard does not reach negligent conduct, so Brown must show that Defendants acted 'with purposeful, knowing, or reckless disregard of the consequences' of their actions. [*Miranda v. County of Lake*, 900 F.3d 335, 354 (7th Cir. 2018)]"
> *Id*  at *2.

Thus, even under the objective reasonableness standard, a mere complaint of chest pain is not considered prima facie proof of the need for medical intervention.

Plaintiff's assertion that Defendant McNabb's statement he would have called an ambulance if a person on the street relayed symptoms similar akin to Ms. Linsenmeir's alleged

7

symptoms is proof of the response called for in a police lock-up is neither factually or logically correct.   As has been repeatedly noted, in the SPD lock-up staff were required to observe detainees at least every fifteen minutes.   Any concerning changes in Ms. Linsenmier's apparent medical status would have been brought to the Sergeant's attention, and medical assistance summonsed if deemed necessary.   *MDSOF* ¶ 48, 50.   These safeguards would obviously not be in place for a person with whom police come into contact on the street, and thus the response is not a comparator.

Plaintiff unsuccessfully attempts to create an issue of fact concerning Zanazanian's supposed attempt to conceal Linsenmeir's medical complaints.   First, Plaintiff engages in completely unsupported conjecture that a hand gesture of Zanazanian was intended to prevent McNabb from turning on the audio portion of the video surveillance system in lock up in an attempt to create a factual issue to defeat summary judgment.   Both McNabb and Zanazanian deny that occurred.   See Exh. 1 attached (pages 166 to 179 of McNabb's deposition), and Exh. 2 (pages 68 to 69 of Zanazanian's deposition.)   It is preposterous to presume that Zanazanian somehow intuited that during her phone call she was going to make medical complaints, and in anticipation of that prevented the audio recording.   Zanazanian knew the original booking video, wherein Ms. Linsenmier did complain of medical issues, was already recorded with audio.   Further, he arranged for photographs to be taken of Ms. Linsenmeir's knees and feet, which to Zanazanian were her major complaints. *MDSOF* ¶ 24, 26.[5]   More significantly, whether he intentionally prevented the phone call to have an audio recording or not is simply not material to the question confronting this Court, i.e. was Madelyn Linsenmeir's condition was such that even a lay person would have recognized the need for urgent medical intervention; and was Zanazanian's response intentionally

---

[5] The interpretation that Linsenmeir's main complaints were of knee pain is consistent with what Linsenmeir's mother, Maureen Linsenmeir, relayed to Madelyn Linsenmeir's 2 sisters and a family friend shortly after hanging up after speaking with Madelyn Linsenmeir on September 29th.   MDSOF ¶ 55, 56, 61 and 62.

and deliberately indifferent to Ms. Linsenmeir's medical needs.   The answers to both of those questions on this record is clearly no.

The unsupported allegation that Zanazanian intentionally failed to include all of her complaints in his first report to IIU is similarly neither a fair reading of the facts in this record, nor material to resolving the issues in this motion for summary judgment.

E.  *Statements By SPD Personnel, Including Zanazanian, About Detainees Misstating Their Medical Conditions Is Not Evidence of Deliberate Indifference.*

The Plaintiff points in its Opposition to statements by Zanazanian, the former SPD Police Commissioner John Barbieri and current SPD Police Superintendent Cheryl Clapprood that pre-trial detainees often misstate their medical conditions.  Plaintiff's Opposition at pages 31, 35 and 36.  Plaintiff attempts to use this testimony in support of their claim that Ms. Linsemeir was treated with deliberate indifference by the members of the SPD with whom she came into contact, and that it reflects a broader callousness toward all detainees.   There are no facts from which a reasonable jury could reach such a conclusion.

