UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

---

MAURA O'NEILL, AS ADMINISTRATOR OF
THE ESTATE OF MADELYN E. LINSENMEIR,
PLAINTIFF

V.                                          CIVIL ACTION NO. 3:20-CV-30036

HAMPDEN COUNTY SHERIFF'S
DEPARTMENT AND MAUREEN COUTURE,
DEFENDANTS

---

**MOTIONS IN LIMINE OF DEFENDANTS, HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND
MAUREEN COUTURE**

TABLE OF CONTENTS

Table of Contents ............................................................................................... ii

I.    Motion to preclude any report, evidence or testimony from Dr. Justin Berk regarding infective endocarditis,  including whether earlier identification of Ms. Linsenmeir's medical condition would have saved her life. ...................... 1

II.   Motion to preclude plaintiff from offering evidence outside the scope of damages potentially awardable to the plaintiff, including any evidence supporting damages only recoverable under the Massachusetts Wrongful Death statute. ....................................................................................... 4

III.  Motion to preclude any reference to Ms. Linsenmeir's biological son, including his medical conditions and diagnoses. ............................................... 5

IV.  Motion to preclude any evidence or testimony attacking any policy, procedure, or protocol other than the WCC's Alcohol Withdrawal Protocol. ... 7

V.   Motion to preclude Plaintiff from introducing testimony or evidence regarding changes to policies, procedures, or protocols made by the defendants after the death of Ms. Linsenmeir, for the purpose of proving culpable conduct. ........... 8

VI.  Motion to preclude any evidence or testimony attacking the particulars or sufficiency of the training provided to any Hampden Couty Sheriff's Department employees. ....................................................................... 8

VII. Motion to preclude any evidence or testimony attacking the response of Julie Belle-Isle, R.N. to Ms. Linsenmeir's medical emergency on October 4, 2018, including her decision to rule out withdrawal and overdose. ........................... 9

VIII.    Motion to preclude any evidence or testimony alleging wrongful acts or failures to act on October 3, 2018 or October 4, 2018. ..................................... 10

IX.     Motion to preclude testimony of Alexandria Cox. ....................................... 11

X.   Motion to preclude evidence of prior complaints, claims, or lawsuit against the HCSD, any of its facilities or divisions, or its employees .......................... 12

XI. Motion to preclude any testimony or evidence as to complaints made by Ms. Linsenmeir prior to arriving at the WCC on September 30, 2018, except to support disclosed expert opinions and with a limiting instruction noting that

ii

there is no evidence that anyinformation regarding these complaints was communicated to the defendants and that the evidence is only admissible to determine the extent and history of Ms. Linsenmeir's disease...................... 13

XII. Motion to preclude all references to the negligence standard of care, including by plaintiff, her facts witnesses, or her expert witnesses. .............................. 14

XIII.     Motion to preclude all evidence or testimony regarding alleged statements or behavior by unnamed individuals, as set forth in the Declarations of Hayley Champagne and Alexandria Cox. ............................. 16

Certificate of Service................................................................................. 18

iii

I.    MOTION TO PRECLUDE ANY REPORT, EVIDENCE OR TESTIMONY FROM DR.
      JUSTIN BERK REGARDING INFECTIVE ENDOCARDITIS,  INCLUDING WHETHER
      EARLIER IDENTIFICATION OF MS. LINSENMEIR'S MEDICAL CONDITION WOULD
      HAVE SAVED HER LIFE.

In his Expert Report, Plaintiff's expert, Dr. Justin Berk, provided the

following opinion:

> Based on my experience, it is my opinion that Ms. Linsenmeir's vitals
> would have continued to deteriorate over the course of her time at the
> WCC. As a result, had she received regular monitoring, her underlying
> pathology of infective endocarditis could have been identified in time to
> save her life.

Day Aff., Exh. A, 12. At his deposition, Dr. Berk demonstrated that he does not have

the professional expertise to provide an opinion regarding infective endocarditis and

that he was not retained to do so. He further demonstrated that he had not

reviewed the records with any detail as to Ms. Linsenmeir's infective endocarditis

and was unwilling to provide any specificity regarding his apparent opinion that

regular monitoring would have saved Ms. Linsenmeir's life.

