UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

MAURA O'NEILL, AS ADMINISTRATOR OF
THE ESTATE OF MADELYN E.
LINSENMEIR,

PLAINTIFF

V.

HAMPDEN COUNTY SHERIFF'S
DEPARTMENT AND MAUREEN COUTURE,

DEFENDANTS

CIVIL ACTION NO. 3:20-CV-30036

**OPPOSITION OF HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND MAUREEN COUTURE TO PLAINTIFF'S MOTIONS IN LIMINE**

The Hampden County Sheriff's Department (the "HCSD") and Maureen Couture hereby respectfully oppose the Plaintiff's Motions in Limine (the "Motions").

## I.   OPPOSITION TO PLAINTIFF'S MOTION TO LIMIT TESTIMONY OF SUSAN W. MCCAMPBELL

The Defendants' expert witness, Susan W. McCampbell, has offered several opinions relative to the HCSD's corrections policies and the actions of its correctional staff. Ms. McCampbell's opinions are based in part on her review of the Cox and Champagne *declarations* and her determination that the information contained in the declarations was not credible and that these declarations contained allegations of conduct that were clearly rebutted by the video evidence available. Day Aff., Exh. A (McCampbell Dep.), 94-102.

1

When an expert relies on the statements or opinions of another, such reliance goes to the weight, not to the admissibility of the expert's opinion. *Ferrara & Dimercurio v. St. Paul Mercury*, 240 F.3d 1, 9 (1st Cir. 2001); *Forrestal v. Magendantz*, 848 F.2d 303, 306 (1st Cir. 1988). *See also Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 21 (1st Cir. 1994) ("When the factual underpinning of an expert opinion is weak, it is a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury."). It follows then, that if an expert *rejects* the statements or opinions of another, this too goes to the weight, and not admissibility of that opinion.

"[V]igorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Campos v. Safety-Kleen Sys.*, 98 F. Supp. 3d 372, 378 (D.P.R. 2015) (*citing Daubert*, 509 U.S. at 596). *Garcia-Insausti v. United States*, No. 21-1578 (JAG)(HRV), 2024 U.S. Dist. LEXIS 26793, at *10-11 (D.P.R. Feb. 8, 2024).

"When the 'adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion.'" *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010) (quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)). "If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony." *Payton v. Abbott Labs.*, 780 F.2d 147, 156 (1st Cir. 1985).

Ms. McCampbell testified that she relied on her experience in corrections to determine that the information provided in the declarations was not credible. Day Aff., Exh. A, 96:22-97:20, 100:5-102:21.  She specifically stated that she gave little to no weight to a complaint made years after the fact and that she had seen thousands of inmate-written materials and that neither of the declarations was consistent with these materials. *Id.* at 102:3-21. She also testified that the events detailed in the declarations were not observed in any of the video evidence of the women during the same timeframe and therefore found the declarations to be unreliable. *Id.* at 100:20-101:8, 102:9-17. The Advisory Committee Notes to Rule 702 of the Rules of Evidence, state, in pertinent part, that Rule 702 "expressly contemplates that an expert may be qualified on the basis of experience." *See also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 156 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")

## II.   OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF DR. THOMAS LINCOLN

Plaintiff seeks to exclude Dr. Lincoln's testimony insofar as it purports to summarize Madelyn Linsenmeir's medical records. As a practical matter, there can be no doubt that Ms. Linsenmeir's medical records will be in evidence at the trial of this matter. Once in evidence, any other witness may refer to them. Dr. Lincoln's prospective testimony explaining or summarizing these medical records is likewise appropriate where the expert witnesses' "scientific, technical, or other specialized

3

knowledge will help the trier of fact to understand the evidence or to determine a

fact in issue." Fed.R.Evid. Rule 702(a).

Dr. Lincoln need not be offering any particular opinion regarding the medical

records or Ms. Linsenmeir's care or treatment at the WCC. As the Advisory

Committee Notes to Rule 702 contemplate:

> Most of the literature assumes that experts testify only in the form of
> opinions. The assumption is logically unfounded. **The rule
> accordingly recognizes that an expert on the stand may give a
> dissertation or exposition of scientific or other principles
> relevant to the case, leaving the trier of fact to apply them to
> the facts**. Since much of the criticism of expert testimony has centered
> upon the hypothetical question, it seems wise to recognize that
> opinions are not indispensable and to **encourage the use of expert
> testimony in non-opinion form when counsel believes the trier
> can itself draw the requisite inference**. (emphasis added).

