UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAURA O'NEILL, as administrator of the Estate of Madelyn E. Linsenmeir,<br><br>        Plaintiff,<br>v.<br>CITY OF SPRINGFIELD, *et al.*<br>        Defendants. | C.A. No. 20-30036-MGM |

**JOINT PRE-TRIAL MEMORANDUM**

  Pursuant to the Court's Pre-Trial Procedural Order (D.E. 217), the parties jointly submit the following memorandum. As discussed in the parties' pending Joint Motion to Extend Filing Dates for Joint Pretrial Memorandum and Other Pretrial Materials (D.E. 252), and below, this memorandum will likely require amendment and/or supplementation once the witness and exhibit lists are submitted, and once the depositions of Haylee Champagne and Alexandria Cox have taken place. For this reason, the parties respectfully request that the Court not deem waived any objections or issues not raised in this initial version of the Joint Pre-Trial Memorandum.

  **I. Length of trial**

  The parties estimate that the trial will run approximately four weeks, inclusive of jury selection.

  **II. Concise statement of the case, to be given to the panel before voir dire**

  The parties were unable to agree on a concise statement of the case. The parties' respective proposed statements are below.

a. **The Estate's Proposed Statement**

The Estate proposes the following statement of the case, to be given to the panel before voir dire:

Madelyn Linsenmeir died in 2018 while in the custody of the Hampden County Sheriff's Department. The plaintiff in this case is Madelyn's Estate, which is being administered by her sister, Maura O'Neill. The defendants are the Sheriff's Department and a nurse who works for the department named Maureen Couture. The Estate alleges that Madelyn died because the defendants denied her medical care while she was in custody, in violation of her rights under the United States Constitution and the Americans with Disabilities Act. The defendants deny the Estate's claims.

b. **The Defendants' Proposed Statement**

The defendants propose the following statement of the case, to be given to the panel before voir dire:

Madelyn Linsenmeir died at Baystate Medical Center on the night of October 7, 2018 at the age of 30 after having struggled with drug addiction since she was in high school. Ms. Linsenmeir, a native of Burlington, Vermont, was arrested in Springfield, Massachusetts on September 29, 2018 and spent that night in the Springfield Police Department lockup. The Springfield Police Department transferred Ms. Linsenmeir to the Western Massachusetts Regional Women's Correctional Center in Chicopee in the late morning of September 30, 2018 without providing any information as to Ms. Linsenmeir's health condition while in Springfield Police Department custody. The Women's Correctional Center is operated by the Hampden County Sheriff's Department. Ms. Linsenmeir was at the Women's Correctional Center for less than four days when Hampden County Sheriff's Department medical staff discovered Ms. Linsenmeir in ill health on the morning of October 4, 2018 and called an ambulance, which rushed her to Baystate

Medical Center in Springfield. Ms. Linsenmeir died on the night of October 7, 2018 at Baystate Medical Center while still in the custody of the Hampden County Sheriff's Department. Ms. Linsenmeir's cause of death was sepsis brought on by a heart infection, infective endocarditis, with chronic substance abuse as a significant condition contributing to Ms. Linsenmeir's death.

The plaintiff in this case is Ms. Linsenmeir's Estate, which is being administered by her sister, Maura O'Neill. The Estate has sued Maureen Couture, a Registered Nurse employed by the Hampden County Sheriff's Department at the Western Massachusetts Regional Women's Correctional Center, and the Hampden County Sheriff's Department itself. The Estate alleges that Ms. Linsenmeir was disabled due to her drug addiction and that she died because the defendants denied her medical care while she was in Sheriff's Department custody, in violation of her rights under the United States Constitution and the Americans with Disabilities Act. The defendants deny the Estate's claims that they denied medical care to Ms. Linsenmeir and state that Ms. Linsenmeir received medical care and attention during the less than four days that she was at the Women's Correctional Center, that Ms. Linsenmeir never made her serious, underlying health condition known to staff at the Women' Correctional Center, even while raising and receiving treatment for other health concerns, and that Sheriff's Department medical staff called for an ambulance to rush Ms. Linsenmeir to the hospital as soon as it became apparent that Ms. Linsenmeir was ill, more than three days prior to her death..

**III.   Concise statement of the applicable law, to be given to the jury before opening statements**

The parties were unable to agree on a concise statement of the applicable law. The parties' respective proposed statements are below.

