UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| MAURA O'NEILL, AS ADMINISTRATOR OF THE ESTATE OF MADELYN E. LINSENMEIR, <div align="right">PLAINTIFF</div><br>V.<br><br>HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND MAUREEN COUTURE, <div align="right">DEFENDANTS</div> | CIVIL ACTION NO. 3:20-CV-30036 |

**MOTIONS IN LIMINE OF DEFENDANTS, HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND MAUREEN COUTURE**

# TABLE OF CONTENTS

I.    MOTION TO PRECLUDE ANY REPORT, EVIDENCE OR TESTIMONY FROM DR. JUSTIN BERK REGARDING INFECTIVE ENDOCARDITIS,  INCLUDING WHETHER EARLIER IDENTIFICATION OF MS. LINSENMEIR'S MEDICAL CONDITION WOULD HAVE SAVED HER LIFE...................................................................................................... **4**

II.   MOTION TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OUTSIDE THE SCOPE OF DAMAGES POTENTIALLY AWARDABLE TO THE PLAINTIFF, INCLUDING ANY EVIDENCE SUPPORTING DAMAGES ONLY RECOVERABLE UNDER THE MASSACHUSETTS WRONGFUL DEATH STATUTE. ......................................................... **7**

III.  MOTION TO PRECLUDE ANY REFERENCE TO MS. LINSENMEIR'S BIOLOGICAL SON, INCLUDING HIS MEDICAL CONDITIONS AND DIAGNOSES. ............................................. **8**

IV.   MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING ANY PROTOCOL OTHER THAN THE WCC'S ALCOHOL WITHDRAWAL PROTOCOL. .............................. **11**

V.    MOTION TO PRECLUDE ANY EVIDENCE REGARDING CHANGES MADE BY THE DEFENDANTS AFTER THE DEATH OF MS. LINSENMEIR, INCLUDING BUT NOT LIMITED TO EVIDENCE OF CHANGES TO THE ALCOHOL WITHDRAWAL PROTOCOL OR PRACTICES AND PROCEDURES REGARDING INMATES IN WITHDRAWAL........................................ **12**

VI.   MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING THE PARTICULARS OR SUFFICIENCY OF THE TRAINING PROVIDED TO ANY HAMPDEN COUTY SHERIFF'S DEPARTMENT EMPLOYEES. ..................................................................... **12**

VII.  MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY REGARDING MS. LINSENMEIR'S HISTORY OF SEXUAL ABUSE OR AS A VICTIM OF SEX TRAFFICKING, OTHER THAN IN SUPPORT OF DISCLOSED EXPERT OPINIONS. .................................... **13**

VIII. MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING THE RESPONSE OF JULIE BELLE-ISLE, R.N. TO MS. LINSENMEIR'S MEDICAL EMERGENCY ON OCTOBER 4, 2018, INCLUDING HER DECISION TO RULE OUT WITHDRAWAL AND OVERDOSE. ... **14**

IX.   MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ALLEGING WRONGFUL ACTS OR FAILURES TO ACT ON OCTOBER 3, 2018 OR OCTOBER 4, 2018. ......................... **15**

X.    MOTION TO PRECLUDE TESTIMONY OF ALEXANDRIA COX. ...................................... **16**

XI.   MOTION TO PRECLUDE EVIDENCE OF PRIOR COMPLAINTS, CLAIMS, OR LAWSUIT AGAINST THE HCSD, ANY OF ITS FACILITIES OR DIVISIONS, OR ITS EMPLOYEES. .... **17**

XII.   MOTION TO PRECLUDE ANY TESTIMONY OR EVIDENCE AS TO COMPLAINTS MADE BY MS. LINSENMEIR PRIOR TO ARRIVING AT THE WCC ON SEPTEMBER 30, 2018, EXCEPT TO SUPPORT DISCLOSED EXPERT OPINIONS AND WITH A LIMITING INSTRUCTION NOTING THAT THERE IS NO EVIDENCE THAT ANY INFORMATION REGARDING THESE COMPLAINTS WAS COMMUNICATED TO THE DEFENDANTS AND THAT THE EVIDENCE IS ONLY ADMISSIBLE TO DETERMINE THE EXTENT AND HISTORY OF MS. LINSENMEIR'S DISEASE. ............................................................................ **18**

XIII.  MOTION TO PRECLUDE ALL REFERENCES TO THE NEGLIGENCE STANDARD OF CARE, INCLUDING BY PLAINTIFF, HER FACTS WITNESSES, OR HER EXPERT WITNESSES. .... **19**

XIV.   MOTION TO PRECLUDE ALL EVIDENCE OR TESTIMONY REGARDING ALLEGED STATEMENTS OR BEHAVIOR BY UNNAMED INDIVIDUALS, AS SET FORTH IN THE DECLARATIONS OF HAYLEY CHAMPAGNE AND ALEXANDRIA COX. ......................... **20**

XV.    MOTION TO AWARD PLAINTIFF AN OFFSET OF $900,000 FOR ANY DAMAGES AWARDED TO PLAINTIFF IN LIGHT OF SETTLEMENT WITH CITY OF SPRINGFIELD..................... **22**