It is well known in police practice that detainees often misrepresent their medical conditions, as set out in *Halstead Decl. Ex. 21, Linskey Rep. at 12*.  Police officers come into contact with people who misrepresent facts, it is simply a part of their job.  One look no further than the statements given by Madelyn Linsenmeir when she was first booked to find support for this axiom. *MDSOF* ¶ 21 and 22.  Ms. Linsenmeir recited a completely false identity, including name, parents, etc.  Police departments and officers within police departments have to make decisions every day about the use of scarce resources.  The summary judgment record reflects the reality of policing.  If a detainee must be kept in custody and must be brought to a hospital for evaluation and/or treatment, then two officers must be taken off their regular duties to stay with that detainee at the hospital. The Plaintiff has not and cannot dispute these facts.  The summary

judgment record does not, however, create a record from which a reasonable jury could infer that the need to attempt to determine both the accuracy and the seriousness of medical complaints evidences deliberate indifference toward Ms. Linsenmeir.  In spite of the Plaintiff's attempts to reframe the record, Zanazanian did not "do nothing".  The actions taken by Zanazanian are well established in the summary judgment record.  See footnote 2, herein, and *MDSOF* ¶ 40.  His actions were not the product of a callous disregard for Ms. Linsenmeir, but, instead, were the objectively reasonable response to a detainee's assertion of medical complaints that were not consistent with her appearance and conduct.

Ms. Rodriguez testified that she closely observed Ms. Linsenmeir during her shift, and based upon those observations did not feel Linsenmeir required medical treatment.  *MDSOF* ¶ 47, 48 and 50.  Nor did Officer McNabb ever determined that Linsemeir required medical treatment. His mere presence in the booking area is simply insufficient for any liability to attach to him under the circumstances.  The only facts Plaintiff cites to is the uncontested statement that if McNabb had believed Sergeant Zanazanian's response to Ms. Linsenmeir's symptoms were inappropriate McNabb could alert a watch commander, and he was aware he could do so. PSOF ¶33.  McNabb never made such a determination.  Under the undisputed facts of this case no reasonable jury could find that the individual defendants acted with deliberate indifference to Ms. Linsnemeir, such that a due process violation occurred.

*F.  The Individual Municipal Defendants Did Not Cause Ms. Linsenmeir's Death*

Plaintiff argues that the municipal defendants "caused" Linsenmeir's death, and cite to traditional tort principals in advancing this argument.  They additionally cite to *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 50–51 (1st Cir. 2009) for the proposition that causation can be established where a state actor puts into motion events where they "know or reasonably should

know would cause others to inflict the constitutional injury." Id, quoting *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989).

This argument fails for two reasons.  First, in *Sanchez* the state actor ordered the plaintiff to be brought to a hospital for an unconstitutional, invasive abdominal surgery in search of contraband.  *Id.*  Not only was it foreseeable that the third-party actors would inflict constitutional harm upon Sanchez, the government actor ordered it.  *Id*.  In the instant case Linsemeir was transferred to the custody of the HCSD, where it was known that medical services were available.  There is nothing in this record that would allow a reasonable jury to conclude it was foreseeable that the HCSD would inflict constitutional harm upon Linsenmeir[6].

Moreover, Plaintiff ignores the express holding of the First Circuit in the Coscia case.  *Coscia v. Town of Pembroke.,* 659 F.3d 37, 39 (1st Cir., 2011).   As set out in Defendants' memorandum in support of Summary Judgment, the First Circuit has expressly rejected the argument the Plaintiff now urges this Court to adopt.  *Id* at 40.  ("Although principles of liability under Section 1983 borrow from the understanding of tort causation … we think the rationale for official responsibility under the Due Process Clause requires a limit on liability that stops short of the point that may be reached by fact causation analysis".) (internal citations omitted.) The fact that earlier intervention *may* have improved a medical issue does not impact the due process limitations on liability.  *Id.* at 41, fn2 ("Of course, ministrations during custody might change an individual permanently for the better, so that when a detainee's release leaves him free from the government's limits on his liberty he will actually have no need for medical services. But, for the reasons set out, that is incidental to due process.")

G.    *The Individual Defendants Cannot Be Liable for Pain and Suffering in This Case*

---

[6]Nor do the municipal defendants argue that HCSD did inflict such injury upon Linsenmeir.