At deposition, Dr. Berk acknowledged that he is not an infectious disease

expert (Day Aff., Exh. B, 242:11-12) and has only treated 10-20 patients with

infective endocarditis in his career and only with the support of specialists (Day

Aff., Exh. B, 243:13-18), that he was not retained as an infective endocarditis expert

(Day Aff., Exh. B, 254:2-4, 264:24-265:2), that he did not review Ms. Linsenmeir's

records looking for information about infective endocarditis (Day Aff., Exh. B,

261:19-23), and in fact does not even know what kind of infective endocarditis Ms.

Linsenmeir had (Day Aff., Exh. B, 261:19-23, 262:23-263:4). Dr. Berk acknowledged

1

that he was not able to cite to any authority to support the above-quoted opinion. Day Aff., Exh. B, 253:3-9. Dr. Berk could not provide information as to how long Ms. Linsenmeir had had infective endocarditis prior to arriving at the WCC. Day Aff., Exh. B, 259:22-261:4. Dr. Berk repeatedly refused to provide an opinion as to how much sooner the infective endocarditis would have had to have been discovered to save Ms. Linsenmeir's life or an opinion as to the likelihood that Ms. Linsenmeir's life could have been saved. Day Aff., Exh. B, 247:23-24, 248:8-10, 250:4-6, 251:23-24, 257:7-10, 258:3-5. Instead, Dr. Berk repeatedly testified that providing an opinion with more detail would require an opinion from another expert with more expertise. Day Aff., Exh. B, 252:4-5, 258:3-5. At deposition Dr. Berk would only provide a vague and unhelpful opinion that, in the case of an infection, it is better to identify it sooner rather than later. Day Aff., Exh. B, 246:20-22, 248:11-19.

This Court should exercise its role as gatekeeper and preclude Dr. Berk from providing any report, testimony, or evidence regarding infective endocarditis, including the opinion quoted above and the various, vague statements of opinion made at deposition and referenced above. *See Milward v. Acuity Specialty Prods. Grp.*, 639 F.3d 11, 14 (1st Cir. 2011) ("The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), vested in trial judges a gatekeeper function, requiring that they assess proffered expert scientific testimony for reliability before admitting it.")

Dr. Berk essentially acknowledged at deposition that he is not qualified to provide an opinion to the jury with regard to infective endocarditis, not only because

of his extremely limited experience with treating this illness, but because he

admitted he had not bothered to learn even the basic facts of Ms. Linsenmeir's

particular infection, such as the type of endocarditis and how long she had had it.

He repeatedly acknowledged this was because Plaintiff had not hired him to provide

an opinion on infective endocarditis. "[A] witness qualified as expert on certain

topics does not mean that he or she is qualified to express expert opinions as to

other fields. Courts, therefore, should exclude proffered opinions that are outside

the witness's established expertise." *Friedman v. Cent. Me. Power Co.*, No. 2:20-cv-

00237-JDL, 2024 U.S. Dist. LEXIS 55760, at *4 (D. Me. Mar. 28, 2024). This Court

should preclude Dr. Berk from testifying in this area because he lacks the

"scientific, technical, or other specialized knowledge" to provide an opinion on this

topic and his testimony would not be "[b]ased on sufficient facts or data." Fed. R.

Evid. 702 (a) and (b).

Further, Dr. Berk should not be permitted to testify as to his vague

statements of opinion because they would not be helpful to the jury. See Fed. R.

Evid. 702 (a) (An expert witness may testify if his "specialized knowledge will help

the trier of fact to understand the evidence or determine a fact in issue."). The

opinion in Dr. Berk's Expert Report, quoted above, is so vague as to be of no help to

the jury. He only states that, with regular monitoring, Ms. Linsenmeir's infective

endocarditis "*could* have been identified in time to save her life." He specifically

leaves out the key information of *when* would have been soon enough that the

discovery would have saved her life. Would one hour earlier than when Ms.

Linsenmeir was actually discovered in distress have been early enough to save her life? One day? Two days? Three days? Dr. Berk provides no specificity in the Expert Report and refused to provide any additional specificity at deposition. Day Aff., Exh. B, 247:22-24.