Fed. R. Evid. 702. Furthermore, as the long-time Medical Director of the HCSD

(Motions 4), Dr. Lincoln is certainly familiar with the record keeping at the HCSD.

Motions, Exh. A ("Lincoln Aff.") to Exh D ("Lincoln Rpt."), ¶21. As both a fact

witness and an expert witness board-certified in both Internal Medicine and

Addiction Medicine (Lincoln Aff., ¶4), Dr. Lincoln is certainly qualified to testify as

to Ms. Linsenmeir's care at the HCSD as reflected in her medical records.

Plaintiff also seeks to exclude portions of Dr. Lincoln's opinion testimony on

the grounds that it does not have an adequate foundation. In making this argument

about an extremely fine point of Dr. Lincoln's testimony, the Plaintiff ignores that

Dr. Lincoln is both a fact witness, as the long-time Medical Director of the

Hampden County Sheriff's Department (Motions 4) as well as an expert witness.

Dr. Lincoln, in his role as a fact witness, attested (correctly) to the fact that "[t]he medical technicians who dispense medications to the patients in the housing units are trained to identify the symptoms of over-sedation from Librium and not dispense additional Librium in this situation." (Lincoln Aff., ¶45), repeated this in his Expert Report as one of the bases for one of his opinions (Lincoln Rpt. 1), and confirmed this at his deposition (Lincoln Dep, 66:4-12). The Plaintiff is certainly free to challenge Dr. Lincoln's credibility as to whether the HCSD actually provided this training to its Medical Technicians, but there is no basis to bar Dr. Lincoln from testifying that the training did, in fact, take place. While Dr. Lincoln testified that he was uncertain what documents he had reviewed connected with the training, he testified clearly that he "remembered it as being part of their training." Lincoln Dep., 66:11-12, 67:8-9. Dr. Lincoln's unclear memory as to the basis for his knowledge that the Medical Technicians were so trained does not permit the exclusion of his opinions, because this goes to the weight, not the admissibility of an opinion. "When the 'adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion." *Zuckerman v. Coastal Camps, Inc*., 716 F. Supp. 2d 23, 28 (D. Me. 2010) (quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)). "If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony." *Payton v. Abbott Labs*., 780 F.2d 147, 156 (1st Cir. 1985).

### III.   OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF DR. MELISSA WEIMER

Dr. Weimer offers her opinion that "the WCC had a proactive and medically appropriate alcohol withdrawal management protocol in October 2018." This opinion is based upon her training and experience and her review of all of the materials produced in discovery related to Madelyn Linsenmeir's care and treatment at the WCC. Dr. Weimer appropriately details the bases for her opinion, which includes Dr. Lincoln's statements that "the medical technicians who dispense medications to patients in the housing units are trained to identify the symptoms of over-sedation from Librium and not dispense additional Librium in this situation." Weimer report at p. 6.

When an expert relies on the statements or opinions of another, such reliance goes to the weight, not to the admissibility of the expert's opinion. *Ferrara & Dimercurio v. St. Paul Mercury*, 240 F.3d 1, 9 (1st Cir. 2001); *Forrestal v. Magendantz*, 848 F.2d 303, 306 (1st Cir. 1988). *See also Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 21 (1st Cir. 1994) ("When the factual underpinning of an expert opinion is weak, it is a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury.").

The Plaintiff claims that the statement by Dr. Lincoln is inadmissible. As explained above, Dr. Lincoln, as the long-time Medical Director of the HCSD, had a sound basis for the statement as to the training of Medical Technicians at the HCSD, regardless of whether he could recall whether the training was document-based and, if so, which documents were involved. However, even if Dr. Lincoln's

6

testimony were deemed inadmissible (and it should not be), this does not render Dr.
Weimer's opinion inadmissible. "When the 'adequacy of the foundation for the
expert testimony is at issue, the law favors vigorous cross-examination over
exclusion.'" *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010)
(quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)).
"If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a
matter affecting the weight and credibility of their testimony." *Payton v. Abbott
Labs.*, 780 F.2d 147, 156 (1st Cir. 1985).