### a. The Estate's Proposed Statement

The Estate proposes the following concise statement of the law, to be given to the jury before opening statements:

There will be evidence in this case that Madelyn Linsenmeir died in October 2018 from sepsis arising from an infection in her heart, called endocarditis. There will be evidence that Madelyn was in the custody of the Hampden County Sheriff's Department for about a week before she died. Madelyn's Estate is essentially claiming that, while Madelyn was in the Sheriff's Department's custody, she was unlawfully denied medical treatment, which resulted in her death.

Specifically, Madelyn's Estate is bringing two claims against the defendants. The first claim is against the Sheriff's Department under the Americans with Disabilities Act, also known as the ADA. The ADA prohibits discrimination against individuals with disabilities. Substance use disorder is a recognized disability under the ADA. The Estate alleges that the Hampden County Sheriff's Department violated Madelyn's rights under the ADA by denying her medical care because of her substance use disorder. The Estate can potentially prove that any denial of medical care was caused by discrimination in multiple ways. For example, the Estate might show that Sheriff's Department personnel made statements expressing discrimination toward people who use substances. The Estate also might show that the Sheriff's Department's staff were desensitized to the medical problems of people who use substances due to their repeated exposure to prisoners undergoing withdrawal and the Sheriff's Department's procedures. The Estate might also show that any failure to provide medical treatment was so arbitrary and unjustified that you can infer it was likely the result of discrimination. Ultimately, you will have to decide whether the Estate has proven, by a preponderance of the evidence, that the Sheriff's Department failed to provide medical treatment to Madelyn in violation of the ADA.

The second claim is brought by the plaintiff against defendant Couture. The plaintiff claims that defendant Couture violated Madelyn's rights under the Fourteenth Amendment to the United States Constitution because defendant Couture unreasonably failed to provide Madelyn with treatment for a serious medical need. This claim is brought pursuant to a federal statute, Title 42 of the United States Code, Section 1983, which prohibits any person acting under color of law from depriving someone of their rights under the Constitution or laws of the United States. Ultimately, you will have to decide whether the Estate has proven, by a preponderance of the evidence, that Ms. Couture unlawfully failed to provide medical treatment to Madelyn.

After the parties present their evidence but before you begin your deliberations, I will instruct you on the particular elements that the plaintiff has to prove to succeed on each claim.

If the Estate succeeds in proving a violation of the ADA, or an unconstitutional denial of medical care, or both, then you will have to determine what money damages to award to the Estate. You may award damages for different categories of harms.  The damages may include compensation for any conscious pain or suffering that Madelyn experienced as a result of any unlawful denial of medical care.  The damages may also include compensation for the loss of the care, protection, and other services that Madelyn would have provided to her son, Aidan, if she had lived.  Ultimately, you will be responsible for deciding what kind of damages to award and the amount of any damages.

    b. **<u>The Defendants' Proposed Statement</u>**

The defendants propose the following concise statement of the law, to be given to the jury before opening statements:

The plaintiff has the burden of proving to you every element of each claim in this case. There will be evidence in this case that Madelyn Linsenmeir died at Baystate Medical Center on

the night of October 7, 2018 from sepsis arising from an infection in her heart, called infective endocarditis, with chronic substance abuse as a significant condition contributing to her death. There will be evidence that Ms. Linsenmeir was in the custody of the Hampden County Sheriff's Department from the late morning of September 30, 2018 until the time of her death on October 7th, but that she had been rushed to the hospital on the morning of October 4, 2018 after Sheriff's Department nurses who were in her housing unit to check on the wellness of other inmates discovered that Ms. Linsenmeir was in ill health and immediately called for an ambulance. There will be evidence that Ms. Linsenmeir was a patient at Baystate Medical Center from the morning of October 4th until her death on the night of October 7th, although still in the custody of the Sheriff's Department during her hospitalization. Ms. Linsenmeir's Estate is alleging that, while Ms. Linsenmeir was in the Sheriff's Department's custody, Nurse Maureen Couture was aware that Ms. Linsenmeir had a serious medical need and deliberately refused to provide her with medical care. Ms. Linsenmeir's Estate is also alleging that HCSD personnel, who the Estate has not named or, in any way identified, intentionally discriminated against Ms. Linsenmeir because of her drug addiction, refused to provide her with treatment for her medical conditions, deprived her of the benefits of the HCSD's medical programs, and were deliberately indifferent to Ms. Linsenmeir's serious medical needs. Nurse Maureen Couture and the Hampden County Sheriff's Department deny that Ms. Linsenmeir was ever denied medical treatment while under the care of Nurse Maureen Couture or in the custody of the Hampden County Sheriff's Department. To the contrary, Ms. Linsenmeir received treatment for the conditions she reported to HCSD medical staff, specifically an injured knee and recent, heavy alcohol and drug use, creating the risk of dangerous withdrawal symptoms.