XVI.   MOTION TO PRECLUDE THE PLAINTIFF FROM PRESENTING CUMULATIVE TESTIMONY BY INTRODUCING BOTH LIVE TESTIMONY AND DEPOSITION TESTIMONY OF THE SAME WITNESS........................................................................................ **23**

XVII.  MOTION TO PRECLUDE THE TESTIMONY OF LYDIA HUSS. ..................................... **24**

I.    **MOTION TO PRECLUDE ANY REPORT, EVIDENCE OR TESTIMONY FROM DR. JUSTIN BERK REGARDING INFECTIVE ENDOCARDITIS, INCLUDING WHETHER EARLIER IDENTIFICATION OF MS. LINSENMEIR'S MEDICAL CONDITION WOULD HAVE SAVED HER LIFE.**

In his Expert Report, Plaintiff's expert, Dr. Justin Berk, provided the following opinion:

> Based on my experience, it is my opinion that Ms. Linsenmeir's vitals would have continued to deteriorate over the course of her time at the WCC. As a result, had she received regular monitoring, her underlying pathology of infective endocarditis could have been identified in time to save her life.

Day Aff., Exh. A, 12. At his deposition, Dr. Berk demonstrated that he does not have the professional expertise to provide an opinion regarding infective endocarditis and that he was not retained to do so. He further demonstrated that he had not reviewed the records with any detail as to Ms. Linsenmeir's infective endocarditis and was unwilling to provide any specificity regarding his apparent opinion that regular monitoring would have saved Ms. Linsenmeir's life.

At deposition, Dr. Berk acknowledged that he is not an infectious disease expert (Day Aff., Exh. B, 242:11-12) and has only treated 10-20 patients with infective endocarditis in his career and only with the support of specialists (Day Aff., Exh. B, 243:13-18), that he was not retained as an infective endocarditis expert (Day Aff., Exh. B, 254:2-4, 264:24-265:2), that he did not review Ms. Linsenmeir's records looking for information about infective endocarditis (Day Aff., Exh. B, 261:19-23), and in fact does not even know what kind of infective endocarditis Ms. Linsenmeir had (Day Aff., Exh. B, 261:19-23, 262:23-263:4). Dr. Berk acknowledged that he was not able to cite to any authority to support the above-quoted opinion.

Day Aff., Exh. B, 253:3-9. Dr. Berk could not provide information as to how long Ms. Linsenmeir had had infective endocarditis prior to arriving at the WCC. Day Aff., Exh. B, 259:22-261:4. Dr. Berk repeatedly refused to provide an opinion as to how much sooner the infective endocarditis would have had to have been discovered to save Ms. Linsenmeir's life or an opinion as to the likelihood that Ms. Linsenmeir's life could have been saved. Day Aff., Exh. B, 247:23-24, 248:8-10, 250:4-6, 251:23-24, 257:7-10, 258:3-5. Instead, Dr. Berk repeatedly testified that providing an opinion with more detail would require an opinion from another expert with more expertise. Day Aff., Exh. B, 252:4-5, 258:3-5. At deposition Dr. Berk would only provide a vague and unhelpful opinion that, in the case of an infection, it is better to identify it sooner rather than later. Day Aff., Exh. B, 246:20-22, 248:11-19.

This Court should exercise its role as gatekeeper and preclude Dr. Berk from providing any report, testimony, or evidence regarding infective endocarditis, including the opinion quoted above and the various, vague statements of opinion made at deposition and referenced above. *See Milward v. Acuity Specialty Prods. Grp.*, 639 F.3d 11, 14 (1st Cir. 2011) ("The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), vested in trial judges a gatekeeper function, requiring that they assess proffered expert scientific testimony for reliability before admitting it.") Dr. Berk essentially acknowledged at deposition that he is not qualified to provide an opinion to the jury with regard to infective endocarditis, not only because of his extremely limited experience with treating this illness, but because he admitted he had not bothered

to learn even the basic facts of Ms. Linsenmeir's particular infection, such as the type of endocarditis and how long she had had it. He repeatedly acknowledged this was because Plaintiff had not hired him to provide an opinion on infective endocarditis. "[A] witness qualified as expert on certain topics does not mean that he or she is qualified to express expert opinions as to other fields. Courts, therefore, should exclude proffered opinions that are outside the witness's established expertise." *Friedman v. Cent. Me. Power Co.*, No. 2:20-cv-00237-JDL, 2024 U.S. Dist. LEXIS 55760, at *4 (D. Me. Mar. 28, 2024). This Court should preclude Dr. Berk from testifying in this area because he lacks the "scientific, technical, or other specialized knowledge" to provide an opinion on this topic and his testimony would not be "[b]ased on sufficient facts or data." Fed. R. Evid. 702 (a) and (b).

Further, Dr. Berk should not be permitted to testify as to his vague statements of opinion because they would not be helpful to the jury. See Fed. R. Evid. 702 (a) (An expert witness may testify if his "specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue."). The opinion in Dr. Berk's Expert Report, quoted above, is so vague as to be of no help to the jury. He only states that, with regular monitoring, Ms. Linsenmeir's infective endocarditis "*could* have been identified in time to save her life." He specifically leaves out the key information of *when* would have been soon enough that the discovery would have saved her life. Would one hour earlier than when Ms. Linsenmeir was actually discovered in distress have been early enough to save her life? One day? Two days? Three days? Dr. Berk provides no specificity in the Expert

Report and refused to provide any additional specificity at deposition. Day Aff., Exh. B, 247:22-24.