The Plaintiff has argued that whether the individual defendants have liability for Linsenmeir's death, or not, there is a factual issue on whether they should be found liable for her pain and suffering.  Plaintff argues the liability will extend past the time when she was in the SPD custody.  There is no basis, and Plaintiff offers no facts or law that would countenance the Defendants being responsible for pain and suffering under these circumstances.

First, the Plaintiff does not and cannot contend that the municipal defendants caused the medical condition from which Linsenmeir suffered.  Absent causing the condition, there is no legal theory that would support a continuing claim for pain and suffering once she was not longer in the SPD's custody.

Secondly, under the facts in this record, not only did Linsnemeir's pain and suffering not increase during her time in the SPD's custody, it actually decreased.  In support of her claim for recovery for Linsenmeir's alleged pain and suffering the Plaintiff cites *See Consolo v. George*, 58 F.3d 791, 794 (1st Cir. 1995.) (holding liability may be based "*not only* upon a finding that the officers' deliberate indifference caused [the plaintiff's] medical condition to worsen, but *also* upon a finding that their deliberate indifference left him in pain and suffering for a longer period than would otherwise have been the case had he been afforded prompt medical attention."); and *Gayton v. McCoy*, 593 F.3d 610, 625 (7th Cir. 2010) (jury could find that as a result of denial of medical care the decedent "incurred many more hours of needless suffering for no reason")

Here the only evidence of any change in her complaints of pain or suffering is that she improved during her time in police custody.  Once given water and food she seemed better, and did not complain of any further chest pains. *MDSOF* ¶ 46, 47.  Linsenmeir's mother also stated that Linsenmeir seemed to improve during the time she was on the phone with her.  *MDSOF* ¶ 63. (Maureen Linsenmeir stated that Ms. Linsenmeir was upset on the phone until Maureen

12

Linsenmeir got on, but that Ms. Linsenmeir then "calmed down somewhat", asked Maureen to visit her when she was extradited to New Hampshire. Maureen stated that Ms. Linsenmeir sounded "(n)ot great, but ok." )

On the basis of this record there is no legal claim that would entitle the Plaintiff to recover for any pain and suffering during her time in SPD custody.

H.     *Individual Municipal Defendants Are Entitled to Qualified Immunity In This Case*

Plaintiff argues against qualified immunity for the individual municipal defendants in this case based upon case law on the fact that "the law on denial of medical care has long been clear in the First Circuit." Citing *Miranda-Rivera v. Toledo*, 813 F.3d 64 at 75  (1st Cir. 2016.)  Plaintiff specifically argues that case law  provides sufficient warning that an officer who refuses to provide medical treatment for a detainee experiencing chest pain and shortness of breath is a per se constitutional violation.  As set out above, the case law does not create or support a bright line obligation that the mere recitation of chest pain and shortness of breath requires immediate medical intervention, regardless of the officers evaluation of other symptoms.  The Plaintiff cites to no case from any jurisdiction in support of this proposition.  This completely new standard, which would remove all discretion from custodians of pre-trial detainees in evaluating complaints of pain, is exactly the type of situation where qualified immunity must apply.

The unlawfulness of a public official's action is considered "clearly established" at the time of the official's violative conduct if "the law was " 'sufficiently clear" that every "reasonable official would understand that what he is doing' " is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577,  589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "[T]he salient question ... is whether the state of the law ... gave [the defendants] fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536

U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).  [T}his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)).  As stated, the requirement that all complaints of chest pain and difficulty breathing require intervention by EMTs or other medical personnel is novel, and in no way can be seen to be "well defined*." City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9, 11, 595 U.S. 9, 12 (2021) (holding it is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' ")

## III.   The City is Entitled to Summary Judgment Under Any Monell Theory.

### A.   *The City of Springfield's Policy and Practices Regarding Provision of Medical Care to Pre-Trial Detainees was in Accord With Constitutional Mandates.*

The Plaintiff is attempting to argue a policy and practice claim against the City, rather than an inadequate training case, since the record is replete with the trainings provided to all SPD personnel, including the personnel charged with overseeing pre-trial detainees.  This claim must fail.

The Plaintiff's argument is that the policy of the SPD was constitutionally inadequate because it relied upon the discretion of the supervisory officer at the booking area to determine when a pre-trial detainee needed medical intervention.  They offer no support for this argument by way of case law or facts in this case.