Likewise, Dr. Berk's Report provides no specificity as to the likelihood that earlier detection would have saved Ms. Linsenmeir's life. All Dr. Berk wrote in his Report is the vague and ambiguous opinion that, with regular monitoring, the infection *could* have been discovered in time to save her life. Obviously, "could" in this context could mean a 1% chance that Ms. Linsenmeir's life would be saved, a 99% chance, or anything in between. Repeatedly pressed at deposition to provide more specificity, Dr. Berk refused to do so. Day Aff., Exh. B, 251:5-252:6, 257:1-258:5. This is not helpful to the jury and this Court should preclude this testimony. *See* Fed. R. Evid. 702; *See also Martinez v. Hosp. San Antonio Inc.*, No. 18-1055 (DRD), 2022 U.S. Dist. LEXIS 179218, at *8 (D.P.R. Sep. 28, 2022) *citing* Wright & Miller § 6265.2 ("expert testimony does not help where it is ambiguous"). For all the above reasons, Dr. Berk should not be permitted to testify as to infective endocarditis generally or, specifically, that regular monitoring could have saved Ms. Linsenmeir's life.

II. **MOTION TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OUTSIDE THE SCOPE OF DAMAGES POTENTIALLY AWARDABLE TO THE PLAINTIFF, INCLUDING ANY EVIDENCE SUPPORTING DAMAGES ONLY RECOVERABLE UNDER THE MASSACHUSETTS WRONGFUL DEATH STATUTE.**

This Court recently entered summary judgment on behalf of the defendants on the plaintiff's wrongful death claims (Count IV). ECF No. 231. Testimony and filings in this case indicate that Plaintiff "seeks damages on behalf of Ms.

4

Linsenmeir's son, who is her sole heir, and for Ms. Linsenmeir's own pain and

suffering while in Hampden County custody." ECF No. 223 at 2. The Massachusetts

Wrongful Death Act, M.G.L. c. 229, § 2, is the "exclusive action for the recovery of

the damages it encompasses by the designated beneficiaries." *Hallett v. Wrentham*,

398 Mass. 550, 556 (1986). The wrongful death action allows for the recovery of:

> (1) The fair monetary value of the decedent to the persons entitled to
> receive the damages recovered, as provided in section one, including
> but not limited to compensation for the loss of the reasonably expected
> net income, services, protection, care, assistance, society,
> companionship, comfort, guidance, counsel, and advice of the decedent
> to the persons entitled to the damages recovered;
>
> (2) The reasonable funeral and burial expenses of the decedent; and
>
> (3) Punitive damages in an amount of not less than five thousand dollars
> in such case as the decedent's death was caused by the malicious,
> willful, wanton or reckless conduct of the defendant or by the gross
> negligence of the defendant.

M.G.L. c. 229, § 2. As the Massachusetts Wrongful Death Act claim (Count IV) has

been dismissed in its entirety, this Court should preclude Plaintiff, Plaintiff's

counsel, and any witnesses from inquiring into, eliciting, or offering evidence

related to potential damages, including but not limited to wrongful death damages,

beyond those Plaintiff is legally entitled to be awarded if successful on her claims.

### III. MOTION TO PRECLUDE ANY REFERENCE TO MS. LINSENMEIR'S BIOLOGICAL SON, INCLUDING HIS MEDICAL CONDITIONS AND DIAGNOSES.

As set forth above, this Court has entered summary judgment on the

defendants' behalf on the Massachusetts Wrongful Death Act claim (Count IV). The

fact that Ms. Linsenmeir had a biological son, and any other facts associated with

her son, including his name, age, relationship with Ms. Linsenmeir, photographs of

him with or without Ms. Linsenmeir, his medical conditions and diagnoses will serve no valid purpose with regard to the case. This Court has entered summary judgment for Defendants on the Wrongful Death Act claims, and evidence regarding Ms. Linsenmeir's son is no longer of any relevance to this case. It is of no consequence in determining the remaining claims in the case because it does not have a tendency to make a fact of relevance to a claim in the case "more or less probable than it would be without the evidence." Fed R. Evid. 401 (a) and (b). Testimony in this case indicates that Ms. Linsenmeir has one child, a young son, that he is her sole heir, that he struggles with various medical conditions, that he played music for her over the phone while she was in the hospital, and that he still asks to watch videos of his mother. Introduction of this highly emotional evidence or other evidence regarding Ms. Linsenmeir's son is likely to create a bias on the part of the jury in favor of the plaintiff, prejudice the jury against the defendants, confuse the issues that are relevant to the remaining claims with issues that were only relevant to the wrongful death claims, and mislead the jury into considering Ms. Linsenmeir's son and his situation in considering the facts that are at issue in this case.  The only purpose for introducing such evidence would be an impermissible appeal to sympathy, which this Court should preclude under Fed. R. Evid. 403.