### IV. OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE ARGUMENT OR EVIDENCE OF COMPARATIVE OR CONTRIBUTORY FAULT BY MADELYN LINSENMEIR OR HER FAMILY

Through this motion, the Plaintiff seeks to exclude some unidentified
evidence and associated argument of "comparative or contributory fault by Madelyn
Linsenmeir or her family." Motions 6. First, the Court should deny this motion
because the Plaintiff does not identify the evidence that she is seeking to exclude,
even while providing a detailed list of evidence she does *not* seek to exclude.
Motions 7. By failing to identify the evidence she seeks to exclude, the Plaintiff
denies the Defendants the opportunity to respond with any specificity. The vague,
generalized nature of this motion prevents the Defendants from presenting any
arguments based upon the nature of the evidence the Plaintiff seeks to exclude,
including presenting reasons why the Court should admit the evidence. Were this
Court to allow this motion, the Defendants would be unable to discern whether
specific items of evidence are excluded, creating a significant impediment to the

7

Defendant's ability to prepare for trial. This flaw alone is sufficient reason for the Court to deny this motion.

Second, the Court should deny this motion because it is overbroad in what it asks the Court to do, namely to "exclude any evidence or argument of comparative or contributory fault by Madlyn Linsenmeir or her family." Motions 9. A category this broad would inevitably include evidence that is relevant to the scope and limits of the Plaintiff's claimed damages. For instance, evidence that Ms. Linsenmeir did not take a particular opportunity to request medical care from a medical professional, certainly relevant to the scope and limits of the Plaintiff's damages, could also be characterized as evidence of comparative fault and deemed excluded. This motion is simply too vague to be of any use to this Court in determining, in advance, whether any particular piece of evidence should be excluded.

Finally, comparative fault is an established principle of damages in Massachusetts and, in a situation such as this, where no suitable federal rule exists, the application of the controlling Massachusetts law is appropriate. *See Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S. Ct. 1938, 1942 (1985). The Plaintiff does not cite a single First Circuit case in support of her position that the principle of comparative negligence is unavailable to the Defendants. Motions 7, 8.

Neither Title II nor Sec. 1983 provide any specific guidance on how Courts should deal with the comparative fault of Madelyn Linsenmeir or her family. Where a federal statute is silent on a point, Courts look to analogous state law for guidance. *See, e.g. Durante v. Cty. of Belknap*, 2004 DNH 113 ("because Title II of

the ADA provides no specific limitations period, the court must apply the most analogous state statute of limitations.") *citing Wilson,* 471 U.S. at 266-67.  In the §1983 context, "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Id*. Indeed, §1988 specifically refers to state common and statutory law where federal law does not provide guidance.

> The language of § 1988 directs the courts to follow 'a three-step process' in determining the rules of decision applicable to civil rights claims: 'First, courts are to look to the laws of the United States 'so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect.' [42 U. S. C. § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state 'common law, as modified and changed by the constitution and statutes' of the forum state. *Ibid*. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.' *Ibid*.

*Wilson* 471 U.S. at 267 quoting 42 U.S.C. § 1988 and *Burnett* v. *Grattan*, 468 U.S. 42, 47-48 (1984).

As the laws of the United States are silent on the question of how to deal with the comparative fault of Ms. Linsenmeir and her family, including the Plaintiff, this Court should look to the analogous Massachusetts law to determine the principles of damages applicable to the Plaintiff's Title II and §1983 claims. *See Zarcone v. Perry*, 572 F.2d 52, 55 (2d Cir. 1978) ("[T]here is no logical reason why general principles of damages should not apply to a civil rights action.") Massachusetts has adopted, through statute, the doctrine of comparative