Specifically, the Estate is bringing two claims against Nurse Couture and the Sheriff's Department. The first claim is against the Sheriff's Department under the Americans with Disabilities Act, also known as the ADA. The ADA prohibits discrimination against individuals with disabilities. Drug and alcohol addiction is a disability under the ADA. The Estate alleges that the Hampden County Sheriff's Department violated Ms. Linsenmeir's rights under the ADA by denying her medical care because of her drug addiction. In order to prevail on its ADA claim, the Estate must prove that the Sheriff's Department denied Ms. Linsenmeir medical care and that the denial of the medical care was because of Ms. Linsenmeir's drug addiction.Ultimately, you will have to decide whether the Estate has proven, by a preponderance of the evidence, that the Sheriff's Department personnel intentionally denied medical treatment to Ms. Linsenmeir in violation of the ADA, that the reason for the intentional denial of the medical care was because of Ms. Linsenmeir's drug addiction, and that the intentional discrimination against Ms. Linsenmeir by the unnamed Sheriff's Department personnel caused Ms. Linsenmeir's death..

The second claim is brought by the plaintiff against Nurse Maureen Couture. The Estate claims that Nurse Couture violated Ms. Linsenmeir's rights under the Eighth Amendment to the United States Constitution by subjecting her to cruel and unusual punishment. The basis for the Estate's claim against Nurse Couture is that, the Estate alleges, Nurse Couture was subjectively aware that Ms. Linsenmeir had a serious medical need deliberately refused to provide her with necessary medical care. This claim is brought pursuant to a federal statute, Title 42 of the United States Code, Section 1983, which prohibits any person acting under color of law from depriving someone of their rights under the Constitution of the United States, including the right not to be subjected to cruel and unusual punishment. Ultimately, you will have to decide whether the Estate has proven, by a preponderance of the evidence, that Ms. Couture was subjectively aware that Ms.

Linsenmeir had a serious medical need and deliberately refused to provide medical care to Ms. Linsenmeir and that, through this alleged deliberate indifference to Ms. Linsenmeir's serious medical needs, Nurse Couture caused Ms. Linsenmeir's death..

After the parties present their evidence but before you begin your deliberations, I will instruct you on the particular elements that the plaintiff has to prove to succeed on each claim.

**IV.   Concise summary of the evidence that will be offered by each party**

The Estate anticipates offering evidence that includes, but is not limited to, the following categories:

- Evidence that Ms. Linsenmeir suffered from substance use disorder;
- Evidence that Ms. Linsenmeir was ill in late September 2018 and that her symptoms included chest pain and difficulty breathing, including text messages with her family on September 28, evidence from her time in Springfield custody on September 29, and testimony from her mother about her phone call on September 29;
- Evidence of Ms. Linsenmeir's intake to the WCC on September 30, including her report of chest pain to Eileen Barrett, her medical intake, and the orders entered at intake;
- Evidence of Ms. Linsenmeir's complaints on the night of September 30 to October 1, including the testimony of Haylee Champagne;
- Evidence of Ms. Linsenmeir's visit to medical for a PPD plant on October 1, and leaving in a wheel chair;
- Evidence of the call to medical on the evening of October 1 and lack of response;
- Evidence of the purported medical rounds conducted (or not conducted) on October 1, 2, and 3;

- Evidence of Ms. Linsenmeir's transit to medical on October 2, including her collapse in the staircase;

- Evidence of Ms. Linsenmeir's visit to medical on October 2;

- Evidence that Ms. Linsenmeir was ill on October 3 into the morning of October 4 and that prisoner sought help on her behalf, including video evidence and the testimony of Alexandria Cox and Sandi Dailey;

- Evidence of interactions with Ms. Linsenmeir on the morning of October 4, including medical administration and a PPD reading;

- Evidence of the emergency medical response on October 4;

- Evidence of Ms. Linsenmeir's hospitalization and death, including evidence of her conscious pain and suffering at the hospital from Maureen Linsenmeir and Kate O'Neill;

- Evidence of discriminatory practices at the WCC, including prior complaints identified in the motions in limine, policies and procedures, and the testimony of witnesses, including Lydia Huss.