Likewise, Dr. Berk's Report provides no specificity as to the likelihood that earlier detection would have saved Ms. Linsenmeir's life. All Dr. Berk wrote in his Report is the vague and ambiguous opinion that, with regular monitoring, the infection *could* have been discovered in time to save her life. Obviously, "could" in this context could mean a 1% chance that Ms. Linsenmeir's life would be saved, a 99% chance, or anything in between. Repeatedly pressed at deposition to provide more specificity, Dr. Berk refused to do so. Day Aff., Exh. B, 251:5-252:6, 257:1-258:5. This is not helpful to the jury and this Court should preclude this testimony. *See* Fed. R. Evid. 702; *See also Martinez v. Hosp. San Antonio Inc.*, No. 18-1055 (DRD), 2022 U.S. Dist. LEXIS 179218, at *8 (D.P.R. Sep. 28, 2022) *citing* Wright & Miller § 6265.2 ("expert testimony does not help where it is ambiguous"). For all the above reasons, Dr. Berk should not be permitted to testify as to infective endocarditis generally or, specifically, that regular monitoring could have saved Ms. Linsenmeir's life.

II. **MOTION TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OUTSIDE THE SCOPE OF DAMAGES POTENTIALLY AWARDABLE TO THE PLAINTIFF, INCLUDING ANY EVIDENCE SUPPORTING DAMAGES ONLY RECOVERABLE UNDER THE MASSACHUSETTS WRONGFUL DEATH STATUTE.**

This Court entered summary judgment on behalf of the defendants on the plaintiff's wrongful death claims (Count IV). ECF No. 231. Testimony and filings in this case indicate that Plaintiff "seeks damages on behalf of Ms. Linsenmeir's son,

who is her sole heir, and for Ms. Linsenmeir's own pain and suffering while in

Hampden County custody." ECF No. 223 at 2. The Massachusetts Wrongful Death

Act, M.G.L. c. 229, § 2, is the "exclusive action for the recovery of the damages it

encompasses by the designated beneficiaries." *Hallett v. Wrentham*, 398 Mass. 550,

556 (1986). The wrongful death action allows for the recovery of:

> (1) The fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered;

> (2) The reasonable funeral and burial expenses of the decedent; and

> (3) Punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant.

M.G.L. c. 229, § 2. As the Massachusetts Wrongful Death Act claim (Count IV) has

been dismissed in its entirety, this Court should preclude Plaintiff, Plaintiff's

counsel, and any witnesses from inquiring into, eliciting, or offering evidence

related to potential damages, including but not limited to wrongful death damages,

beyond those Plaintiff is legally entitled to be awarded if successful on her claims.


III.    **MOTION TO PRECLUDE ANY REFERENCE TO MS. LINSENMEIR'S BIOLOGICAL SON, INCLUDING HIS MEDICAL CONDITIONS AND DIAGNOSES.**

As set forth above, this Court has entered summary judgment on the

defendants' behalf on the Massachusetts Wrongful Death Act claim (Count IV). The

fact that Ms. Linsenmeir had a biological son, and any other facts associated with her son, including his name, age, relationship with Ms. Linsenmeir, photographs of him with or without Ms. Linsenmeir, his medical conditions and diagnoses will serve no valid purpose with regard to the case. This Court has entered summary judgment for Defendants on the Wrongful Death Act claims, and evidence regarding Ms. Linsenmeir's son is no longer of any relevance to this case. It is of no consequence in determining the remaining claims in the case because it does not have a tendency to make a fact of relevance to a claim in the case "more or less probable than it would be without the evidence." Fed R. Evid. 401 (a) and (b).

There has been deposition testimony or other evidence in this case that Ms. Linsenmeir has one child, a young son, that he is her sole heir, that he struggles with various medical conditions, that he played music for her over the phone while she was in the hospital, and that he still asks to watch videos of his mother. Affidavit of Thomas E. Day, ¶12. The Plaintiff has produced a draft Exhibit List indicating that she intends to introduce at least seven videos of Ms. Linsenmeir and her son, Ayden, at least 25 photos of Ms. Linsenmeir and Ayden, and pages of text message related to Ayden, all depicting a close and happy relationship between Ms. Linsenmeir and Ayden, along with documents related to Ayden's adoption. In short, the Plaintiff appears to intend to make Ayden (now spelled Aidan) and his relationship with Ms. Linsenmeir a central part of this case, in spite of the fact that the evidence has absolutely no relevance to this case.