The written policies at the SPD comport fully with the constitutional requirements.  Rule 26 of the SPD rules and regulations provides in relevant part:

> "(i)f, in the judgment of the Superior Officer or officer of rank in charge, the prisoner is suffering from wounds or injuries which require medical attention, the arrested person shall be taken to a hospital and while in the hospital, such prisoner shall be in the

14

legal custody of the police. If wounds or injuries appear to have been inflicted by the arresting officer, the official in charge shall report such fact to the Chief of Police. If it shall appear that unjustifiable violence was used, charges will be preferred against the offender. When a prisoner is unconscious from any cause, the Superior Officer or officer of rank in charge should immediately endeavor to restore consciousness. Failing to do so within reasonable time, he should cause such person to be taken to a hospital for examination. An unconscious person should not be placed in a cell except with the sanction of physician. If the Superior Officer or officer of rank finds that the prisoner is suffering from a mental condition, including but not limited to suicidal tendency he should provide proper safeguarding to prevent the prisoner from harming himself or other persons." *MDSOF* ¶ 107.

As set out in the municipal defendants' memorandum in support of summary judgement, the training provided to SPD personnel in the booking area was significant. [7] Booking personnel were not simply left to their own devices. Rather, they relied upon their education, training and experience in making the types of decisions that all police officers must make when charged with overseeing pre-trial detainees.

On the record in this case, the City is entitled to summary judgment on the Monell claim.

B. *The Record Does Not Establish A Claim That Alleged Deficiencies In Internal Affairs Investigations or the Discipline of Officers Caused or Contributed to Cause Any Constitutional Harm To Linsenmeir.*

Plaintiff next alleges the city has a custom, policy, or practice of failing to investigate, discipline, or supervise its officers that demonstrates deliberate indifference and was the direct cause of the alleged constitutional violation. Nothing in the record supports liability on this basis.

---

[7] In 2018 every officer was annually received CPR and First Responder training. *MDSOF* ¶ 118. All Booking Sergeants received training in dealing with people who were suicidal and crisis intervention techniques. *MDSOF* ¶ 117. As part of CPR certification SPD officers were trained to recognize signs and symptoms of a heart attack. *MDSOF* ¶121. All officers were trained in emergency use of a defibrillator, and administering oxygen. *MDSOF* ¶ 119. Zanazanian was trained in recognizing opioid overdose symptoms and administering Narcan. *MDSOF* ¶ 123. He was also trained to recognize the signs and symptoms of alcohol intoxication. *MDSOF* ¶123. Officers are trained to evaluate if a person is suffering from an emergency medical situation requiring immediate medical intervention. *MDSOF* ¶ 116

A municipality can be liable under §1983 based on a failure to supervise police officers who then violate a plaintiff's constitutional rights if the failure to train or supervise amounted to deliberate indifference and the deficiency in the training program or supervision was closely related to the constitutional violation. *Young v. City of Providence*, 404 F.3d 4, 26 (1st Cir., 2004) (quoting *City of Canton v. Harris, 4*89 U.S. 378, 388, 391 (1989*))*.

Here, the Plaintiff can point to no prior allegations against any of the named municipal defendants that the City either failed to supervise or discipline.  Nor can the Plaintiff point to any cases of failure to provide adequate medical care to pre-trial detainees that would establish a pattern and practice of violating pre-trial detainees' rights to appropriate medical treatment.

The allegations made by the Plaintiff fail to make out even a colorable Monell claim, never mind sufficient facts to allow a reasonable jury to impose liability.  In order to prevail, plaintiff must first establish an unconstitutional custom "be attributable to the municipality" such that it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 13 (1st Cir. 2005) (quoting *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)).