IV.   **MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING ANY POLICY, PROCEDURE, OR PROTOCOL OTHER THAN THE WCC'S ALCOHOL WITHDRAWAL PROTOCOL.**

Defendants have produced numerous policies, procedures, and protocols. Plaintiff has disclosed two experts, Dr. Justin Berk and Dr. Simeon Kimmel. The Expert Reports of Drs. Berk and Kimmel disclose no opinions criticizing any of the HCSD's policies, procedures, or protocols other than the WCC's 2018 Alcohol Withdrawal Protocol. "[E]xpert testimony is necessary on subjects that the trier of fact would not be expected to understand in many circumstances without guidance from an expert but not where lay knowledge enables the jury to find the relevant facts." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 58 (1st Cir. 2021) quoting *Gliottone v. Ford Motor Co.*, 95 Mass. App. Ct. 704, 708, 130 N.E.3d 212, 216 (2019) (internal quotation marks omitted). Here, a jury would not be expected to understand whether a particular correctional policy, procedure or protocol, especially one dealing with medical issues, was in some way deficient without the assistance of expert testimony. As Plaintiff has disclosed no expert testimony criticizing the policies, procedures, or protocols of the HCSD, Plaintiff should be precluded from introducing any evidence or testimony criticizing the policies, procedures, or protocols of the HCSD other than the 2018 Alcohol Withdrawal Protocol.

V.     MOTION TO PRECLUDE PLAINTIFF FROM INTRODUCING TESTIMONY OR
       EVIDENCE REGARDING CHANGES TO POLICIES, PROCEDURES, OR PROTOCOLS
       MADE BY THE DEFENDANTS AFTER THE DEATH OF MS. LINSENMEIR, FOR THE
       PURPOSE OF PROVING CULPABLE CONDUCT.

There is evidence in this case that, after Ms. Linsenmeir's death, the HCSD

took extra steps to assure additional health monitoring of new inmates at the

HCSD, including changes to policies, procedures, and protocols related to such

things as medical assessments of arrestees recently arrived from police

departments, medical wellness checks, and increased monitoring of vital signs.

"When measures are taken that would have made an earlier injury or harm less

likely to occur, evidence of the subsequent measures is not admissible to prove …

culpable conduct." Fed. R. Evid. 407. Here, the evidence will indicate that many of

the changes were implemented in good faith by the HCSD in response to Ms.

Linsenmeir's tragic death and the plaintiff should be precluded from introducing or

eliciting any evidence or testimony or these subsequent remedial measures to prove

culpable conduct on the part of Defendants, which would fall squarely within the

prohibition of Rule 407.

VI.    MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING THE
       PARTICULARS OR SUFFICIENCY OF THE TRAINING PROVIDED TO ANY
       HAMPDEN COUTY SHERIFF'S DEPARTMENT EMPLOYEES.

As with the Motion in Limine in Section IV, above, the advisability, or

sufficiency of a particular correctional training program is outside of the

understanding of the typical lay juror. Plaintiff would have to introduce expert

testimony from a corrections professional to attack the HCSD's training programs

or lack thereof. *See Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 58 (1st Cir. 2021)

8

(expert testimony required on subjects jury would not be expected to understand). Plaintiff has not disclosed any expert testimony from a corrections professional or expert regarding the HCSD's training programs and should be precluded from attacking the sufficiency or particulars of training provided to HCSD employees.

**VII.** **MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING THE RESPONSE OF JULIE BELLE-ISLE, R.N. TO MS. LINSENMEIR'S MEDICAL EMERGENCY ON OCTOBER 4, 2018, INCLUDING HER DECISION TO RULE OUT WITHDRAWAL AND OVERDOSE.**

The evidence in this case is that, on the morning of October 4, 2018, WCC nurses, Karleen Neill and Julie Belle-Isle discovered Ms. Linsenmeir in a state of medical distress, immediately rendered care and summoned an ambulance, which took Ms. Linsenmeir to Baystate Medical Center for emergency care. Ms. Belle-Isle recorded in her medical note of the encounter that, as part of the care she provided, she considered opiate withdrawal and drug overdose, among other potential causes. In the Expert Report of Dr. Simeon Kimmel, Dr. Kimmel wrote with regard to the care rendered by Ms. Belle-Isle: "[t]he fact that Ms. Belle-Isle investigated a potential OD notwithstanding vital statistics that were directly contrary to an OD suggests that Ms. Belle-Isle anchored her investigation on Ms. Linsenmeir's substance use without considering or investigating alternative causes of her symptoms." Day Aff., Exh. C, 10. First, this is factually incorrect, as Dr. Kimmel himself notes in the same paragraph that Ms. Belle-Isle also considered an internal bleed as a cause of her symptoms. *Id*. However, Dr. Kimmel seized on this and opined that it "suggest[ed]" to him that HCSD medical staff tended to stereotype inmates with substance use disorder. *Id*. However, he could not conclude that or list

9

that as an actual opinion. All that he could muster was this bare and unsupported insinuation, which should not be allowed at trial.