negligence. M.G.L. c. 231, §85 (providing that damages shall be diminished consistent with the doctrine of comparative fault in negligence actions). While Title II and § 1983 claims are distinct from a state law tort claim for personal injury, they are sounded in the common law principles of tort as applicable to personal injury claims. *See Wilson v. Garcia*, 471 U.S. 261, 277, 105 S. Ct. 1938, 1947 (1985) ("[a]mong the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract") *and Parker v. Universidad de P.R.*, 225 F.3d 1, 7 (1st Cir. 2000) ("claim under Title II is similar in many respects to a tort claim") citing *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 224 (4th Cir. 1993) (Rehabilitation Act is an antidiscrimination statute similar to section 1983 or Title VI of the Civil Rights Act of 1964 and personal injury statutes applied "because Rehabilitation Act claims are injuries to individuals and analogous to personal injury claims"). The Defendants specifically asserted comparative negligence as an affirmative defense to any claim "sounding in" (i.e. "based in") negligence, as the federal statutory claims certainly are. Ans. Amend. Compl. 17 (¶¶ 29, 30, 32). The Plaintiff certainly was on notice that the Defendants were affirmatively asserting the comparative negligence defense.

### V.   OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE REGARDING MADELYN LINSENMEIR'S USE OF SUBSTANCES DURING PREGNANCY

Madelyn Linsenmeir's lifetime struggle with opiate use disorder is relevant to the causation and damages prongs underlying the Plaintiff's claims against the Defendants. The Plaintiff argues that the HCSD defendants' actions, inactions and policies led to the death of Ms. Linsenmeir; and that had they acted in accordance with their legal obligations, Ms. Linsenmeir would have received treatment in sufficient time to save her life. The plaintiff's two medical experts offer this very opinion in each of their reports: "…had she received regular monitoring, her underlying pathology of infective endocarditis could have been identified in time to save her life." Berk Report at p. 12. "…due to delays in bringing her in for assessment and treatment, her endocarditis and severe septic shock were very advanced and she was not able to be saved. It is very likely that Ms. Linsenmeir's death was caused by her late presentation to the hospital while in custody." Kimmel Report at p. 1.

Defendants' expert Dr. McGee will opine that not only was Madeline's endocarditis so advanced by the time she first entered that WCC that she had little if any chance of survival even if she had immediately been taken to an acute care setting, but that she would have not have been a candidate for the cardiovascular surgery necessary to save her life. Defendants' expert Dr. Weimer will further opine that Ms. Linsenmeir would be unlikely to survive beyond one year even if she did survive the surgery. Both experts' opinions are largely based on Ms. Linsenmeir's long history with opioid and alcohol abuse.

11

Ms. Linsenmeir's use of substances during her pregnancy are evidence that she was unlikely to heed the medical advice that would follow cardiovascular surgery nor was she likely to refrain from returning to abuse substances, both of which would be required in order to facilitate any chance of her long-term survival. McGee Report at p. 7. Weimer Report at pp. 8-11.

Madeline's long history with substance abuse- and her disregard of medical advice- is wholly relevant to the question of causation and damages and a jury must therefore hear it.

The plaintiff claims that this evidence should be excluded under Fed. R. Evid. Rule 403. However, "the exclusion of evidence is not the general rule; to the contrary, the "trial court's discretion to exclude relevant evidence under Rule 403 should be exercised with recognition that exclusion is **extraordinary and to be invoked sparingly**." Rule 403.2.1 (emphasis in original); See also *Harrington v. Hiller*, 883 F.2d 411, 414 (5th Cir. 1989) ("probative evidence should be 'sparingly' excluded"); *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) ("Rule 403 is extraordinary remedy whose 'major function . . . is limited to excluding matter of scant or cumulative probative [*6] force . . ..'"); *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) ("trial court's discretion to exclude relevant evidence under Rule 403 should be exercised with recognition that exclusion is extraordinary and to be invoked sparingly, with trial court striking the balance in favor of admission in most cases").

12

"In performing the 403 balancing, the court should 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000) (citation omitted).