- Expert evidence as summarized in the reports of Dr. Berk and Dr. Kimmel;

- Additional damages evidence, including through the testimony of Maura O'Neill and various photographs and videos concerning Ms. Linsenmeir's relationship with her son.

Ms. Couture and the Hampden County Sheriff's Department anticipate offering evidence including, but not limited to,

- Evidence of Ms. Linsenmeir's background and history, including her history of substance use, incarcerations, relationships, and treatment for substance use disorder;

- Evidence of Ms. Linsenmeir's incarceration and departure from Chittenden County, New Hampshire;

- Evidence related to the period between Ms. Linsenmeir's New Hampshire incarceration and admission to the Brattleboro Retreat;

- Evidence related to Ms. Linsenmeir's time at the Brattleboro Retreat;

- Evidence related to the period between when Ms. Linsenmeir left the Brattleboro Retreat and her arrest in Springfield, Massachusetts;

- Evidence related to Ms. Linsenmeir's arrest in Springfield, Massachusetts;

- Evidence related to Ms. Linsenmeir's time in the custody of the Springfield Police Department;

- Evidence related to Ms. Linsenmeir's time in the custody of the Hampden County Sheriff's Department, including her time at the Western Massachusetts Regional Women's Correctional Center from September 30, 2018 to October 4, 2018 and her trip to court on October 1, 2018;

- Evidence related to Ms. Linsenmeir's transfer to Baystate Medical Center on October 4, 2018;

- Evidence related to Ms. Linsenmeir's time as a patient at Baystate Medical Center from October 4, 2018 to her death on October 7, 2018;

- Evidence related to Ms. Linsenmeir's causes of death and significant contributing factor(s);

- Expert testimony from Thomas Lincoln, M.D., Melissa Weimer, D.O., William McGee, M.D., Susan McCampbell, Lori Rocoe, ANP, and Linda Bernard, R.N., and any rebuttal expert witnesses.

V.  **Facts to be established by pleadings, stipulation, or admission**

The parties are presently negotiating whether any facts can be established by stipulation. For example, certain basic facts about the timeline of Madelyn's arrest, transfer, housing, and so on may be amenable to stipulation.

VI. **Objections to evidence under Fed. R. Civ. P. 26(3)(B)**

Witness lists and exhibit lists are due to be filed on May 13 (D.E. 217), and the parties have agreed to provide any objections at that time. Additionally, the parties are currently discussing whether any witnesses will be presented via deposition testimony, and will provide any objections to designated deposition testimony at that time.

VII. **Statement of evidentiary issues which, if raised in the trial, would likely delay the trial by fifteen minutes or longer**

The parties submit the following list of evidentiary issues which could delay the trial by at least fifteen minutes. The parties understand that additional evidentiary issues which could delay trial may arise based on the parties' final exhibit and witness lists, which are due to be filed by May 13, 2024, and based on the issues raised in motions in limine but not identified below and reserve the right to raise additional evidentiary issues as they arise, including some that may delay the trial by at least fifteen minutes.. The parties further understand that the list of evidentiary issues may narrow in accordance with the Court's ruling on the parties' motions in limine. This joint statement is filed without prejudice to the parties' respective motions in limine.

*First*, an evidentiary dispute exists as to the scope of permissible testimony by Dr. Thomas Lincoln. The Estate has moved to exclude his testimony insofar as he intends to summarize Madelyn Linsenmeir's medical treatment or testify to WCC medical technicians' training on dispensing Librium. *See* Plaintiff's Motions in Limine ("Pl's Mot.") at 4-6. Defendants oppose this motion. *See* Defendants' Opposition to Pl's Mot. ("Defs' Opp.") at 3-5. An evidentiary dispute

11

also exists as to whether Dr. Melissa Weimer may testify to WCC medical technicians' training on dispensing Librium. The Estate has moved to exclude her testimony because it is based on the testimony of Dr. Lincoln. Pl's Mot. at 6. Defendants oppose this motion. Defs' Opp. at 6-7.

*Second*, an evidentiary dispute exists as to whether the defendants may introduce evidence or argument of comparative or contributory fault by Ms. Linsenmeir or her family. The Estate has moved to exclude such evidence or argument from trial. Pl's Mot. at 6-9. Defendants oppose this motion. Defs' Opp. at 7-10.