Introduction of this highly emotional evidence or other evidence regarding Ms. Linsenmeir's son is likely to create a bias on the part of the jury in favor of the plaintiff, prejudice the jury against the defendants, confuse the issues that are relevant to the remaining claims with issues that were only relevant to the wrongful death claims, and mislead the jury into considering Ms. Linsenmeir's son and his situation in considering the facts that are at issue in this case. The only purpose for introducing such evidence would be an impermissible appeal to sympathy, which this Court should preclude under Fed. R. Evid. 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 205 citing Fed. R. Evid. 403. "The trial court employs a balancing test to determine whether Rule 403 applies, weighing the probative worth of the evidence against its potentially confusing effects." *Id.*, citing *Fryar v. Curtis*, 485 F.3d 179, 184 (1st Cir. 2007). "Thus, even where the evidence may shed light on the disputed issues, the district judge can find the "untoward effects of the proffered evidence" to be so weighty that the evidence should be excluded. *Id.*, quoting *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999). Here, evidence regarding Ms. Linsenmeir's biological son has no probative value to any issue before this Court. The only reason to introduce evidence regarding Ms. Linsenmeir's biological son is to attempt to impermissibly create sympathy with the jury on a matter of no relevance to any

question before the jury, to create a great danger of unfair prejudice against the defendants, to confuse the issues before the jury and mislead the jury by creating the false impression that the loss suffered by Ms. Linsenmeir's biological son is an issue before the jury.

## IV.    MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING ANY PROTOCOL OTHER THAN THE WCC'S ALCOHOL WITHDRAWAL PROTOCOL.

Defendants have produced numerous policies, procedures, and protocols. Plaintiff has disclosed two experts, Dr. Justin Berk and Dr. Simeon Kimmel. The Expert Reports of Drs. Berk and Kimmel disclose no opinions criticizing any of the HCSD's policies, procedures, or protocols other than the WCC's 2018 Alcohol Withdrawal Protocol. "[E]xpert testimony is necessary on subjects that the trier of fact would not be expected to understand in many circumstances without guidance from an expert but not where lay knowledge enables the jury to find the relevant facts." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 58 (1st Cir. 2021) quoting *Gliottone v. Ford Motor Co.*, 95 Mass. App. Ct. 704, 708, 130 N.E.3d 212, 216 (2019) (internal quotation marks omitted). Here, a jury would not be expected to understand whether a particular correctional policy, procedure or protocol, especially one dealing with medical issues, was in some way deficient without the assistance of expert testimony. As Plaintiff has disclosed no expert testimony criticizing the policies, procedures, or protocols of the HCSD, Plaintiff should be precluded from introducing any evidence or testimony criticizing the policies,

procedures, or protocols of the HCSD other than the 2018 Alcohol Withdrawal

Protocol.

**V.     MOTION TO PRECLUDE ANY EVIDENCE REGARDING CHANGES MADE BY THE DEFENDANTS AFTER THE DEATH OF MS. LINSENMEIR, INCLUDING BUT NOT LIMITED TO EVIDENCE OF CHANGES TO THE ALCOHOL WITHDRAWAL PROTOCOL OR PRACTICES AND PROCEDURES REGARDING INMATES IN WITHDRAWAL.**

There is evidence in this case that, after Ms. Linsenmeir's death, the HCSD

took extra steps to assure additional health monitoring of new inmates at the

HCSD, including changes to policies, procedures, and protocols related to such

things as medical assessments of arrestees recently arrived from police

departments, medical wellness checks, and increased monitoring of vital signs.

"When measures are taken that would have made an earlier injury or harm less

likely to occur, evidence of the subsequent measures is not admissible to prove …

culpable conduct." Fed. R. Evid. 407. Here, the evidence will indicate that many of

the changes were implemented in good faith by the HCSD in response to Ms.

Linsenmeir's tragic death and the plaintiff should be precluded from introducing or

eliciting any evidence or testimony or these subsequent remedial measures to prove

culpable conduct on the part of Defendants, which would fall squarely within the

prohibition of Rule 407.

**VI.     MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING THE PARTICULARS OR SUFFICIENCY OF THE TRAINING PROVIDED TO ANY HAMPDEN COUTY SHERIFF'S DEPARTMENT EMPLOYEES.**

As with the Motion in Limine in Section IV, above, the advisability, or sufficiency of a particular correctional training program is outside of the understanding of the typical lay juror. Plaintiff would have to introduce expert testimony from a corrections professional to attack the HCSD's training programs or lack thereof. *See Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 58 (1st Cir. 2021) (expert testimony required on subjects jury would not be expected to understand). Plaintiff has not disclosed any expert testimony from a corrections professional or expert regarding the HCSD's training programs and should be precluded from attacking the sufficiency or particulars of training provided to HCSD employees.

VII. **Motion to preclude any evidence or testimony regarding Ms. Linsenmeir's history of sexual abuse or as a victim of sex trafficking, other than in support of disclosed expert opinions.**

There is evidence in this case that, prior to her incarceration at the WCC from September 30, 2018 to October 4, 2018, Ms. Linsenmeir was sexually abused and/or sex trafficked. There is no allegation that the defendants had anything to do with the situation and the evidence is of absolutely no relevance to any issue that will be before the jury. The only reason to introduce evidence of these unproven allegations would be to impermissibly generate sympathy for Ms. Linsenmeir. Evidence of sexual abuse that Ms. Linsenmeir suffered  well before her incarceration at the WCC has no probative value, yet creates the danger of appealing to the sympathies of the jury and thereby unfairly prejudicing the defendants. For this reason, the Court should preclude any mention of any

allegations of sexual abuse allegedly suffered by Ms. Linsenmeir pursuant to Fed.