"Second, the custom must have been the cause of and 'the moving force behind' the constitutional violation." Id. (quoting *Bordanaro*, 871 F.2d at 1156). Evidence of a single incident of a constitutional deprivation "is insufficient, in and of itself, to establish a municipal 'custom or usage' within the meaning of Monell*." Mahan v. Plymouth Cnty. House of Corrs*., 64 F.3d 14, 16–17 (1st Cir. 1995). Evidence of "multiple instances of misconduct" that suggest a "systemic pattern of activity," can support an inference of a municipal custom. *See Doe v. Town of Wayland,* 179 F. Supp. 3d 155, 172–73 (D. Mass 2016) (citing *Kibbe v. City of Springfield,*

777 F.2d 801, 806 (1st Cir. 1985) and *Baron v. Suffolk Cty. Sheriff's Dep't*, 402 F.3d 225, 238–39 (1st Cir. 2005)).  In the instant case the record does not establish a systemic patter of activity relative to failure to provide medical care to pre-trial detainees.  Rather, the record reflects over 250 calls for emergency medical services to the booking area during the three-year period surround the time of Linsenmeir's detainment.  *MDSOF* ¶ 110, 111, 112

In the face of this record, the Plaintiff attempts to use completely unrelated cases in support of finding Monell liability.  The Plaintiff's attempt to use a DOJ report in support of their claim.  That report, as Plaintiff admits in footnote 9, was narrowly focused on the alleged actions of members of the narcotics unit, which has since disbanded, and played no role in the within action.[8]  Similarly, they attempt to use an outside consultant's report advising improvements in policies and practices, but which did not identify or purport to identify constitutional deficiencies, as "evidencing" failures related to the within claim.

There is no credible evidence from which a jury could base a determination that deficiencies in the IIU procedures or SPD disciplinary practices was the "moving force" behind the alleged failure to adequately address Linsenmeir's medical needs.  Nor is there any facts from which a jury could conclude that the City adopted policies, practices or procedures that showed deliberate indifference to the medical needs of pre-trial detainees.  As noted above, the trainings provided and the practice of summonsing emergency medical personnel to the booking area on a regular basis support only the opposite conclusion.

Finally, while apparently the Plaintiff's disagree with the discipline meted out to Zanazanian, that cannot support a Monell claim as a matter of law.  "The Court 'cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for

---

[8] In the same footnote Plaintiff admits that the report itself contained a disclaimer by the DOJ that the report was not intended to be used as evidence in any proceeding.

municipal liability.' *Tambolleo v. Town of West Boylston*, 613 N.E.2d 127, 130 (Mass. App. Ct. 1993) (citation omitted); *see also Barker*, 795 F. Supp. 2d at 124 (same)." *Huffman v. City of Boston*, 2022 WL 2308937, at \*6 (D.Mass., 2022.)

## IV.    CONCLUSION

For the foregoing reasons, and the reasons articulated their memorandum in Support of Summary Judgment (D.E. 164),  the Defendants City of Springfield, Sheila Rodriguez, Remington McNabb and Moises Zanazanian state based on the uncontested material facts they are entitled to judgment in their favors on Counts I and IV of the complaint, and the claims brought herein against them should be dismissed.

Respectfully submitted,
Defendants, City of Springfield and
Sheila Rodriguez, by their attorneys,

Dated:  February 14, 2024

*/s/ Lisa C. deSousa*
Lisa C. deSousa, Esq. BBO #546115
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103
Tel:     (413) 886-5205
ldesousa@springfieldcityhall.com

Defendant Moises Zanazanian,
by his attorney,

*/s/ John K. Vigliotti*
John K. Vigliotti, Esq. BBO #642337
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, MA 01609
Tel: (508) 754-7284
jvigliotti@rja-law.com

Defendant, Remington McNabb,
by his attorney,

*/s/ Kevin B. Coyle*
Kevin B. Coyle, Esq. BBO #103540
1299 Page Boulevard
Springfield, MA 01104
Tel: (413) 787-1524
attycoyle@aol.com

19

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that a true copy of the within was this day served upon the parties via the Federal Court's ECF Notice and Delivery System.  I am not aware of any party who is a non-registered participant, and therefore electronic filing is the sole means of service of this document.

Signed under the pains and penalties of perjury.


Dated: February 14, 2024                              /s/ Lisa C. deSousa
                                                     Lisa C. deSousa, Esq.

20