Dr. Kimmel refused to stand behind this insinuation at deposition, where he refused to criticize Ms. Belle-Isle's treatment of Ms. Linsenmeir. To the contrary, Dr. Kimmel testified that he was not criticizing Ms. Belle-Isle (Day Aff., Exh. D, 214:5), that he thought that the emergency care that she provided was appropriate (Day Aff., Exh. D, 214:19-20, 221:20-21), and that her actions were appropriate (Day Aff., Exh. D, 217:13-16, 217:21-218:6).

Based on Plaintiff's expert's own testimony that Ms. Belle-Isle rendered appropriate care and that the inclusion of opiate withdrawal and drug overdose in her medical record was appropriate, there is no basis for Plaintiff to attack Ms. Belle-Isle's care of Ms. Linsenmeir, and Plaintiff should be precluded from reviving at any time an insinuation criticizing Ms. Belle-Isle's mention of opiate withdrawal or drug overdose in her medical record as evidence of culpability on the part of Defendants.

## VIII. MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ALLEGING WRONGFUL ACTS OR FAILURES TO ACT ON OCTOBER 3, 2018 OR OCTOBER 4, 2018.

Defendants' medical expert, Dr. William McGee, has provided an Expert Report and testified at deposition that Plaintiff would not have survived, even if WCC staff had sent her to the hospital upon her arrival at the WCC on September 30, 2018. Plaintiff's expert, Dr. Simeon Kimmel, disputes this only to a point. While Dr. Kimmel opines that it is "more likely than not" that Ms. Linsenmeir would have survived if she had received the treatment he believes was called for in the

10

situation, he acknowledges that, with regard to October 3 and 4, 2018, "it is more difficult to assess Ms. Linsenmeir's chance of survival" on October 3rd, and he provides no opinion as to her chance of survival earlier on October 4th. (Day Aff., Exh. C, 1, 7-9). Since there is no expert opinion in this case that Ms. Linsenmeir would have survived if she had been sent to the hospital on October 3rd or earlier on October 4th than she was actually sent, the jury could not find that a wrongful act or failure to act on the part of any WCC staff could have caused Ms. Linsenmeir's death. Therefore, Plaintiff should be precluded from introducing any evidence of any wrongful act or failure to act on the part of WCC staff on October 3 or 4, 2018, since this evidence would not be "of consequence in determining the action." Fed R. Evid. 401 (b). Rather, the evidence, like Plaintiff's expert opinion, should be limited to October 2, 2018 as the latest date at issue.

## IX. MOTION TO PRECLUDE TESTIMONY OF ALEXANDRIA COX.

As set forth in previous pleadings, Plaintiff did not explicitly disclose the witness, Alexandria Cox, in either the Initial Disclosure or Supplemental Initial Disclosure. Day Aff., ¶7. After the close of discovery, plaintiff produced a Declaration of Alexandria Cox alleging that WCC staff did not assist Ms. Linsenmeir when other inmates requested assistance for her. Day Aff., ¶8. This Court allowed Defendants' motion to take the deposition of Ms. Cox and Defendants promptly issued a subpoena. Day Aff., ¶9. After Defendants' process server had some difficulty in locating her, resulting in delay, Ms. Cox was duly served with the Deposition Subpoena. Day Aff., ¶10. Defendants' counsel spoke with her the night

before the scheduled deposition and she assured him she would appear. Day Aff.,

¶11. Efforts to reach her since then, both on the part of Defendants' process server

and counsel, have been unsuccessful. Day Aff., ¶12. A motion for an order

compelling her to comply with the Deposition Subpoena is currently before this

Court. Day Aff., ¶13. Plaintiff should be precluded from offering Ms. Cox's written

Declaration into evidence in the trial of this matter as it is inadmissible hearsay –

and no witness should be allowed to reference or rely on it. Fed. R. Evid. 801 (c),

802. This Court should issue an order requiring Ms. Cox to comply with the

Deposition Subpoena and, if she does not within a reasonable time before the trial

of this matter, this Court should preclude Plaintiff from calling Ms. Cox as a

witness at trial, as she would be testifying before this Court even while actively in

contempt of this Court.