## VI.   OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXTRANEOUS FAMILY HISTORY

Plaintiff improperly asks this court to exclude so-called "extraneous" evidence related to Madelyn Linsenmeir's unsupportive family history on the topics of substance use disorder, family assistance and accountability, and relapse prevention. The Motion should be denied, first, because the Plaintiff fails to identify the specific evidence, acts, events, or statements to be excluded.  Instead, all that is provided are three broad categories that are unhelpful in articulating let alone establishing a pre-trial order. Those three categories are "alleged substance use, infidelity, and participation [in] treatment programs."  Motion, 12.  However, Plaintiff never says what the evidence is or to whom it specifically applies. Timeframes are not provided. Neither the Defendant nor this Court can meaningfully address purported evidence that is not identified by the Plaintiff, who, as the movant, bears the burden of persuasion.  The Motion's self-serving conclusion that as matter of law "any" evidence relating to those topics is "irrelevant" cannot stand.  *Id.*  By failing to identify the specific acts to be excluded or even the individuals to which they are attributed, despite filing under seal, the Plaintiff has failed to meet her burden at this pre-trial stage.

Second, the Plaintiff's reliance on *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir. 1980), and related cases, is misguided. Those cases merely recite common holdings that evidence relating to the above three categories may not be used to imply untruthfulness. None of those cases hold that such evidence is *never* admissible. The more prudent route for this and any Court is to examine the actual proffered act or evidence before ruling, rather than outlawing entire categories without an application of the law to the actual facts or circumstances or even an identification of the evidence that is to be excluded

Third, this Motion should be denied because the topics are probative on the issues of family support. The topics relate to key issues in this case, such as causation, reporting, and life expectancy. Several of the experts, on each side of the case, have opined and will state at trial that family support, strong family bonds, reinforcement, encouragement for sobriety and following the advice of health care providers, and enabling are relevant to those topics. These categories also intersect with emotional support, accountability, practical assistance, understanding and education, relapse prevention, and trust, all of which are concepts that are relevant to substance use disorder, adverse outcome prevention, and recovery.

Fourth, the individuals purportedly involved in the three categories (but not specifically identified) are presumably the beneficiaries and representatives of the Estate. There is no violation of Fed. R. Evid. 403 to allow questioning on the role of these individuals in impacting, reporting on, or taking steps to improve the condition of Madelyn prior to entering the Defendant's facility, the lack of any

14

reporting by these individuals of red flags or concerns as to her health to the Defendant, and the impact that their own substance abuse, lack of intervention in Madelyn's care, lack of family support or strong bonds, and lack of reinforcement, all of which are relevant topics on causation and also on how the absence of family support factors would have impacted her future life expectancy in the absence thereof.  For these reasons, it is premature to make any ruling on these categories.

VII.   OPPOSITION TO MOTION TO EXCLUDE CERTAIN TESTIMONY AND RECORDS OF JESSE MILLIGAN

As the Defendants previously argued in their own Motion in Limine on this topic, absolutely no reference to Aiden should be made at trial by any attorney, litigant, or witness.  Aiden's inclusion in the trial was made unnecessary by the elimination of the Wrongful Death claims. The only purpose of a reference to Aiden would be an impermissible and prejudicial appeal to sympathy, which is forbidden by Fed. R. Evid. 403.

If, however, this Court allows reference to Aiden, or Madelyn as a mother, at trial and if Plaintiff opens the door and decides to reference Aiden for a permissible purpose or otherwise, then the Plaintiff will have opened the door to the Defendant being able to call Ms. Milligan as a witness and introduce Madelyn Linsenmeir's adverse and injurious impact on Aiden and the other evidence raised under this section.

Respectfully submitted,
HAMPDEN COUNTY SHERIFF'S
DEPARTMENT, EILEEN BARRETT, AND
MAUREEN COUTURE

By their attorney,
ANDREA CAMPBELL
ATTORNEY GENERAL

By: */s/ Thomas E. Day*
Thomas E. Day, BBO #655409
Special Assistant Attorney General
Lauren F. Olanoff, BBO #669371
Michael G. McDonough, BBO #682128
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035
(413) 737-0260
ted@efclaw.com; lfo@efclaw.com;
Dated: May 1, 2024                     mgm@efclaw.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies of this document will be mailed, first-class mail,
postage prepaid, to any unregistered participants on May 1, 2024.

*/s/ Thomas E. Day*

16