*Third*, an evidentiary dispute exists as to whether the defendants may introduce certain evidence or argument concerning Ms. Linsenmeir's prior substance use. The Estate has moved to exclude such evidence or argument from trial. Pl's Mot. at 9-11. Defendants oppose this motion. Defs' Opp. at 13.

*Fourth*, an evidentiary dispute exists as to whether the defendants may introduce or elicit certain evidence about the personal histories of Ms. Linsenmeir's family members. The Estate has moved to exclude such evidence. Pl's Mot. at 11-12. Defendants oppose this motion. Defs' Opp. at 13-15.

*Fifth*, an evidentiary dispute exists as to the scope of permissible testimony by Jesse Milligan, a mental health clinician who provided services to Ms. Linsenmeir's son Aidan. The Estate has moved to exclude certain aspect of her testimony. Pl's Mot. at 13-15. Defendants oppose this motion. Defs' Opp. at 15. Additionally, the parties anticipate the possibility of a dispute arising with respect to certain other testimony offered by Ms. Milligan and with respect to information from the records of Aidan's treatment at the Howard Center. *See* Pl's Mot. at 15-16.

*Sixth*, an evidentiary dispute exists as to the scope of permissible testimony by Dr. Justin Berk. The defendants have moved to exclude certain testimony by Dr. Berk. Defendants' Motions

in Limine ("Defs' Mot.") at 1-4. The Estate opposes this motion. Plaintiff's Opposition to Defs' Mot. ("Pl's Opp.") at 3-7.

*Seventh*, an evidentiary dispute exists as to the scope of permissible evidence relating to damages. The defendants have moved to exclude certain evidence of damages. Defs' Mot. at 4-5. The Estate opposes this motion. Pl's Opp. at 7-9.

*Eighth*, an evidentiary dispute exists as to whether the Estate may introduce evidence about Ms. Linsenmeir's biological son. The defendants' have moved to exclude such evidence. Defs. Mot. at 5-6. The Estate opposes this motion. Pl's Opp. at 9-10.

*Ninth*, an evidentiary dispute exists as to whether the Estate may introduce evidence regarding the response of WCC staff to Ms. Linsenmeir's medical emergency on October 4. The defendants have moved to exclude such evidence. Defs. Mot. at 9-10. The Estate opposes this motion. Pl's Opp. at 13-15.

*Tenth*, an evidentiary dispute exists as to the admissibility of evidence of prior complaints, claims or lawsuits against the HCSD, it past or present agents, employees, including testimony from plaintiff's witness, Lydia Huss.

*Eleventh*, an evidentiary dispute exists as to the admissibility of evidence of relating to Ms. Linsenmeir's son and Ms. Linsenmeir's relationship with her son.

Dated: May 6, 2024

Respectfully submitted,
Maura O'Neill, as administrator of the
Estate of Madelyn E. Linsenmeir,

*/s/David Milton*
David Milton (BBO# 668908)
Prisoners' Legal Services of Massachusetts
50 Federal St.
Boston, MA 02110
(617) 482-2773

Jessie J. Rossman (BBO# 670685)
Daniel L. McFadden (BBO# 676612)
Julian Bava (BBO# 712829)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170

Martin M. Fantozzi (BBO# 554651)
Richard J. Rosensweig (BBO# 639547)
Julius Halstead (BBO# 705428)
Kiman Kaur (BBO# 709943)
Goulston & Storrs PC
400 Atlantic Avenue
Boston, MA 02110
(617) 482-1776

THE DEFENDANTS,
HAMPDEN COUNTY SHERIFF'S
DEPARTMENT, AND MAUREEN
COUTURE
By Their Attorneys,

*/s/ Thomas E. Day*
Thomas E. Day, BBO #655409
Special Assistant Attorney General
Lauren F. Olanoff, BBO #669371
Michael G. McDonough, BBO #682128
Egan, Flanagan and Cohen, P.C.
67 Market Street, P.O. Box 9035
Springfield, MA 01102-9035
(413) 737-0260; Fax (413) 737-0121
Email: ted@efclaw.com; lfo@efclaw.com; mgm@efclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2024, I served the foregoing document on all parties by filing it via the Court's CM/ECF system and that a copy will be sent via the CM/ECF system electronically to all counsel of record.

/s/David Milton

Dated: May 6, 2024