R. Evid. 403.

**VIII.** **MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ATTACKING THE RESPONSE OF JULIE BELLE-ISLE, R.N. TO MS. LINSENMEIR'S MEDICAL EMERGENCY ON OCTOBER 4, 2018, INCLUDING HER DECISION TO RULE OUT WITHDRAWAL AND OVERDOSE.**

The evidence in this case is that, on the morning of October 4, 2018, WCC

nurses, Karleen Neill and Julie Belle-Isle discovered Ms. Linsenmeir in a state of

medical distress, immediately rendered care and summoned an ambulance, which

took Ms. Linsenmeir to Baystate Medical Center for emergency care. Ms. Belle-Isle

recorded in her medical note of the encounter that, as part of the care she provided,

she considered opiate withdrawal and drug overdose, among other potential causes.

In the Expert Report of Dr. Simeon Kimmel, Dr. Kimmel wrote with regard to the

care rendered by Ms. Belle-Isle: "[t]he fact that Ms. Belle-Isle investigated a

potential OD notwithstanding vital statistics that were directly contrary to an OD

suggests that Ms. Belle-Isle anchored her investigation on Ms. Linsenmeir's

substance use without considering or investigating alternative causes of her

symptoms." Day Aff., Exh. C, 10. First, this is factually incorrect, as Dr. Kimmel

himself notes in the same paragraph that Ms. Belle-Isle also considered an internal

bleed as a cause of her symptoms. *Id.* However, Dr. Kimmel seized on this and

opined that it "suggest[ed]" to him that HCSD medical staff tended to stereotype

inmates with substance use disorder. *Id.* However, he could not conclude that or list

that as an actual opinion. All that he could muster was this bare and unsupported insinuation, which should not be allowed at trial.

Dr. Kimmel refused to stand behind this insinuation at deposition, where he refused to criticize Ms. Belle-Isle's treatment of Ms. Linsenmeir. To the contrary, Dr. Kimmel testified that he was not criticizing Ms. Belle-Isle (Day Aff., Exh. D, 214:5), that he thought that the emergency care that she provided was appropriate (Day Aff., Exh. D, 214:19-20, 221:20-21), and that her actions were appropriate (Day Aff., Exh. D, 217:13-16, 217:21-218:6).

Based on Plaintiff's expert's own testimony that Ms. Belle-Isle rendered appropriate care and that the inclusion of opiate withdrawal and drug overdose in her medical record was appropriate, there is no basis for Plaintiff to attack Ms. Belle-Isle's care of Ms. Linsenmeir, and Plaintiff should be precluded from reviving at any time an insinuation criticizing Ms. Belle-Isle's mention of opiate withdrawal or drug overdose in her medical record as evidence of culpability on the part of Defendants.


IX.    **MOTION TO PRECLUDE ANY EVIDENCE OR TESTIMONY ALLEGING WRONGFUL ACTS OR FAILURES TO ACT ON OCTOBER 3, 2018 OR OCTOBER 4, 2018.**

Defendants' medical expert, Dr. William McGee, has provided an Expert Report and testified at deposition that Plaintiff would not have survived, even if WCC staff had sent her to the hospital upon her arrival at the WCC on September 30, 2018. Plaintiff's expert, Dr. Simeon Kimmel, disputes this only to a point. While Dr. Kimmel opines that it is "more likely than not" that Ms. Linsenmeir would have

survived if she had received the treatment he believes was called for in the situation, he acknowledges that, with regard to October 3 and 4, 2018, "it is more difficult to assess Ms. Linsenmeir's chance of survival" on October 3rd, and he provides no opinion as to her chance of survival earlier on October 4th. (Day Aff., Exh. C, 1, 7-9). Since there is no expert opinion in this case that Ms. Linsenmeir would have survived if she had been sent to the hospital on October 3rd or earlier on October 4th than she was actually sent, the jury could not find that a wrongful act or failure to act on the part of any WCC staff could have caused Ms. Linsenmeir's death. Therefore, Plaintiff should be precluded from introducing any evidence of any wrongful act or failure to act on the part of WCC staff on October 3 or 4, 2018, since this evidence would not be "of consequence in determining the action." Fed R. Evid. 401 (b). Rather, the evidence, like Plaintiff's expert opinion, should be limited to October 2, 2018 as the latest date at issue.

### X.    MOTION TO PRECLUDE TESTIMONY OF ALEXANDRIA COX.

As set forth in previous pleadings, Plaintiff did not explicitly disclose the witness, Alexandria Cox, in either the Initial Disclosure, Supplemental Initial Disclosure, or answers to interrogatories. Day Aff., ¶7. Plaintiff did generally identify people incarcerated with Madelyn Linsenmeir in the same housing unit, but never supplemented her Initial Disclosures to identify Ms. Cox as a witness, even after the production of housing unit rosters in this case and even after Plaintiff's investigator had contacted and interviewed Ms. Cox and obtained a

declaration from her. After the close of discovery, plaintiff produced a Declaration of Alexandria Cox alleging that WCC staff did not assist Ms. Linsenmeir when other inmates requested assistance for her. Day Aff., ¶8.