**X.** **MOTION TO PRECLUDE EVIDENCE OF PRIOR COMPLAINTS, CLAIMS, OR LAWSUIT AGAINST THE HCSD, ANY OF ITS FACILITIES OR DIVISIONS, OR ITS EMPLOYEES.**

Defendants move to preclude Plaintiff, Plaintiff's counsel or any witness from

introducing into evidence, mentioning, or inquiring into any prior or pending

complaints, claims or lawsuits which may have been filed or brought against

Defendants, to the extent any exist. As grounds therefor, Defendants state that this

action involves claims related to the medical care and treatment provided to Ms.

Linsenmeir while she was incarcerated at the WCC for less than four full days from

September 30 to October 4, 2018. Under the Federal Rules of Evidence, only relevant

12

evidence is admissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence," if the fact "is of consequence in determining the action." Fed. R. Evid. 401. The fact that another inmate, at some other time, may have made a claim or brought a lawsuit against the HCSD or its staff does not make any fact of consequence in this case more or less probable. Even if Plaintiff had evidence of a prior complaint against Ms. Couture, it would not be admissible. Prior acts are not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). In this case, evidence of other claims or lawsuits has no relevance to Plaintiff's allegations, as it has no tendency to prove that Ms. Couture was deliberately indifferent to Ms. Linsenmeir while she was incarcerated at the WCC or that the HCSD, through its staff, discriminated against Ms. Linsenmeir.

**XI.    MOTION TO PRECLUDE ANY TESTIMONY OR EVIDENCE AS TO COMPLAINTS MADE BY MS. LINSENMEIR PRIOR TO ARRIVING AT THE WCC ON SEPTEMBER 30, 2018, EXCEPT TO SUPPORT DISCLOSED EXPERT OPINIONS AND WITH A LIMITING INSTRUCTION NOTING THAT THERE IS NO EVIDENCE THAT ANY INFORMATION REGARDING THESE COMPLAINTS WAS COMMUNICATED TO THE DEFENDANTS AND THAT THE EVIDENCE IS ONLY ADMISSIBLE TO DETERMINE THE EXTENT AND HISTORY OF MS. LINSENMEIR'S DISEASE.**

There is evidence in this case that Ms. Linsenmeir made complaints about her health both to her family through text messages and to the Springfield Police Department. Plaintiff cannot produce any evidence that Ms. Linsenmeir's family or

the Springfield Police Department ever conveyed these complaints to anyone at the

WCC. Indeed, the evidence is clear that these complaints were not passed along to

anyone at the WCC. While the evidence is certainly admissible at least as the

properly-disclosed basis of at least one expert opinion, there is a great danger that

the evidence could confuse the jury or mislead the jury into improperly concluding

that, since Ms. Linsenmeir made these prior complaints, someone must have passed

them along to WCC staff or that Ms. Linsenmeir must have made the same

complaints at the WCC. *See* Fed. R. Evid. 403. This danger can be remedied through

a limiting instruction and Defendants hereby move that, each time the evidence is

put before the jury and at the close of all evidence, the Court provide the following

limiting instruction to the jury:

> The jury is reminded that, although there is evidence that Ms.
> Linsenmeir made complaints about her health prior to her arrival at
> the WCC, there is absolutely no evidence that her family, the
> Springfield Police Department, or anyone else conveyed these
> complaints to the WCC. Further, evidence of these prior complaints is
> not evidence that Ms. Linsenmeir made the same or similar complaints
> at the WCC. Plaintiff bears the burden of proving any such complaints
> at the WCC through evidence from her time at the WCC.

**XII.  MOTION TO PRECLUDE ALL REFERENCES TO THE NEGLIGENCE STANDARD OF
CARE, INCLUDING BY PLAINTIFF, HER FACTS WITNESSES, OR HER EXPERT
WITNESSES.**

Plaintiff has not brought a negligence action against defendants.