Plaintiff, through her Motions in Limine, seeks to exclude the testimony of witnesses who were generally disclosed through Initial Disclosures and identified in documents produced, depicted in videos produced, and/or identified in Answers to Interrogatories. If this Court precludes these disclosed witnesses from testifying, this Court should also preclude Ms. Cox from testifying.

### XI.    MOTION TO PRECLUDE EVIDENCE OF PRIOR COMPLAINTS, CLAIMS, OR LAWSUIT AGAINST THE HCSD, ANY OF ITS FACILITIES OR DIVISIONS, OR ITS EMPLOYEES.

Defendants move to preclude Plaintiff, Plaintiff's counsel or any witness from introducing into evidence, mentioning, or inquiring into any prior or pending complaints, claims or lawsuits which may have been filed or brought against Defendants, to the extent any exist. As grounds therefor, Defendants state that this action involves claims related to the medical care and treatment provided to Ms. Linsenmeir while she was incarcerated at the WCC for less than four full days from September 30 to October 4, 2018. Under the Federal Rules of Evidence, only relevant evidence is admissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence," if the fact "is of consequence in

determining the action." Fed. R. Evid. 401. The fact that another inmate, at some other time, may have made a claim or brought a lawsuit against the HCSD or its staff does not make any fact of consequence in this case more or less probable. Even if Plaintiff had evidence of a prior complaint against Ms. Couture, it would not be admissible. Prior acts are not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). In this case, evidence of other claims or lawsuits has no relevance to Plaintiff's allegations, as it has no tendency to prove that Ms. Couture was deliberately indifferent to Ms. Linsenmeir while she was incarcerated at the WCC or that the HCSD, through its staff, discriminated against Ms. Linsenmeir.

XII. **MOTION TO PRECLUDE ANY TESTIMONY OR EVIDENCE AS TO COMPLAINTS MADE BY MS. LINSENMEIR PRIOR TO ARRIVING AT THE WCC ON SEPTEMBER 30, 2018, EXCEPT TO SUPPORT DISCLOSED EXPERT OPINIONS AND WITH A LIMITING INSTRUCTION NOTING THAT THERE IS NO EVIDENCE THAT ANY INFORMATION REGARDING THESE COMPLAINTS WAS COMMUNICATED TO THE DEFENDANTS AND THAT THE EVIDENCE IS ONLY ADMISSIBLE TO DETERMINE THE EXTENT AND HISTORY OF MS. LINSENMEIR'S DISEASE.**

There is evidence in this case that Ms. Linsenmeir made complaints about her health both to her family through text messages and to the Springfield Police Department. Plaintiff cannot produce any evidence that Ms. Linsenmeir's family or the Springfield Police Department ever conveyed these complaints to anyone at the WCC. Indeed, the evidence is clear that these complaints were not passed along to anyone at the WCC. While the evidence is certainly admissible at least as the

18

properly-disclosed basis of at least one expert opinion, there is a great danger that the evidence could confuse the jury or mislead the jury into improperly concluding that, since Ms. Linsenmeir made these prior complaints, someone must have passed them along to WCC staff or that Ms. Linsenmeir must have made the same complaints at the WCC. *See* Fed. R. Evid. 403. This danger can be remedied through a limiting instruction and Defendants hereby move that, each time the evidence is put before the jury and at the close of all evidence, the Court provide the following limiting instruction to the jury:

> The jury is reminded that, although there is evidence that Ms. Linsenmeir made complaints about her health prior to her arrival at the WCC, there is absolutely no evidence that her family, the Springfield Police Department, or anyone else conveyed these complaints to the WCC. Further, evidence of these prior complaints is not evidence that Ms. Linsenmeir made the same or similar complaints at the WCC. Plaintiff bears the burden of proving any such complaints at the WCC through evidence from her time at the WCC.

XIII. **MOTION TO PRECLUDE ALL REFERENCES TO THE NEGLIGENCE STANDARD OF CARE, INCLUDING BY PLAINTIFF, HER FACTS WITNESSES, OR HER EXPERT WITNESSES.**

Plaintiff has not brought a negligence action against defendants. Nonetheless, plaintiff's experts made repeated reference to the standard of care whether through that exact term or through other analogous terms such as "community medical standards" or "adequate medical care." Plaintiff's experts have also made repeated reference to breach of the standard of care, using phrases such as "fell beneath the floor of medical reasonableness" (*e.g.* Day Aff., Exh. A 10) and "had no medical justification" (*e.g.* Day Aff., Exh. C, 9).

19

These explicit and implicit references to the medical standard of care will be confusing to the jury and could mislead the jury into drawing the highly improper inference that a showing of a breach of the standard of care is sufficient to prove an ADA violation. This is certainly not the case.

> The Supreme Court has been clear about what the ADA does not require. The *Olmstead* Court said in response to the dissent's concerns: "We do not in this opinion hold that the ADA imposes on the States a "standard of care" for whatever medical services they render, or that the ADA requires States to "provide a certain level of benefits to individuals with disabilities."

*Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) *quoting Olmstead v. L. C. by Zimring*, 527 U.S. 581, 608, 119 S. Ct. 2176, 2191 (1999).