Nonetheless, plaintiff's experts made repeated reference to the standard of care

whether through that exact term or through other analogous terms such as

"community medical standards" or "adequate medical care." Plaintiff's experts have

also made repeated reference to breach of the standard of care, using phrases such

as "fell beneath the floor of medical reasonableness" (*e.g.* Day Aff., Exh. A 10) and

"had no medical justification" (*e.g.* Day Aff., Exh. C, 9).

These explicit and implicit references to the medical standard of care will be

confusing to the jury and could mislead the jury into drawing the highly improper

inference that a showing of a breach of the standard of care is sufficient to prove an

ADA violation. This is certainly not the case.

> The Supreme Court has been clear about what the ADA does not
> require. The *Olmstead* Court said in response to the dissent's concerns:
> "We do not in this opinion hold that the ADA imposes on the States a
> "standard of care" for whatever medical services they render, or that
> the ADA requires States to "provide a certain level of benefits to
> individuals with disabilities."

*Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) *quoting Olmstead v. L. C. by
Zimring*, 527 U.S. 581, 608, 119 S. Ct. 2176, 2191 (1999).

The references to the standard of care by Plaintiff and her experts threaten

the HCSD's right to a fair trial. Therefore, Defendants move this Court to preclude

Plaintiff, her counsel, her fact witnesses and expert witnesses from making any

reference whatsoever to the medical standard of care, either explicitly or through

such terms as "community medical standards" and "adequate medical care" and

further preclude reference to the breach of the standard of care, whether explicitly

or through such phrases as "no medical justification" or "fell beneath the floor of

community medical standards."

XIII.   MOTION TO PRECLUDE ALL EVIDENCE OR TESTIMONY REGARDING ALLEGED STATEMENTS OR BEHAVIOR BY UNNAMED INDIVIDUALS, AS SET FORTH IN THE DECLARATIONS OF HAYLEY CHAMPAGNE AND ALEXANDRIA COX.

After the close of discovery, Plaintiff produced the Declarations of two witnesses, Hayley Champagne and Alexandria Cox. Day Aff., Exhs. E and F. Both of these Declarations make allegations against unnamed "WCC staff members". Day Aff., Exh. E, ¶4; Day Aff., Exh. F, ¶5. Neither Plaintiff nor her witnesses have provided any identifying information regarding these unnamed "WCC staff" in spite of the fact that Defendants have provided all shift rosters for the housing units in which Ms. Linsenmeir was housed and hours of video of every moment that Ms. Linsenmeir was in these units. It appears that, over the four-year life of this case, and in spite of the exhaustive discovery Plaintiff conducted, she did absolutely nothing to identify these unnamed "WCC staff."

This robs Defendants of the ability to defend against the claims of these witnesses and denies Defendants the opportunity to rebut these claims. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of …unfair prejudice." Fed R. Evid. 403. The probative value of the Declarations of Champagne and Cox is small, not only because the alleged rogue staff members are unnamed, but because of the dearth of any information regarding these individuals, such as how many of them there were, whether they were male or female, a description of their age and physical appearance. Furthermore, the probative value of the Champagne Declaration is further weakened by equivocation through words and phrases such as "generally" and "or words to that effect." Day

16

Aff., Exh. E, ¶5. The probative value of the Cox Declaration is diminished by pure

speculation, such as "it was my impression that the WCC staff members assumed

she was detoxing." Day Aff., Exh. F, ¶5. The slight probative value of these

Declarations is substantially outweighed by the great prejudice to Defendants if

this vague evidence were put before the jury after Defendants were robbed of the

opportunity to defend against these allegations.

Defendants move this Court to preclude Plaintiff, her counsel, or her

witnesses from making any reference whatsoever to the allegations against

unnamed "WCC staff," such as the allegations contained in the Declarations of

Champagne and Cox.

Respectfully submitted,
HAMPDEN COUNTY SHERIFF'S
DEPARTMENT, EILEEN BARRETT, AND
MAUREEN COUTURE

By their attorney,
ANDREA CAMPBELL
ATTORNEY GENERAL

By: */s/ Thomas E. Day*
Thomas E. Day
Special Assistant Attorney General
BBO #655409
Lauren F. Olanoff
BBO #669371
Michael G. McDonough
BBO #682128
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street, P.O. Box 9035
Springfield, MA 01102-9035
(413) 737-0260
ted@efclaw.com
lfo@efclaw.com
mgm@efclaw.com

17

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies of this document will be mailed, first-class mail, postage prepaid, to any unregistered participants on April 24, 2024.

*/s/ Thomas E. Day*
Thomas E. Day

18