The references to the standard of care by Plaintiff and her experts threaten the HCSD's right to a fair trial. Therefore, Defendants move this Court to preclude Plaintiff, her counsel, her fact witnesses and expert witnesses from making any reference whatsoever to the medical standard of care, either explicitly or through such terms as "community medical standards" and "adequate medical care" and further preclude reference to the breach of the standard of care, whether explicitly or through such phrases as "no medical justification" or "fell beneath the floor of community medical standards."


**XIV.** **MOTION TO PRECLUDE ALL EVIDENCE OR TESTIMONY REGARDING ALLEGED STATEMENTS OR BEHAVIOR BY UNNAMED INDIVIDUALS, AS SET FORTH IN THE DECLARATIONS OF HAYLEY CHAMPAGNE AND ALEXANDRIA COX.**

After the close of discovery, Plaintiff produced the Declarations of two witnesses, Hayley Champagne and Alexandria Cox. Day Aff., Exhs. E and F. Both

of these Declarations make allegations against unnamed "WCC staff members". Day Aff., Exh. E, ¶4; Day Aff., Exh. F, ¶5. Neither Plaintiff nor her witnesses have provided any identifying information regarding these unnamed "WCC staff" in spite of the fact that Defendants have provided all shift rosters for the housing units in which Ms. Linsenmeir was housed and hours of video of every moment that Ms. Linsenmeir was in these units. It appears that, over the four-year life of this case, and in spite of the exhaustive discovery Plaintiff conducted, she did absolutely nothing to identify these unnamed "WCC staff."

This robs Defendants of the ability to defend against the claims of these witnesses and denies Defendants the opportunity to rebut these claims. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of …unfair prejudice." Fed R. Evid. 403. The probative value of the Declarations of Champagne and Cox is small, not only because the alleged rogue staff members are unnamed, but because of the dearth of any information regarding these individuals, such as how many of them there were, whether they were male or female, a description of their age and physical appearance. Furthermore, the probative value of the Champagne Declaration is further weakened by equivocation through words and phrases such as "generally" and "or words to that effect." Day Aff., Exh. E, ¶5. The probative value of the Cox Declaration is diminished by pure speculation, such as "it was my impression that the WCC staff members assumed she was detoxing." Day Aff., Exh. F, ¶5. The slight probative value of these Declarations is substantially outweighed by the great prejudice to Defendants if

this vague evidence were put before the jury after Defendants were robbed of the opportunity to defend against these allegations.

Defendants move this Court to preclude Plaintiff, her counsel, or her witnesses from making any reference whatsoever to the allegations against unnamed "WCC staff," such as the allegations contained in the Declarations of Champagne and Cox.

## XV.  MOTION TO AWARD PLAINTIFF AN OFFSET OF $900,000 FOR ANY DAMAGES AWARDED TO PLAINTIFF IN LIGHT OF SETTLEMENT WITH CITY OF SPRINGFIELD.

The Defendants move this Court to award an offset of $900,000.00 for any damages awarded to the Plaintiff in light of the settlement with the City of Springfield. The remaining Defendants are entitled to an offset because "no one should or may unjustly enrich himself by receiving double compensation for the same accident." *Villarini-Garcia v. Hosp. del Maestro*, 112 F.3d 5, 8 (1st Cir. 1997) (citing *Robles v. Superior Court*, 85 P.R.R. 640, 647, 85 D.P.R.655 (P.R. 1962). The First Circuit Court of Appeals has "repeatedly stated that it makes sense to require an offset in those cases where both the settling and non-settling tortfeasors are liable for the plaintiff's injury." *Portugues-Santana v. Rekomdiv Int'l, Inc.*, 725 F.3d 17, 27 (1st Cir. 2013).

The City of Springfield has settled with the Plaintiff for $900,000.00. In the Stipulation of Dismissal of the claims against Springfield Defendants, there is no

determination as to liability on the part of the Springfield Defendants. Therefore, were the jury to find liability on the part of the remaining defendants, those defendants would be entitled to an offset of $900,000 against the jury award.

## XVI. MOTION TO PRECLUDE THE PLAINTIFF FROM PRESENTING CUMULATIVE TESTIMONY BY INTRODUCING BOTH LIVE TESTIMONY AND DEPOSITION TESTIMONY OF THE SAME WITNESS.

The Court should preclude the Plaintiff from presenting cumulative testimony by introducing both live testimony and deposition testimony or written declaration testimony of the same witness. Plaintiff has disclosed that she intends to introduce both live testimony and deposition testimony or testimony contained in a written declaration of several of the witnesses they intend to call. Allowing the Plaintiffs to use both would be needlessly cumulative because information would be unnecessarily repeated. The Court has the discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of … needlessly presenting cumulative evidence." Fed. R. Evid. 403. Moreover, the First Circuit Court has held that "presenting deposition videos instead of live testimony is unwarranted if the witnesses are available and presenting the videos in addition to live testimony would cause undue delay and be needlessly cumulative." *Berrios v. Mennonite Gen. Hosp. Inc.*, 2020 U.S. Dist. LEXIS 17329 (2020). Defendants move this Court to preclude the Plaintiff from presenting both live testimony and deposition testimony or testimony contained in a written declaration of the same witnesses as it is needlessly cumulative and will cause an undue delay.

### XVII. Motion to Preclude The Testimony of Lydia Huss.

In the plaintiff's Proposed Witness List, she has disclosed Lydia Huss ("Ms. Huss") as a witness that she expects to call at trial for this matter. This Court should exercise its discretion and preclude Ms. Huss from testifying as a lay witness for the plaintiff at trial because she does not have **any** personal knowledge of Madelyn Linsenmeir ("Linsenmeir"), Linsenmeir's experience at the Western Massachusetts Regional Women's Correctional Center ("WCC") in 2018, or the ineffective endocarditis from which Ms. Linsenmeir suffered and, therefore, Ms. Huss should not be permitted to testify as a lay witness in this case. Moreover, any testimony that Ms. Huss would potentially provide in this matter would be undoubtably unfairly prejudicial to the defendants because it will be based on her own experience at the WCC in 2021-2022 and the lawsuit she filed against the Hampden County Sheriff's Department ("HCSO") and different individual defendants thereafter. That case has since been settled and it is not relevant to this matter. Any reference to Ms. Huss's experience at the WCC in 2021-2022, her speculation as to Linsenmeir's experience in 2018 or references to her own case filed in 2022 would be unfairly prejudicial to the defendants.

Ms. Huss does not have the requisite personal knowledge to testify as a lay witness in this matter. A lay witness may only testify in a matter if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Plaintiff has not presented any evidence to support such a finding. However, there is more than sufficient evidence in Ms.

Huss's deposition testimony to support the finding that Ms. Huss does <u>not</u> have the requisite personal knowledge to testify as a lay witness in this matter.

Ms. Huss cannot testify to Linsenmeir's experience in the WCC in 2018 because it would be speculative at best. Ms. Huss acknowledged in her deposition that she never met Linsenmeir nor was she incarcerated at the same time as Linsenmeir in 2018. Day Aff. Exh. G, 47:2-4. Ms. Huss's only period of incarceration at the WCC occurred from December 2021 to January 2022, more than three years after Linsenmeir's experience. Day Aff. Exh. G, 64:20-23. Additionally, Ms. Huss testified that she learned of Linsenmeir from a Google search. Day Aff. Exh. G, 47:5-11. Any additional information Ms. Huss learned about Linsenmeir was through her various contacts with Kate O'Neil, the decedent's sister. Day Aff. Exh. G, 40:18-42:8. Ms. Huss is not qualified to testify as a lay witness in this case because it would be speculative and done in reliance on her own experience with the WCC in 2021-2022, more than three years after Linsenmeir's incarceration.

Additionally, Ms. Huss should be precluded from providing any testimony regarding the lawsuit she personally filed against the Hampden County Sheriff's Department ("HCSD") in 2022 or her experience with the WCC from 2021-2022 because it is not relevant. Moreover, it is unfairly prejudicial to defendants. Ms. Huss filed a lawsuit against the HCSD in 2022 with allegations of a violation of Title II of the ADA, and violations of 42 U.S.C. § 1983, among other counts. *Huss v. Hampden County Sheriff's Department, et. als.*, United States District Court for the District of Massachusetts, 4:22-CV-11305-MRG. Although the two cases share two

of the same allegations, they do not have a single common individual defendant. In her lawsuit, Ms. Huss named Rachel Reale, Scuelin Thompson, Sarah Bernard, Sheriff Nicholas Cocchi, the HCSD and John/Jane Does 1-5. Day Aff., ¶13. None of these defendants are defendants in this case. Moreover, in her deposition, Ms. Huss testified that she is not aware of the remaining individual defendant, Nurse Maureen Couture, nor the former individual defendant, Officer Eileen Barrett. Day Aff. Exh. G, 70:20-72:17. Potential testimony about Ms. Huss's experience or the lawsuit does not have a "tendency to make a fact more or less probable than it would be without the evidence" nor are these facts "of consequence in determining" whether the HCSD violated Title II of the ADA or whether Nurse Couture was deliberately indifferent. Fed. R. Evid. 401. Moreover, even if the Court decides that Ms. Huss's testimony is potentially relevant to this matter, it should be precluded because the probative value of her testimony does not substantially outweigh the danger of unfair prejudice to the defendants, confusing the issue, misleading the jury and wasting time. Fed. R. Evid. 403.

Based on the reasons above, defendants move this Court to exercise its role as gatekeeper and preclude Ms. Huss from testifying about <u>her</u> experience at the WCC in 2021-2022 as alleged evidence of misconduct or deliberate indifference against the defendants for events that occurred in 2018.

Dated February 6, 2025

Respectfully submitted,

HAMPDEN COUNTY SHERIFF'S
DEPARTMENT, EILEEN BARRETT, AND
MAUREEN COUTURE

By their attorney,
ANDREA CAMPBELL
ATTORNEY GENERAL

By: */s/ Thomas E. Day*
Thomas E. Day
Special Assistant Attorney General
BBO #655409
Lauren F. Olanoff
BBO #669371
Michael G. McDonough
BBO #682128
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035
(413) 737-0260
ted@efclaw.com
lfo@efclaw.com
mgm@efclaw.com

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies of this document will be mailed, first-class mail, postage prepaid, to any unregistered participants on February 6, 2025.

*/s/ Thomas E. Day*
Thomas E. Day